IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6193-CIV LENARD/Simonton

THOMAS BUTLER,

            Plaintiff,

v.                                              CONSENT CASE

JOHN POTTER, Postmaster,
United States Postal Service,

            Defendant.
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND SUPPORTING MEMORANDUM OF LAW

COMES NOW the Defendant, JOHN POTTER, Postmaster, United States Postal Service, in his official capacity, by and through the undersigned Assistant United States Attorney, and pursuant to Rule 56(c), Federal Rules of Civil Procedure, and Local Rule 7.5, moves for summary judgment because no genuine issue of material fact exists and, as a matter of law, Defendant is entitled to judgement, and in support thereof would show as follows:

### Synopsis of the Case[1]

EEOC Case, #1-H-333-0018-97:    On March 5, 1997, an incident occurred between Thomas Butler (Butler), then a supervisor and ten year veteran of the United States Postal Service (USPS), and his own supervisor, Sergio Fernandez, which, according to Butler created a humiliating and stressful work environment. Specifically, Butler claims that Fernandez broke up the counseling between Butler and a fellow subordinate employee and began harassing Butler about his operation (duty station). Feeling humiliated and embarrassed in front of his employees and peers, Butler went home "stressed out." Thereafter, Butler anonymously initiated informal proceedings with the Equal Employment Opportunity Commission (EEOC) when he reported the foregoing incidents in

_____

[1]The facts referred to in this pleading are detailed in the contemporaneously filed **Concise Statement of Material Facts As To Which There Exists No Genuine Issue To Be Tried** (CSMF), which is supported by declarations of witnesses with personal knowledge thereof, as well as with pleadings on file with the Clerk of this Court, and is hereby incorporated by reference. F.R.Cv.P 56(e) and L.R 7.5.

Precomplaint Counseling asserting that he had been subjected to wrongful discrimination. Butler then sought and obtained treatment from a doctor who diagnosed "multiple somatic and stress symptoms which appear to be directly related to his conflicts with this supervisor" and who limited Butler's ability to work to a part-time basis finding it "imperative that he not return to work under Mr. Fernandez, as this will aggravate a recovering problem."[2] In response, the USPS determined that Butler was "not able to return to work and perform the full duties of [his] position" and that he would "remain on enforced leave until [he was] able to furnish medical documentation demonstrating to the satisfaction of management that [he was] able to perform the duties of [his] position."[3] Butler opposed these determinations, but on May 27, 1997, Robert Dillon, Senior Manager, Distribution Operations, USPS, advised Butler that, after full consideration of his responses, his "placement on enforced leave is for such cause as to promote the efficiency of the service. This action will be effective June 6, 1997."[4] Thereafter, on June 6, 1997, Butler publically disclosed his participation in protected activity by filing his Administrative Complaint of Discrimination with the EEOC, Case, #1-H-333-0018-97, alleging that the USPS had wrongfully discriminated (in the form of harassment) and retaliated against him based upon the foregoing.

In addition, on June 6, 1997, Butler filed an appeal with the Merit System Protection Board (MSPB), in the proceedings styled *Butler v. USPS*, AT-0752-97-I-1 (stamp filed June 23, 1997), raising the same issue of the agency's action placing him on enforced leave.[5]

Thereafter, on October 15, 1997, with the assistance of his own counsel, Roscoe E. Long, Esq., Butler knowingly and voluntarily entered into a Settlement Agreement regarding the allegations raised in EEOC Case, #1-H-333-0018-97. In consideration for the terms set forth in the Settlement Agreement, Butler agreed to "voluntarily withdraw any outstanding administrative complaint or appeal, including this Merit Systems Protection Board case, and EEOC of all issues related to this appeal."[6]

---

[2]See CSMF, paragraph 9.

[3]See CSMF, paragraph 10.

[4]See CSMF, paragraph 13.

[5]See CSMF, paragraph 15.

[6]See CSMF, paragraph 15.

It is the Defendant's position that because the matters raised in Butler's appeal with the MSPB (the proceedings styled *Butler v. USPS*, AT-0752-97-I-1) were the same matters raised in Butler's Administrative Complaint filed under EEOC, Case, #1-H-333-0018-97, the Settlement Agreement between Plaintiff and Defendant bars Plaintiff from now litigating the matters raised in administrative EEOC Case, #1-H-333-0018-97.

EEOC, Case, #1-H-333-0036-97:   On July 25, 1997, Butler received a "package" from Tobe Lowe, Labor Relations Specialist, USPS, which contained a Letter of Warning (LOW) addressed to Butler, dated February 27, 1997 which had been duly drafted by Jack Watson, MDO. Although the LOW had been duly drafted, it had never been served upon Butler. Because Watson's LOW had not been timely served upon Butler, it was abandoned by USPS management.

Thereafter, on October 27, 1997, Butler filed his Administrative Complaint of Discrimination with the EEOC, Case #1-H-333-0036-97, alleging that the USPS had wrongfully retaliated against him based upon the LOW.

As detailed below, the uncontroverted facts reveal that Plaintiff cannot establish a prima facie case of wrongful retaliation regarding his claims.

EEOC, Case, #1-H-333-0011-98:   During USPS fiscal year 1997 (the year commencing September 14, 1996 and ending September 12, 1997), Butler used 737 hours of sick leave and eight hours of leave without pay. Accordingly, Butler was disqualified from obtaining the Economic Value Added (EVA) credit for USPS fiscal year 1997.[7] On February 4, 1998, Butler filed his Administrative Complaint of Discrimination with the EEOC, Case #1-H-333-0011-98, alleging that the USPS had wrongfully discriminated and retaliated against him based upon his being deemed ineligible to receive the EVA credit for USPS fiscal year 1997. As detailed below, the uncontroverted facts reveal that Plaintiff cannot establish a prima facie case of wrongful retaliation regarding his claims. In addition, the evidence shows that the USPS had legitimate non-discriminatory and non-retaliatory reasons for the actions taken.

---

[7]EVA is an incentive program based on an employee's contribution or lack of contribution to the goals of the USPS. Attendance was one of the factors viewed by management in assessing employee eligibility for an EVA credit. To receive the full credit under the incentive program, eligible employees in organizational units had to meet established targets. Otherwise qualified employees would be disqualified from receiving the EVA credit if they "do not fully contribute to the performance of the organization. . . ." Lack of contribution was defined as absences either 1) where combined sick leave and leave without pay exceeded 500 hours; or 2) combined absences (including but not limited to sick leave and leave without pay, e.g. annual leave, absence without leave) exceeded 600 hours. See CSMF, paragraph 27.

EEOC Case #1-H-333-0047-99:    On or about August 21, 1998, Butler received a LOW charging him with failure to perform supervisory duties in a satisfactory manner and failure to follow instructions concerning proper staffing of operations. On April 12, 1999, the Manager of Human Resources, Southeast Area Office, sustained the August 21, 1998 LOW finding that there was "sufficient evidence to warrant the action taken."[8]  On April 23, 1999, Butler initiated informal proceedings with the EEOC. As detailed below, the uncontroverted facts reveal that, although the Defendant subsequently advised Butler that his informal complaint had not been resolved and that he had the right to file a formal complaint of discrimination, Butler never filed a formal Administrative Complaint under Case #1-H-333-0047-99. Accordingly, he failed to exhaust his administrative remedies regarding these claims. In addition, as detailed below, the uncontroverted facts reveal that the USPS had legitimate non-discriminatory and non-retaliatory reasons for the actions taken.

EEOC Case, #1-H-333-0012-00:    On November 3, 1999, an incident occurred between Butler and his supervisor Rosie Carlies. On November 29, 1999, based thereon, Carlies issued a proposed LOW in Lieu of Time Off Suspension to Butler charging him with "Unacceptable conduct due to your failure to respond and comply with directives given you."[9]  On January 18, 2000, Saundra D. Richardson, Plant Manager, SFMPC, issued a Letter of Decision upholding the proposed LOW in lieu of a time off suspension to Butler based upon the events of November 3, 1999. On March 14, 2000, Butler filed his Administrative Complaint of Discrimination with the EEOC, Case, #1-H-333-0012-00, alleging that the USPS had wrongfully discriminated and retaliated against him based upon his receipt of a Letter of Decision regarding the proposed LOW in lieu of time off suspension. As detailed below, the uncontroverted facts reveal that the USPS had legitimate non-discriminatory and non-retaliatory reasons for the actions taken.

### Statement of the Issues

Whether the Settlement Agreement between Plaintiff and Defendant bars Plaintiff from now litigating the matters contained in administrative EEOC Case, #1-H-333-0018-97?

Whether the Defendant wrongfully retaliated against Plaintiff by subjecting him by providing him with a copy of a Letter of Warning which had never been served (EEOC, Case, #1-H-333-0036-97)?

---

[8]See CSMF, paragraph 35.

[9]See CSMF, paragraph 41.

Whether the Defendant wrongfully retaliated against Plaintiff for his prior participation in protected activity by excluding him from the EVA credit (EEOC, Case, #1-H-333-0011-98)?

Whether Plaintiff exhausted his administrative remedies by filing an Administrative Complaint in EEOC, Case, #1-H-333-0047-99? If so, then whether the Defendant wrongfully discriminated against Plaintiff by subjecting him to disparate treatment based upon Plaintiff's race, national origin by issuing a Letter of Warning to him regarding staffing (EEOC, Case, #1-H-333-0047-99)?

Whether the Defendant wrongfully discriminated and/or retaliated against Plaintiff by issuing a Letter of Decision regarding a Letter of Warning in Lieu of a Time Off Suspension for unacceptable conduct (EEOC, Case, #1-H-333-0012-00)?

Whether the Defendant has articulated a legitimate nondiscriminatory and/or non-retaliatory reasons for the challenged employment decisions?

## The Law Regarding Summary Judgment

Rule 56(c), Federal Rules of Civil Procedure, authorizes entry of summary judgment where the pleadings and supporting materials demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if it is a legal element of a claim under the applicable substantive law and is one that might affect the outcome of the suit under the governing law. *See id.* A material fact is "genuine" if "the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id.*

A properly supported motion for summary judgment cannot be defeated absent an affirmative presentation of specific facts showing a genuine issue exists, and may not be opposed by reliance on the general allegations of the pleadings. *See id.* A mere scintilla of evidence is insufficient to defeat a motion for summary judgment.

> [I]n every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

*Id*, at 251. In reviewing a motion for summary judgment, the Court focuses on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson, supra*).

To determine whether a genuine issue exists to preclude summary judgment, federal courts employ the two-prong framework of burden shifting established by the Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). This framework places the initial burden on the moving party to establish the absence of a genuine issue as to any material fact. *See Allen*, 121 F.3d at 646 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The moving party may discharge this burden by "showing - that is, pointing out to the district court- that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. To decide whether the burden has been satisfied, the Court must view the evidence and all reasonable inferences arising therefrom in the light most favorable to the nonmoving party. *See Schoenfeld v. Babbitt*, 168 F.3d 1257, 1264 (11th Cir. 1999).

Once the movant has satisfied its burden, the burden shifts to the nonmoving party to present evidence sufficient to make a "showing that the jury could reasonably find for that party." *Allen*, 121 F.3d at 646. Facts asserted by a summary judgment opponent must be regarded as true if supported by affidavit or other evidentiary material. *See Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir. 1981). The nonmoving party's failure to prove an element essential to that party's case, and on which that party will bear the burden of proof at trial, is fatal, warranting summary judgment for the movant. *See Celotex*, 477 U.S. at 323. "In such a situation, there can be 'no genuine issue as to any material fact, 'since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*; *See also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116-17 (11th Cir. 1993). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen*, 121 F.3d at 646.

## MEMORANDUM OF LAW

In the absence of direct evidence, a Plaintiff must initially establish at least a *prima facie* case of unlawful discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[10] The *McDonnell Douglas* analytical paradigm need not be

---

[10]In *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court set forth the basic allocation of the burden and order of proof in a Title VII case. *Texas Department of*

adhered to in all cases. In appropriate circumstances, when the agency has established a legitimate, nondiscriminatory (and/or non-retaliatory) reason for its conduct, the trier of fact may dispense with the *prima facie* inquiry and proceed to the ultimate stage of the analysis, i.e., whether the Plaintiff has proven by a preponderance of the evidence that the agency's explanation was a pretext for discrimination (and/or retaliation). *United States v. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983).

### Protected Class Discrimination (Hostile Work Environment) and Retaliation

(EEOC Case, #1-H-333-0018-97)

In paragraph 7 of his Second Amended Complaint, Plaintiff alleges the following:

> Plaintiff was subjected to a continuous pattern of retaliation from February, 1997 to June 1997, which substantially altered the term, conditions and privileges including adverse employment actions and a hostile work environment by reason of race, national origin and retaliation to wit:
> a.      Defendant failed to allow plaintiff to return to work for several months after taking medical leave, despite the fact that he had been cleared by his doctors and medical unit of the defendant to return to work. (1-H-333-0018-97)

---

*Community Affairs, v. Burdine*, 450 U.S. 248 (1981). Under the *McDonnell-Douglas* and *Burdine* constructions, a three-step process is involved in a disparate treatment case, the first step of which is for the complainant to establish a prima facie case of discrimination. This may be done by showing that the complainant 1) is a member of a protected group, 2) suffered an adverse action, and 3) that similarly situated employees not of complainant's protected group, were treated differently. *McDonnell-Douglass, supra* at 802. This prima facie case rests on the assumption that fulfilling its requirements establishes facts from which an inference can be drawn that if the employer's actions remain unexplained, "it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act." *Furnco Construction v. Waters*, 438 U.S. 567 (1978).

If complainant has been successful in establishing a prima facie case, the employer must then "articulate a legitimate nondiscriminatory reason" for the employment decision. The employer need demonstrate only that a genuine issue of fact is raised by the evidence as to its action in order to meet its burden of proof of going forward with the evidence. *Furnco, supra*; *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 28 (1978). Having done so, the burden shifts back to the complainant to prove by a preponderance of the evidence that the employer's reason was a pretext for intentional discrimination. *McDonnell-Douglass, supra* at 802-04; *Burdine, supra*, at 252-253; *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1983). To meet that burden, a complainant must show that the employer did not rely on its proffered reason or that the proffered reason is not worthy of belief. In sum, proof of discriminatory motive is critical in a disparate treatment case, *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 325 (1977), and the burden of proof remains at all times with the complainant. *Burdine, supra*, and *Aikens, supra*.

7

b.      Defendant placed plaintiff on enforced leave despite the fact that he had been cleared to return to work.

c.      closely scrutinized plaintiff work performance and conduct; (1-H-333-0018-97)

d.      harassment; (1-H-333-0018-97)

e.      humiliated and berated in front of coworkers; (1-H-333-0018-97)

f.      numerous inflammatory comments were made by management to plaintiff such as but not limited to find a new job, I'm tired of your nonchalant attitude, and even an insensitive remark was made concerning the death of plaintiff's brother; (1-H-333-0018-97)

g.      deliberately scheduling meeting during plaintiff's lunch hour; (1-H-333-0018-97)

h.      Plaintiff's schedule was changed; (1-H-333-0018-97)

Complaint, Paragraph 7 a-h.

### Settlement Agreement

The uncontroverted facts demonstrate that on June 6, 1997, Butler filed his Administrative Complaint of Discrimination with the EEOC, Case, #1-H-333-0018-97, alleging that the USPS had wrongfully discriminated and retaliated against him in the form of harassment by his supervisor and his subsequent placement on enforced leave.[11]

On June 6, 1997, Butler filed an appeal with the MSPB, in the proceedings styled *Butler v. USPS*, AT-0752-97-I-1, in which Butler also raised the issue of his placement on enforced leave.[12] Butler's appeal before the MSPB (*Butler v. USPS*, AT-0752-97-I-1) and his Administrative Complaint of Discrimination with the EEOC (Case, #1-H-333-0018-97) concerned the same issues, namely, whether Butler's placement on Enforced Leave was a result of wrongful discrimination (harassment) and retaliation.

On October 15, 1997, with the assistance of counsel, Butler knowingly and voluntarily executed a Settlement Agreement with the USPS which contained a waiver and release of these and all related claims whether they be "administrative EEO complaints or appeals related to the issues referenced in this complaint, in this or any other forum, filed by the named appellant (Thomas P. Butler) or on his behalf relating to any matters that occurred prior to the execution of this Settlement

---

[11]See CSMF, paragraph 14.

[12]Butler claimed that his placement on Enforced Leave was the result of his claimed medical condition which was brought on by alleged wrongful discrimination (harassment) and retaliation by his supervisor. See CSMF, paragraph 15 and supporting attachments thereto.

Agreement."[13]    Moreover, Butler agreed not to "litigate or retaliate in any forum, judicial or administrative, any claims arising from the actions involved in" his appeal styled *Butler v. USPS*, AT-0752-97-I-1.[14]

In exchange, the USPS reassigned Butler to the position of Supervisor Distribution Operations with variable hours on Tour 3 and his Official Personnel Folder (OPF) was purged of any reference to the Notice of Proposed Placement on Enforced Leave dated May 2, 1997 and the Letter of Decision - Placement on Enforced Leave dated May 27, 1997.[15]

> A settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law. *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985). Words in a contract are to be given their plain and ordinary meaning, and it is not for the court to add or subtract any language from the face of a clearly worded agreement. *Robin v. Sun Oil Co.*, 548 F.2d 554, 557 (5th Cir. 1977); *Quesada v. Director, Federal Emergency Management Agency*, 577 F.Supp. 695, 607 (S.D. Fla. 1983), *aff'd on other grounds*, 753 F.2d 1011 (11th Cir.), *reh'g denied*, 761 F.2d 698 (11th Cir. 1985), *citing Equitable Life Assurance Society of the U.S. v. Pinon*, 344 So.2d 984 (Fla. 3d DCA), cert. denied, 354 So.2d 984 (Fla. 1977), and *Emmco Insurance Co. v. Southern Terminal & Transportation Co.*, 333 So.2d 80 (Fla. 1st DCA 1976), *cert dismissed*, 354 So.2d 986 (Fla. 1978). Nor is the court to add to a settlement terms that were not contemplated by the parties. *Florida Education Ass'n, Inc. v. Atkinson*, 481 F.2d 662, 663 (5th Cir. 1973). The court's role is to determine the intention of the parties from the language of the agreement, the apparent objects to be accomplished, other provisions in the agreement that cast light on the question, and the circumstances prevailing at the time of the agreement. *J & S Coin Operated Machines, Inc. v. Gottlieb*, 362 So.2d 38, 39 (Fla. 3d DCA 1978).

*Schwartz v. Florida Board of Regents*, 807 F.2d 901, 905-06 (11th Cir. 1987).

---

[13]In determining whether a release was knowingly and voluntarily executed, courts look to the totality of the circumstances including 1) the plaintiff's education and business experience; 2) the amount of time the plaintiff considered the agreement before signing it; 3) the clarity of the agreement; 4) the plaintiff's opportunity to consult with an attorney; 5) the employer's encouragement or discouragement of consultation with an attorney; and 6) the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled. *Puentes v. United Parcel Serv. Inc.*, 86 F.3d 196, 198 (11th Cir. 1996).

[14]See CSMF, paragraph 22.

[15]See CSMF, paragraph 23.   It is well settled in Florida that "forbearance from pursuing a legal remedy, where the promisee has a bona fide belief that a viable legal right exists, constitutes valid consideration for an agreement which benefits the promisor. *Citibank Int'l v. Mercogliano*, 574 So.2d 1190, 1191 (Fla. 3d DCA; *accord Alpha Elec. Supply, Inc v. Drake Contracting, Inc.*, 407 So.2d 363, 365 (Fla.. 5th DCA 1981).

Because the Settlement Agreement between Plaintiff and the Defendant bars Plaintiff from now litigating the matters contained in administrative EEOC Case, #1-H-333-0018-97, summary judgment should be granted to the Defendant on these claims.[16]

### Retaliation[17]
### (EEOC Case, #1-H-333-0036-97)

In paragraph 8 of his Second Amended Complaint, Plaintiff alleges the following:

> Subsequently, on July 25, 1997, the retaliatory conduct continued such as plaintiff never receiving a biased and unfounded warning which was placed in his personnel file. As a result of the retaliatory act, plaintiff duly filed a formal complaint of discrimination. (1-H-333-0036-97.

The thrust of Butler's allegations as contained in Paragraph 8 of his Second Amended Complaint is that the USPS retaliated against him for his participation in protected activity. The uncontroverted facts reveal that on July 25, 1997, Butler received a "package" from Tobe Lowe, Labor Relations Specialist, USPS, which contained a Letter of Warning (LOW) addressed to Butler, dated February 27, 1997 which had been duly drafted by Jack Watson, MDO. Although the LOW had been duly drafted, it had never been formally issued by the USPS or served upon Butler. Because Watson's LOW had not been timely served upon Butler, it was effectively abandoned by USPS management.[18]

Butler cannot establish a prima facie case of retaliation. First, Butler Plaintiff cannot demonstrate that he publically engaged in statutorily protected activity prior to June 6, 1997 when

---

[16]Assuming that the Settlement Agreement does not bar Plaintiff from now litigating the matters raised in administrative EEOC Case, #1-H-333-0018-97, which are re-asserted in paragraph 7 of Butler's Second Amended Complaint, the Defendant request the opportunity to supplement this Motion for Summary Judgment. In essence, the uncontroverted facts reveal that Plaintiff cannot show *any* harassment based upon any protected class or that any such harassment affected his work performance. These facts also reveal that Plaintiff cannot establish a prima facie case of wrongful retaliation regarding his claims. This evidence also shows that the USPS had legitimate non-discriminatory and non-retaliatory reasons for the actions taken.

[17]To establish a prima facie case of retaliation, a Plaintiff must show 1) that he engaged in statutorily protected activity; 2) that he suffered an adverse employment action; and 3) a casual link between the protected activity and the adverse action. *Standard v. A.B.E.L. Services. Inc.*, 161 F.3d 1318,1328 (11th Cir. 1998). A plaintiff may establish the first prong of the *Standard* test by opposing wrongful discriminatory practices.

[18]See CSMF, paragraphs 19, 20, and 21.

Butler filed his Administrative Complaint of Discrimination with the EEOC, Case, #1-H-333-0018-97.[19] The uncontroverted facts reveal that Watson's LOW was drafted on February 27, 1997. Since Butler cannot demonstrate that he publically engaged in statutorily protected activity prior to the February 27, 1997 drafting of Watson's LOW, Butler cannot establish the first element of a retaliation claim regarding the drafting of Watson's LOW.[20]

Second, the uncontroverted facts reveal that although Watson's LOW had been duly drafted, it had never been issued by the USPS or served upon Butler. Moreover, because it had not been timely served upon Butler, Watson's LOW was effectively abandoned by USPS management. Since the allegations contained in paragraph 8 of his Second Amended Complaint, even if true, do not amount to *serious and material* changes in the terms, conditions, or privileges of employment, they do not constitute an adverse employment action.[21] The presence of the abandoned LOW in Butler's OPF had no material impact on Plaintiff's rank, compensation, terms, conditions, benefits or privileges of employment, and did not deprived him of any employment opportunities, or adversely affects his status as an employee.

---

[19]According to Section 704(a) of Title VII, 42 U.S.C. Section 2000e-3(a), Section 4(d) of the ADEA, 29 U.S.C. Section 623(d) protected activity consists of <u>either</u> of the following:

>     1.     opposing a practice made unlawful by of the employment discrimination statutes (the "opposition clause") or
>     2.     filing a charge, testifying, assisting, or participation in any manner in an investigation, proceeding or hearing under the applicable statute (the "participation clause").

In paragraph 6 of his Second Amended Complaint, Butler asserts that he had "previously filed EEO complaints internally which is protected activity under the Act in 1997. According to Butler, these allegations refer solely to his anonymously filed Information for Precomplaint Counseling (Defendant's Exhibit #6). See attached portion of Plaintiff's Deposition (Pages 35-42) and attached Defendant's Exhibit #6.

[20]To the extent that Butler complaints about having received the LOW after public disclosure of his participation in protected activity, as detailed below, he suffered no adverse action.

[21]To prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment. However, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances. *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1239 (11th Cir. 2001).

Third, as noted above, prior to June 6, 1997, Butler had not publically participated in any protected activity.[22] By the time Butler discovered Watson's LOW (July 25, 1997), it had been abandoned. Consequently, Butler cannot establish a casual link between his public participation in protected (occurring June 6, 1997), and any adverse action.[23]

Since Butler cannot establish that he publically participated in protected activity until after the allegedly adverse action was taken against him, and because his supervisors were unaware of his alleged opposition to discriminatory practices prior to June 6, 1997, he cannot establish a prima facie case of wrongful retaliation. Accordingly, the Defendant is entitled to summary judgment on Plaintiff's retaliation claim contained in paragraph 8 of his Second Amended Complaint.

## Retaliation
(EEOC Case, #1-H-333-0011-98)

In paragraph 9 of his Second Amended Complaint, Plaintiff alleges the following:

> In addition, as a direct consequence of defendant not allowing plaintiff to return to work, on November 4, 1997, plaintiff was not eligible for the Economic Value Added Credit. Plaintif (sic) had to take out loan to pay for his bills. As a result of the retaliatory act, plaintiff duly filed a formal complaint of discrimination with EEOC. (1-H-333-0011-98).

The thrust of Butler's allegations as contained in Paragraph 9 of his Second Amended Complaint is that the USPS retaliated against him for his participation in protected activity. Specifically, Butler claims that the Defendant retaliated against him when on November 4, 1997, Keith Maynord, then Acting Plant Manager, SFMPC, advised Butler that he was not eligible for the EVA Credit for USPS fiscal year 1997.

---

[22]See CSMF, paragraph 8.

[23]

In order to establish the requisite "casual link" required as part of a prima facie case, a plaintiff need only establish that "the protected activity and the adverse action were not wholly unrelated." *See EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993); *Bigge v. Albertsons, Inc.*, 894 F.2d F.2d 1497, 1501 (11th Cir. 1990); *Simmons v. Camden County Br. of Edu.*, 757 F.2d 1187, 1189 (11th Cir.), *cert. denied*, 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985). At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action. *See, e.g., Weaver*, 922 F.2d at 1525; *Simmons*, 757 F.2d at 1189.

*Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

First, as noted above, Butler can demonstrate that he publically engaged in statutorily protected activity as of June 6, 1997 when he filed his Administrative Complaint of Discrimination with the EEOC, Case, #1-H-333-0018-97. Accordingly, Butler can establish the first element of his prima facie case of retaliation regarding his EVA Credit ineligibility claim.

Second, the Defendant concedes that Maynord's determination that Butler was not eligible for the EVA Credit for USPS fiscal year 1997 had a material impact on Plaintiff's compensation. Accordingly, the Defendant would concede that such action would amount to a *serious and material* change in the terms, conditions, or privileges of his employment, and therefore constitute an adverse employment action.    Third, however, the uncontroverted facts reveal that prior to March 27, 1998, Maynord was unaware that Butler had participated in protected activity.[24] Because Butler cannot established that Maynord was aware of his participation in protected activity, he has failed to establish a prima facie case that his ineligibility for the EVA Credit for USPS fiscal year 1997 was the result of wrongful retaliation and his claim based thereon fails.

### Defendant's Had Legitimate A Non-Discriminatory and Non-Retaliatory Reason For The Challenged Employment Decision

The evidence shows that during USPS fiscal year 1997, Butler had used 737 hours of sick leave and eight hours of leave without pay. The uncontroverted evidence shows that, for purposes of employee eligibility for the EVA Credit for USPS fiscal year 1997, Lack of contribution was defined as absences either 1) where combined sick leave and leave without pay exceeded 500 hours; or 2) combined absences (including but not limited to sick leave and leave without pay, e.g. annual leave, absence without leave) exceeded 600 hours. Accordingly, Butler's attendance record rendered him ineligible for the EVA Credit for USPS fiscal year 1997.[25]

### Protected Class Discrimination (Disparate Treatment) and Retaliation

(EEOC Case, #1-H-333-0047-99)

In paragraph 10 of his Second Amended Complaint, Plaintiff alleges the following:

Subsequently, on April 18, 1999, plaintiff was issued another unfounded warning regarding staffing. Plaintiff was also subjected to disparate treatment since another employee

---

[24]See CSMS, Paragraph 19, footnote 31.

[25]See CSMS, Paragraph 27.

who had not participated in protected activity was not disciplined at all for the same alleged infraction. As a result, plaintiff filed an informal complaint of discrimination and believes he[] filed a formal charge of discrimination with the EEOC which has been pending for over six months (1-H-333-0047-99).

The thrust of Butler's allegations as contained in paragraph 10 of his Second Amended Complaint is that the USPS subjected him to wrongful discrimination evidenced by disparate treatment and retaliated against him for his participation in protected activity. The uncontroverted evidence shows that on or about August 21, 1998, Butler received a LOW charging him with failure to perform supervisory duties in a satisfactory manner and failure to follow instructions concerning proper staffing of operations. On April 12, 1999, the Manager of Human Resources, Southeast Area Office, sustained the August 21, 1998 LOW finding that there was "sufficient evidence to warrant the action taken." Thereafter, on April 23, 1999, Butler initiated informal proceedings with the EEOC by filing a Postal Service Form 2562-A (Information for Precomplaint Counseling) with the USPS under Case #1-H-333-0047-99 asserting that the August 21, 1998 LOW was the product of wrongful discrimination and retaliation for his participation in prior protected activity. By letter dated on September 30, 1999, the Defendant advised Butler that his informal complaint had not been resolved and that he had the right to file a formal complaint of discrimination within fifteen days of his receipt of the letter. However, Butler never filed a formal Administrative Complaint under Case #1-H-333-0047-99.[26]

<u>Failure to Exhaust Administrative Remedies</u>

Prior to filing a Title VII claim, a claimant must pursue and exhaust administrative remedies with the EEOC. Courts may exercise jurisdiction over claims encompassed within the EEOC charge and claims "like or related to allegations contained in the charge, or which grow out of such allegations." *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992)(citations omitted). Allowing a complaint to encompass allegations outside the ambit of the predicated EEOC charge circumvents the EEOC's investigatory and conciliatory role.

> Plaintiffs must exhaust their administrative remedies when alleged retaliation could have been raised in the original EEOC complaint. *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546-67 (6th Cir. 1991) *citing Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 545, n. 2 (7th

---

[26]See CSMF, paragraphs 33-39.

Cir. 1988), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989). Here, each alleged act of retaliation occurred prior to the filing with EEOC, but the Plaintiffs still did not allege retaliation in their charges. Therefore, the allegations of retaliation cannot withstand (Defendants') motion for summary judgment. *Id. See also Hicks v. Baltimor Gas & Elec. Co.*, 829 F.Supp. 791, 794-95 (D.Md. 1992)(district court lacks subject matter jurisdiction when claims of retaliation and termination not filed with EEOC), *aff'd*, 998 F.2d 1009 (4th Cir. 1983), *cert. denied*, 510 U.S. 1059, 114 S.Ct. 726, 126 L.Ed.2d 690 (1994).

*Riley v. Technical And Management Services Corporation, Inc.*, 872 F.Supp. 1454 (D. Md. 1995).

Since Butler did not raise the allegations of discrimination and retaliation in a formal Administrative Complaint filed with the EEOC, he failed to exhaust his administrative remedies regarding these claims. Accordingly, the District Court lacks subject matter jurisdiction regarding Butler's claims of discrimination and retaliation stemming from EEOC Case #1-H-333-0047-99.

<u>Discrimination (Disparate Treatment)</u>[27]

Assuming for the sake of argument that the failure to exhaust argument does not bar Plaintiff from now litigating the matters raised in administrative EEOC Case, #1-H-333-0047-99, which are re-asserted in paragraph 10 of Butler's Second Amended Complaint, the Defendant now addresses the merits of his claims.

As noted above, in appropriate circumstances, when the agency has established a legitimate, non-discriminatory/non-retaliatory reason for its conduct, the trier of fact may dispense with the *prima facie* inquiry and proceed to the ultimate stage of the analysis, i.e., whether the Plaintiff has proven by a preponderance of the evidence that the agency's explanation was a pretext for discrimination). *United States v. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983).

Defendant Had Legitimate Non-Discriminatory and Non-Retaliatory Reasons<br><u>For The Challenged Employment Decision</u>

As detailed in the CSMF, on July 18, 1998, Rosie Carlies, MDO, initiated a Request for Disciplinary action against Butler based upon the circumstances surrounding Butler's performance

---

[27]To establish a prima facie case of disparate treatment, a plaintiff must show 1) that he is a member of a protected class; 2) that he was subjected to adverse employment action; and 3) his employer treated similarly situated employees more favorably. *E.E.O.C. v. Joes's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).

as SDO in Postal Operation 208 on July 15, 1998.[28]  Indeed, on August 21, 1998, Carlies issued a LOW charging Butler with failure to perform supervisory duties in a satisfactory manner and failure to follow instructions concerning proper staffing of operations (specifically, on July 15, 1998, Butler had eleven mail handlers (three more than necessary) on Operation 208).  On November 10, 1998, Robert Dillon, Acting Plant Manager, found that the August 21, 1998 LOW had been issued for "just cause." Thereafter, Butler appealed the issuance of the LOW to the Manager of Human Resources, Southeast Area Office.  On April 12, 1999, Karen A. Borowski, Manager of Human Resources, Southeast Area Office, denied Butler's appeal finding that there was "sufficient evidence to warrant the action taken."

**Retaliation**

(EEOC Case, #1-H-333-0012-00)

In paragraph 11 of his Second Amended Complaint, Plaintiff alleges the following:

> Subsequently, on November 3, 1999, plaintiff was forced to leave the building and was subjected to verbal abuse, such as being called stupid by MDO Carlies.  Plaintiff was ordered home that day despite the fact that there was no basis to do so.  This was direct retaliation for filing a complaint of discrimination in April, 1999.  (1-H-333-0012-00)

Again, the thrust of Butler's allegations as contained in Paragraph 11 of his Second Amended Complaint is that the USPS retaliated against him for his participation in protected activity.  The uncontroverted facts shows that on November 3, 1999, Butler was sent home for non-responsiveness and insubordination.[29]

Again, as noted above, in appropriate circumstances, when the agency has established a legitimate, non-retaliatory reason for its conduct, the trier of fact may dispense with the *prima facie* inquiry and proceed to the ultimate stage of the analysis, i.e., whether the Plaintiff has proven by a preponderance of the evidence that the agency's explanation was a pretext for retaliation).  *United States v. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983).

---

[28]Postal Operation 208 was an automated mail processing area which employed a the Scan Where You Band (SWYB) machine which, according to USPS policy and procedure, required no more than eight mail handlers to operate efficiently and effectively.  Unnecessary staffing result in unnecessary costs and is detrimental to the agency's commitment to improved performance and customer satisfaction. Butler was aware of this policy and procedure. See CSMF, paragraph 33.

[29]See CSMF, paragraphs 40-44.

16

Defendant Had Legitimate A Non-Discriminatory and Non-Retaliatory Reason
For The Challenged Employment Decision

As detailed in the CSMF, on November 18, 1999, MDO Carlies initiated a Request for Disciplinary action against Butler based upon the circumstances surrounding Butler's performance as SDO of the small parcel bundle sorter (SPBS) on Tour Three (one of three work shifts at the SFMPC) on November 3, 1999, when Butler was sent home for being non-responsive and insubordinate. On November 29, 1999, based upon the events of November 3, 1999, Carlies issued a proposed LOW in Lieu of Time Off Suspension to Butler charging him with "Unacceptable conduct due to your failure to respond and comply with directives given you." Thereafter, Butler appealed the issuance of the proposed November 29, 1999 LOW to the Plant Manager, Saundra D. Richardson. On January 18, 2000, Richardson issued a Letter of Decision finding that "the charge as outlined in the proposed letter is fully supported by the evidence of record, and warrant(s) the action."[30]

## CONCLUSION

> Title VII prohibits discrimination; it is not a shield against harsh treatment at the work place. Personal animosity is not the equivalent of [protected class] discrimination .... The plaintiff cannot turn a personal feud into a [protected class] discrimination case. . . .

*Succar v. Dade County School Board*, 229 F.3d 1343, 1345 (11th Cir. 2000) citing *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986). Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace. *Davis*, 245 F.3d at 1239; *Gupta v. Florida Board of Regents*, 212 F.3d 571, 583 (11th Cir. 2000); and *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).

The undisputed facts reveal that the Settlement Agreement between Plaintiff and Defendant bars Plaintiff from now litigating his placement on enforced leave (and other related matters raised in administrative EEOC Case, #1-H-333-0018-97).

In addition, the undisputed facts reveal that Plaintiff cannot establish a prima facie case of wrongful retaliation regarding his July 25, 1997 discovery of the February 27, 1997 LOW (the claim first raised in EEOC Case, #1-H-333-0036-97).

---

[30]See CSMF, paragraphs 40-43.

Regarding his ineligibility to receive the EVA credit for USPS fiscal year 1997, Plaintiff cannot establish a prima facie case of wrongful retaliation (the claim first raised in EEOC Case, #1-H-333-0011-98). In addition, the evidence shows that the USPS had legitimate non-discriminatory and non-retaliatory reasons for the actions taken.

Regarding Butler's August 21, 1998 receipt of a LOW charging him with failure to perform supervisory duties in a satisfactory manner and failure to follow instructions concerning proper staffing of operations, the facts reveal that Plaintiff failed to exhaust his administrative remedies regarding this claim (and therefore, the Court lacks subject matter jurisdiction regarding the matters which were the subject of informal proceedings filed in EEOC, Case, #1-H-333-0047-99). In addition, the evidence shows that the USPS had legitimate non-discriminatory and non-retaliatory reasons for the action taken.

Finally, regarding Butler's November 29, 1999 receipt of a LOW charging him with "Unacceptable conduct due to your failure to respond and comply with directives given you" (the claim first raised in EEOC Case, #1-H-333-0012-00), the undisputed facts reveal that the USPS had legitimate non-discriminatory and non-retaliatory reasons for the action taken.

Accordingly, the Defendant is entitled to summary judgment.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By _____

CHARLES S. WHITE
Assistant United States Attorney
Fla. Bar No. 394981
99 N.E. 4th Street, Suite 322
Miami, Florida 33131
Tel. (305) 961-9286
Fax. (305) 530-7139

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was furnished by U.S. Mail on March 14, 2003 to Stewart Lee Karlin, Esq., Attorney for Plaintiff, 315 S.E.7th Street, Suite 200 Ft. Lauderdale, Florida 33301.

By _____

CHARLES S. WHITE
Assistant United States Attorney

18