IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6193-CIV LENARD/Simonton

THOMAS BUTLER,

        Plaintiff,

v.                                       CONSENT CASE

JOHN POTTER, Postmaster,
United States Postal Service,

        Defendant.
_____/

### DEFENDANT'S CONCISE STATEMENT OF MATERIAL FACTS AS TO WHICH THERE EXISTS NO GENUINE ISSUE TO BE TRIED

1. On August 3, 1987, Thomas Butler (Butler) was hired by the United States Postal Service (USPS) as a Mail Handler, a Level 4 employee, in Miami, Florida.[1]

2. Thereafter, on September 20, 1990, Butler was selected for the position of Supervisor, Mails Relief, an Executive Administration Schedule (EAS), a Level 15 employee.[2]

3. On or about February 20, 1993, Butler was promoted to Supervisor, Distribution Operations (SDO), a Level 16 employee. Butler worked at the Miami Processing and Distribution Center.[3]

4. On September 26, 1994, based upon an apparent excess number of SDO's at the Miami Processing and Distribution Center, Butler was reassigned to work at the South Florida Mail Processing Center (SFMPC) where he was supervised by Sergio Fernandez, Manager, Distribution Operations (MDO).[4]

5. On February 23, 1997, Butler advised his supervisors that he wanted to be considered for a transfer to the position of Supervisor of Distribution of Operations, Level 16, on Tour 3.[5]

6. On March 5, 1997, an incident occurred between Butler and his supervisor, Sergio Fernandez. According to Butler:

---

[1] See PS Form 50, dated February 25, 1993, as maintained in Plaintiff's OPF, and which is attached to the Declaration of Taylor-Laury, and Plaintiff's deposition (pages 9-11) and Def. Ex. #1.

[2] See Declaration of Laura Taylor-Laury, and Plaintiff's deposition (pages 11-14) and Def. Ex. #2.

[3] See Declaration of Laura Taylor-Laury, and Plaintiff's deposition (pages 14-18) and Def. Ex. #3.

[4] See Declaration of Laura Taylor-Laury, and Plaintiff's deposition (pages 18-21) and Def. Ex. #4.

[5] See Declaration of Laura Taylor-Laury, and Plaintiff's deposition (pages 22-28) and Def. Ex. #5.

On March 5, 1997, the following occurred: After a 30 minute meeting in the MDO office (Angelo Tom Sergio Rosie) I was counseling employee Julio Burgess. Mr. Fernandez broke up the counseling and began harassing me about my operation (that he pulled me away from for 40 min). Mr. Fernandez has been harrassing (sic) me and creating a stressed environment for me since I first came to the SFMPC. He has made me have lunch during a meeting that was scheduled at my lunch time. On 2/19 he was vindictive towards me concerning a staffing problem he stated "I'll take care of that, I'll put you in charge of the FSM." On 2/25 he threatened me stating "This is your training week. Wait til next week." On 4-22-96 he changed my hours worked. I had Joann Feindt correct this violation of FLSA. On 3/4/97 7 employees me with Joann concerning employee complaints of Sergio Fernande[z]. I feel my operation and self have suffered corresponding reprisal. On numerous occasions Mr. Fernandez has humiliated and embarrassed me in front of my employees and peers. He intimidates employees and supervisors on the workroom floor. On 3/5/97 I went home stressed out.[6]

7.   On March 20, 1997, Butler initiated informal proceedings with the Equal Employment Opportunity Commission (EEOC) when he reported the foregoing incidents in Precomplaint Counseling asserting that he had been subjected to wrongful discrimination based upon color ("White"), religion ("Quaker"), age ("over 40"), race ("Caucasian (non Hispanic)"), national origin ("USA), and sex ("Male").[7]

8.   Butler requested anonymity regarding the informal counseling stage of the EEO complaint processing and therefore, management was not advised about it. Accordingly, for purposes of these proceedings, prior to June 6, 1997, when he filed his formal Administrative Complaint, Butler had not publically participated in protected activity.[8]

9.   In a letter dated April 14, 1997, Dr. Evelyn Lopez-Brignoni, M.D., advised Joann Feindt, Plant Manager for the SFMPC, as follows:

I have been following Mr. Butler since March 10, 1997. At that time, he was severely anxious and depressed as a result of ongoing problems with a supervisor, Mr. Sergio Fernandez.
Mr. Butler developed multiple somatic and stress symptoms which appear to be directly related to his conflicts with this supervisor.
At the present time, Mr. Butler is ready to return to work on a part-time basis (20 hrs.), gradually increasing his time over the next two weeks until he is back to his work detail on a full-time basis. It is imperative that he not return to work under Mr. Fernandez, as this will aggravate a recovering problem.[9]

10.   In response, by letter dated May 2, 1997, Sergio Fernandez, Manager, Distribution Operations, advised Butler of his intention to place Butler on enforced leave based upon the diagnosis of Dr. Lopez-Brignoni. In pertinent part, Fernandez wrote as follows:

Your documentation indicates that you are not able to return to work and perform the full duties of your position. Specifically, your doctor advises that you can only work on a part- time basis and has limited you to no more than 20 hours. Additionally, your documentation indicates that if you do return to duty,

---

[6]See Declaration of Laura Taylor-Laury, and Plaintiff's deposition (pages 28-32) and Def. Ex. #6.

[7]See Declaration of Laura Taylor-Laury, and Plaintiff's deposition (pages 32-40) and Def. Ex. #6.

[8]See Declaration of Laura Taylor-Laury, and Plaintiff's deposition (pages 41-42) and Def. Ex. #6.

[9]See Declaration of Laura Taylor-Laury, and Plaintiff's deposition (pages 48-61) and Def. Ex. #7.

you could not work under my supervision.
You will remain on enforced leave until you are able to furnish medical documentation demonstrating to the satisfaction of management that you are able to perform the duties of your position.[10]

11. In a letter dated May 8, 1997, Dr. Lopez-Brignoni advised the Plant Manager as follows:

As a follow-up to my letter of April 14, 1997, Mr. Butler is cleared to return to full-time duties on May 12, 1997.
As stated before, he should not work under the supervision of Sergio Fernandez, at least for the time being.[11]

12. By letter dated May 13, 1997, and in a face-to-face/telephone conversation on May 15, 1997, Butler advised Robert Dillon, Senior Manager, Distribution Operations, USPS, of his response to the proposal to place him on enforced leave.[12]

13. By letter dated May 27, 1997, Robert Dillon, Senior Manager, Distribution Operations, USPS, advised Butler that, after full consideration of his responses, his "placement on enforced leave is for such cause as to promote the efficiency of the service. This action will be effective June 6, 1997."[13]

14. On June 6, 1997, Butler filed his Administrative Complaint of Discrimination with the EEOC, Case, #1-H-333-0018-97, alleging that the USPS had wrongfully discriminated and retaliated against him.[14]

15. On June 6, 1997, Butler filed an appeal with the Merit System Protection Board (MSPB), styled in the proceedings styled *Butler v. USPS*, AT-0752-97-I-1 (stamp filed June 23, 1997), raising the issues of the agency's action placing him on enforced leave and refusal to accept medical documentation.[15]

16. On September 8, 1997, Butler filed his Appellant's Prehearing Submission with the MSPB in the proceedings styled *Butler v. USPS*, AT-0752-97-I-1 which, in pertinent part, states as follows:

   1. By notice of proposed adverse action dated May 2, 1997, appellant was notified by Sergio Fernandez, Manager, Distribution Operations, SFMPC, Tour 1, Pembroke Pines,

---

[10] See Declaration of Laura Taylor-Laury.

[11] See Declaration of Laura Taylor-Laury, and Plaintiff's deposition (page 65) and Def. Ex. #9.

[12] See Declaration of Robert Dillon.

[13] See Declaration of Robert Dillon, and Plaintiff's deposition (page 64) and Def. Ex. #10.

[14] In this Administrative Complaint (upon which these judicial proceedings are based in part), Butler alleges wrongful discrimination based upon race ("CAUCASIAN (NON HISPANIC)"), color ("WHITE"), religion ("QUAKER"), national origin ("AMERICAN"), sex ("MALE"), age ("OVER 40"), retaliation (unspecified), and disability ("Family and Medical Leave Act"). Regarding retaliation, Butler identifies the prior EEO activity as only those events taking place in March 1997. See Declaration of Laura Taylor-Laury, Administrative Complaint, Case #1-H-333-0018-97 attached thereto, and Plaintiff's deposition (page 61) and Def. Ex. #11.

[15] See Declaration of Laura Taylor-Laury, and Plaintiff's deposition (pages 62-66) and Def. Ex. #12.

    Florida, that he was proposing that appellant be Placed on Enforced Leave. This proposal was based upon the following charge(s): (1) Appellant's medical condition.

2. By letter of decision dated May 27, 1997, Robert Dillon, Senior Manager, Distribution Operations, SFPDC, Pembroke Pines, Florida, concluded that the evidence warranted appellant's placement on Enforced Leave. The action was effective June 6, 1997.[16]

17. In a letter to Butler dated September 19, 1997, the USPS EEO Compliance and Appeals Coordinator acknowledged receipt of Butler's Administrative Complaint Case, #1-H-333-0018-97. In pertinent part, this letter provides as follows:

> We have received the above-referenced complaint of discrimination filed on June 6, 1997. Your complaint has been accepted for investigation. The scope of the investigation will include the following issue(s) only:

| | |
|---|---|
| Specific Issue(s): | You were harassed by your supervisor about your job performance and subsequently placed on enforced leave. |
| Date(s) of Incident: | March 5, 1997 |
| Type(s) of Discrimination: | Race (Caucasian Non-Hispanic), Color (white), Religion (Quaker), Sex (male), National Origin (America), and Age (42) |

> If you disagree with the defined issue(s), you must provide us with sufficient reasons to substantiate your objections, in writing seven (7) calendar days of receipt of this letter.[17]

18. Butler did not object to the issues as defined.[18]

19. On July 25, 1997, Butler received a "package" from Tobe Lowe, Labor Relations Specialist, USPS, which contained a Letter of Warning (LOW) addressed to Butler, dated February 27, 1997 which had been duly drafted by Jack Watson, MDO.[19] Although the LOW had been duly drafted, it had never been served upon

---

[16] See Declaration of Laura Taylor-Laury, and Plaintiff's deposition (pages 68-75) and Def. Ex. #13.

[17] See Declaration of Laura Taylor-Laury, and Plaintiff's deposition (pages 75-78) and Def. Ex. #14.

[18] See Declaration of Laura Taylor-Laury, and Plaintiff's deposition (pages 75-78) and Def. Ex. #14.

[19] The "package," which constituted the USPS response to Butler's request for discovery in the EEOC proceedings, Case, #1-H-333-0018-97 (seeking copies of all records of disciplinary action against Butler), contained a Request for Disciplinary Action and Watson's LOW against Butler.

  Ordinarily, if USPS management determines that an employee's conduct is deficient because the employee has violated some rule, regulation, policy, or procedure of the USPS, a LOW is issued and served upon the subject employee for the dual purpose of formally advising said employee of deficiency and of the need for corrected behavior. Regardless of whether a USPS employee is covered by a union collective bargaining agreement, in all disciplinary proceedings, it is the policy of the USPS to adhere to the tenets of just cause found in many collective bargaining agreements. These tenets include a timely and thorough investigation of the matter at issue as well as timely issuance and service of any resulting process (usually within thirty days if issuance). The issuance of a LOW is the first step in the employee disciplinary process within the USPS. If the LOW is not set aside through union collective bargaining agreement grievance procedures, it remains in the employee's OPF for three years. If the employee's conduct is not corrected, subsequent disciplinary action can result in suspension, downgrading of employment grade, and/or removal.

Butler. Because Watson's LOW had not been timely served upon Butler, it was effectively abandoned by USPS management.[20]

20.  By letter dated August 1, 1997, Butler advised Robert Dillon, Senior Manager, Distribution Operations, USPS, as follows:

> On 7/25/97 I received a package from labor relations (Tobe Lowe). In the package Tobe Lowe had included a copy of a L.O.W. (Letter Of Warning) from Jack Watson dated Feb. of 1997. I had never seen said L.O.W. I was unaware that I was even going to get the letter let alone discover it by accident in the package from Tobe Lowe on 7-25-97 (nearly five months after the alleged letter was dated[)].
>
> I wish to appeal the fact that this L.O.W. was never shown, given, or mailed to me and therefore is inappropriate and unacceptable. I believe it to be an unethical procedure.
>
> Furthermore, I contend it was designed to be retaliatory and discriminatory and I am pursuing legal action thru (sic) the EEO process, to rectify this unjust action.[21]

21.  By letter dated August 6, 1997, Dillon responded to Butler as follows:

> This is to inform you that the Letter of Warning, dated February 1997, and included in a package presented to you on 7/25/97, was there in error. You were correct in saying that this was a letter that you had never seen before. You were never issued this action. It was requested, but was deemed to be untimely by the time it was available to be issued. Without prejudice to its contents, the letter was not issued, and therefore should not appear in any records of the U.S. Postal Service. By copy of this letter, I have notified Ms. Lowe of this fact. Any copies or records of this action will be destroyed.[22]

22.  On October 15, 1997, with the assistance of his own counsel, Roscoe E. Long, Esq., Butler knowingly and voluntarily entered into a Settlement Agreement regarding the allegations raised in EEOC Case, #1-H-333-0018-97. In pertinent part, the Settlement Agreement provided as follows:

> In full and complete resolution of the Appeal cited herein, the undersigned parties agree as follows:
>
> . . .
>
> It is understood by the undersigned that this Agreement is in full and complete settlement of all issues related to Appellant's Merit Systems Protection Board Appeal Number AT-0752-97-0767-I-1, administrative EEO complaints or appeals related to the issues referenced in this complaint, in this or any other forum, filed by he named appellant (Thomas P. Butler) or on his behalf relating to any matters that occurred prior to the execution of this Settlement Agreement. Appellant agrees to voluntarily withdraw any outstanding administrative complaint or appeal, including this Merit Systems Protection Board case, and EEOC of all issues related to this appeal. It is understood that in withdrawing all appeals or complaints related to this issue, Appellant waives his rights to an oral hearing of further appeal on the

---

Ordinarily, a copy of a LOW is maintained in an employee's OPF. See Declarations of Laura Taylor-Laury, Toby Lowe, and Robert Dillon, and Plaintiff's deposition (pages 79-87) and Def. Ex. #15.

[20]See Declarations of Taylor-Laury, Dillon, and Lowe (pages 75-78), and Plaintiff's deposition (pages 79-87) and Def. Ex. #15.

[21]See Declarations of Taylor-Laury, Dillon, and Lowe, and Plaintiff's deposition (pages 79-87) and Def. Ex. #15.

[22]See Declarations of Taylor-Laury, Dillon, and Lowe, and Plaintiff's deposition (pages 88-90) and Def. Ex. #16.

matters raised.

. . . .

The Appellant, Thomas Butler, will be reassigned to the position of Supervisor Distribution Operations. The Appellant's hours will be variable on Tour 3, and days off will be Thursday and Friday.

. . . .

The agency will purge the appellant's Official Personnel File of any reference to the Notice of Proposed Placement on Enforced Leave dated May 2, 1997 and the Letter of Decision - Placement on Enforced Leave dated May 27, 1997.

. . . .

It is understood that the Appellant shall not litigate or retaliate in any forum, judicial or administrative, any claims arising from the actions involved in this appeal.[23]

23. Thereafter, in consideration for the terms set forth in the aforementioned Settlement Agreement, on December 1, 1997, Butler was reassigned to the position of Supervisor Distribution Operations with variable hours on Tour 3 and his OPF was purged of any reference to the Notice of Proposed Placement on Enforced Leave dated May 2, 1997 and the Letter of Decision regarding his Placement on Enforced Leave dated May 27, 1997.[24]

24. On October 27, 1997, Butler filed his Administrative Complaint of Discrimination with the EEOC, Case, #1-H-333-0036-97, alleging that the USPS had wrongfully discriminated and retaliated against him based upon the February 27, 1997 LOW.[25]

25. In a letter to Butler dated February 19, 1998, the USPS EEO Compliance and Appeals Coordinator acknowledged receipt of Butler's Administrative Complaint Case, #1-H-333-0036-97. In pertinent part, this letter provides as follows:

We have received the above-referenced complaint of discrimination filed on October 27, 1997. Your complaint has been accepted for investigation. The scope of the investigation will include the following issue(s) only:

| | |
|---|---|
| Specific Issue(s): | You were given a package from Labor Relations with a copy of a L.O.W. for which you had never received. |
| Date(s) of Incident: | July 25, 1997 |
| Type(s) of Discrimination: | Race (Caucasian), Color (white), Religion (Quaker), Sex (male), Age (43) and Retaliation (prior EEO activity) |

If you disagree with the defined issue(s), you must provide us with sufficient reasons to substantiate your objections, in writing seven (7) calendar days of receipt of this letter.[26]

---

[23] See Declaration of Taylor-Laury and Plaintiff's deposition (pages 90-101) and Def. Ex. #17.

[24] See Declarations of Taylor-Laury and Toby Lowe.

[25] In this Administrative Complaint (upon which these judicial proceedings are based in part), Butler alleges wrongful discrimination based upon race ("WHITE NON HISPANIC"), color ("WHITE"), religion ("QUAKER"), national origin ("USA"), sex ("MALE"), age ("43"), and retaliation ("3-7-97"). See Declaration of Laura Taylor-Laury, Administrative Complaint, Case #1-H-333-0036-97 attached thereto.

[26] See Declarations of Taylor-Laury and Plaintiff's deposition (pages 113-114).

26.  Butler did not object to the issues as defined.[27]

27.  In 1996, the USPS implemented a new variable pay program for exempt employees based on a new measure of financial performance which was dubbed Economic Value Added (EVA).[28] EVA is an incentive program based on an employee's contribution or lack of contribution to the goals of the USPS. Attendance was one of the factors viewed by management in assessing employee eligibility for an EVA credit. To receive the full credit under the incentive program, eligible employees in organizational units had to meet established targets. Otherwise qualified employees would be disqualified from receiving the EVA credit if they "do not fully contribute to the performance of the organization. . . ." Lack of contribution was defined as absences either 1) where combined sick leave and leave without pay exceeded 500 hours; or 2) combined absences (including but not limited to sick leave and leave without pay, e.g. annual leave, absence without leave) exceeded 600 hours.[29]

28.  During USPS fiscal year 1997 (the EVA year commencing September 14, 1996 and ending September 12, 1997), Butler used 737 hours of sick leave and eight hours of leave without pay. Accordingly, Butler was disqualified from obtaining the EVA credit for USPS fiscal year 1997.[30]

29.  On November 4, 1997, Keith Maynord, then Acting Planet Manager, SFMPC, advised Butler that he was not eligible for the EVA credit for USPS fiscal year 1997.[31]

30.  On February 4, 1998, Butler filed his Administrative Complaint of Discrimination with the EEOC, Case, #1-H-333-0011-98, alleging that the USPS had wrongfully discriminated and retaliated against him based upon his being deemed ineligible to receive the EVA credit for USPS fiscal year 1997.[32]

31.  In a letter to Butler dated April 17, 1998, the USPS EEO Compliance and Appeals Coordinator

---

[27] See Declarations of Taylor-Laury and Toby Lowe and pertinent portions of Plaintiff's deposition.

[28] Variable pay programs provide cash awards for participating employees based on objective measures of organizational performance. These programs are "variable" in the sense that the size of the award may differ from year to year based on the organizational performance in a particular year. Since the awards are lump sum cash awards, the payments must be earned each successive year by achieving organizational objectives. See Declarations of Taylor-Laury and Keith Maynord and pertinent portions of Plaintiff's deposition.

[29] A fifty two week work year multiplied times 40 hours per week results in the product of 2,080 work hours per year. 500 hours is equal to approximately 25% of such a work year.

[30] See Declarations of Taylor-Laury and Keith Maynord and portions of Plaintiff's deposition.

[31] Prior to March 27, 1998, Maynord was unaware that Butler had participated in protected activity. See Declarations of Taylor-Laury and Keith Maynord.

[32] In this Administrative Complaint (upon which these judicial proceedings are based in part), Butler alleges wrongful discrimination based upon race ("CAUCASIAN"), color ("WHITE"), religion ("QUAKER"), national origin ("USA"), sex ("MALE"), age ("44"), and retaliation ("3-7-97"). See Declaration of Laura Taylor-Laury, Administrative Complaint, Case #1-H-333-0011-98 attached thereto, as well as pertinent portions of Plaintiff's deposition.

acknowledged receipt of Butler's Administrative Complaint Case, #1-H-333-0011-98. In pertinent part, this letter provides as follows:

> We have received the above-referenced complaint of discrimination filed on February 4, 1998. Your complaint has been accepted for investigation. The scope of the investigation will include the following issue(s) only:
>
> | | |
> |---|---|
> | Specific Issue(s): | You were excluded from the EVA bonus due to lack of contribution. |
> | Date(s) of Incident: | November 4, 1997 |
> | Type(s) of Discrimination: | Race (Caucasian), Color (white), Religion (Quaker), National Origin (USA), Sex (male), Retaliation (prior EEO activity), and Age (43) |
>
> If you disagree with the defined issue(s), you must provide us with sufficient reasons to substantiate your objections, in writing, seven (7) calendar days of receipt of this letter.[33]

32.   Butler did not object to the issue as defined.[34]

33.   On July 18, 1998, Rosie Carlies, MDO, initiated a Request for Disciplinary action against Butler based upon the circumstances surrounding Butler's performance as SDO in Postal Operation #208 on July 15, 1998.[35] Indeed, on August 21, 1998, Carlies issued a LOW charging Butler with failure to perform supervisory duties in a satisfactory manner and failure to follow instructions concerning proper staffing of operations (specifically, on July 15, 1998, Butler had eleven mail handlers (three more than necessary) on Operation 208). Thereafter, Butler appealed the issuance of the LOW to the Acting Plant Manager, Robert Dillon.[36]

34.   On November 10, 1998, Dillon found that the August 21, 1998 LOW had been issued for "just cause." Thereafter, Butler appealed the issuance of the LOW to the Manager of Human Resources, Southeast Area Office.[37]

35.   On April 12, 1999, Karen A. Borowski, Manager of Human Resources, Southeast Area Office,

---

[33] See Declaration of Laura Taylor-Laury and pertinent portions of Plaintiff's deposition.

[34] See Declaration of Laura Taylor-Laury and pertinent portions of Plaintiff's deposition.

[35] Postal Operation 208 was an automated mail processing area which employed a the Scan Where You Band (SWYB) machine which, according to USPS policy and procedure, required no more than eight mail handlers to operate efficiently and effectively. Unnecessary staffing result in unnecessary costs and is detrimental to the agency's commitment to improved performance and customer satisfaction. Butler was aware of this policy and procedure. See Declaration of Rosie Carlies, paragraph 3.

[36] See Declarations of Laura Taylor-Laury, Rosie Carlies, and Robert Dillon.

[37] See Declarations of Laura Taylor-Laury and Robert Dillon.

denied Butler's appeal finding that there was "sufficient evidence to warrant the action taken."[38]

36. Prior to April 12, 1999, Karen Borowski, Manager, Human Resources, Southeast Area Office, USPS, was not aware that Butler had participated in protected activity.[39]

37. On April 23, 1999, Butler initiated informal proceedings with the EEOC by filing a Postal Service Form 2564-A (Information for Precomplaint Counseling) with the USPS under Case #1-H-333-0047-99 asserting that the August 21, 1998 LOW was the product of wrongful discrimination and retaliation for his participation in prior protected activity.[40]

38. Thereafter, by letter dated on September 30, 1999, the Defendant advised Butler that his informal complaint had not been resolved and that he had the right to file a formal complaint of discrimination within fifteen days of his receipt of the letter.[41]

39. Thereafter, Butler never filed a formal Administrative Complaint under Case #1-H-333-0047-99.[42]

40. On November 18, 1999, Carlies initiated a Request for Disciplinary action against Butler based upon the circumstances surrounding Butler's performance as SDO of the small parcel bundle sorter (SPBS) on Tour Three (one of three work shifts at the SFMPC) on November 3, 1999, when Butler was sent home for being non-responsive and for insubordination.[43]

41. On November 29, 1999, based upon the events of November 3, 1999, Carlies issued a proposed LOW in Lieu of Time Off Suspension to Butler charging him with "Unacceptable conduct due to your failure to respond and comply with directives given you." Prior to November 29, 1999, Carlies was not aware that Butler

---

[38]See Declarations of Laura Taylor-Laury and Karen A. Borowski.

[39]See Declarations of Laura Taylor-Laury and Karen A. Borowski.

[40]In his Form 2564-A (upon which these judicial proceedings are based in part), Butler alleges wrongful discrimination based upon race, color, sex, national origin, and retaliation (citing Case # 1-H-333-0018-97, 1-H-333-0011-98, and 1-H-333-0036-97. See Declaration of Laura Taylor-Laury, Form 2564-A, Case #1-H-333-0047-99 attached thereto, as well as pertinent portions of Plaintiff's deposition.

[41]Butler acknowledged receiving this letter on October 8, 1999. Accordingly, his formal Complaint was due to be filed on or before October 23, 1999. See Declaration of Taylor-Laury.

[42]See Declaration of Laura Taylor-Laury

[43]The SPBS is a mechanized mail processor that sorts small parcels and bundles of mail on one of four conveyer belts taking it to a clerk. The clerk examines each individual parcel, keys in the marked zip code and places the parcel on the appropriate outgoing conveyer belt which transports the parcel to a bin corresponding to the appropriate zip code. It automatically tracks the number of parcels properly processed, as well as those not properly processed (improperly keyed mail is transported to a reject bin where it is retrieved and either reprocessed or hand sorted). Supervisors could obtain a hard copy of this data by pressing the appropriate button on the SPBS ending mail processing and printing a report indicating the total number of mail pieces processed, the number rejected, and other pertinent operation data (commonly known as "running a report"). See Declarations of Laura Taylor-Laury, Rosie Carlies, and Saundra Richardson.

had participated in protected activity.[44]

42. Thereafter, Butler appealed the issuance of the proposed November 29, 1999 LOW to the Plant Manager, Saundra D. Richardson.[45]

43. On January 18, 2000, Richardson issued a Letter of Decision finding that "the charge as outlined in the proposed letter is fully supported by the evidence of record, and warrant(s) the action."[46]

44. Prior to June 19, 1999, Sandy Richardson, Plant Manager, USPS, became aware that Butler had participated in protected activity.[47]

45. On March 14, 2000, Butler filed his Administrative Complaint of Discrimination with the EEOC, Case, #1-H-333-0012-00, alleging that the USPS had wrongfully discriminated and retaliated against him based upon his receipt of a Letter of Decision regarding the proposed November 29, 1999 LOW in lieu of time off suspension stemming from based upon the above described events of November 3, 1999.[48]

46. In a letter to Butler dated April 27, 2000, the USPS EEO Compliance and Appeals Coordinator acknowledged receipt of Butler's Administrative Complaint Case, #1-H-333-0012-00. In pertinent part, this letter provides as follows:

> We have received the above-referenced complaint of discrimination filed on March 14, 2000. Your complaint has been accepted for investigation. The scope of the investigation will include the following issue(s) only:
>
> | | |
> |---|---|
> | Specific Issue(s): | You received a Letter of Decision regarding a proposed Letter of Warning in Lieu of Time Off [Suspension]. |
> | Date(s) of Incident: | January 25, 2000 |
> | Type(s) of Discrimination: | Race (Caucasian), Color (white), Sex (male), and Retaliation (prior EEO activity) |
>
> If you disagree with the defined issue(s), you must provide us with sufficient reasons to substantiate your objections, in writing, seven (7) calendar days of receipt of this letter.[49]

47. Butler did not object to the issues as defined.[50]

---

[44] See Declarations of Laura Taylor-Laury and Rosie Carlies.

[45] See Declarations of Laura Taylor-Laury, Rosie Carlies, and Saundra D. Richardson.

[46] See Declarations of Laura Taylor-Laury and Saundra D. Richardson.

[47] See Declarations of Laura Taylor-Laury and Saundra D. Richardson.

[48] In this Administrative Complaint (upon which these judicial proceedings are based in part), Butler alleges wrongful discrimination based upon race ("CAUCASIAN"), color ("WHITE"), sex ("MALE"), and retaliation. See Declaration of Laura Taylor-Laury, Administrative Complaint, Case #1-H-333-0012-00 attached thereto, as well as pertinent portions of Plaintiff's deposition.

[49] See Declaration of Laura Taylor-Laury as well as pertinent portions of Plaintiff's deposition.

[50] See Declaration of Laura Taylor-Laury as well as pertinent portions of Plaintiff's deposition.

The forgoing Concise Statement of Material Facts as to which there exists no genuine issue to be tried is submitted in accordance with Rule 56(e), Federal Rules of Civil Procedure, and Local Rule 7.5.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By  _____
CHARLES S. WHITE
Assistant United States Attorney
Fla. Bar No. 394981
99 N.E. 4th Street, Suite 322
Miami, Florida 33131
Tel. (305) 961-9286
Fax. (305) 530-7139

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was furnished by U.S. Mail on March 14, 2003 to Stewart Lee Karlin, Esq., Attorney for Plaintiff, 315 S.E. 7th Street, Suite 200, Ft. Lauderdale, Florida 33301.

By  _____
CHARLES S. WHITE
Assistant United States Attorney