IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6193-CIV LENARD/Simonton

THOMAS BUTLER,

        Plaintiff,

v.                                                                    CONSENT CASE


JOHN POTTER, Postmaster,
United States Postal Service,

        Defendant.

_____/

### NOTICE OF FILING OF DECLARATION OF ROSIE CARLIES

COMES NOW the Defendant, by and through the undersigned counsel, to provide this

Notice Of Filing Of Declaration of Rosie Carlies and supporting documentation including:

1.     PS Form 50, dated December 3, 1997;
2.     Request for Disciplinary Action, dated July 18, 1998;
3.     Letter of Warning, dated August 21, 1998;
4.     Step A Decision, dated October 8, 1998;
5.     Step B Decision, dated November 10, 1998;
6.     Review and Decision, dated April 12, 1999;
7.     Request for Disciplinary Action, dated November 18, 1999;
8.     Proposed LOW in Lieu of Time Off Suspension, dated November 29, 1999;
9.     Letter of Decision, dated January 18, 2000;

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By

CHARLES S. WHITE
Assistant United States Attorney
Fla. Bar No. 394981
99 N.E. 4th Street, Suite 322
Miami, Florida 33131
Tel. (305) 961-9286
Fax. (305) 530-7139

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing was furnished by U.S. Mail on March 14, 2003 to Stewart Lee Karlin, Esq., Attorney for Plaintiff, 315 S.E.7th Street, Suite 200 Ft. Lauderdale, Florida 33301.

By

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 00-6193-CIV LENARD/Simonton

THOMAS BUTLER,

        **Plaintiff,**

v.                                                     **CONSENT CASE**

JOHN POTTER, Postmaster,
United States Postal Service,

        **Defendant.**

_____/

## DECLARATION OF ROSIE CARLIES
## IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1.      I, Rosie Carlies, am currently employed with the United States Postal Service (USPS) and have been so employed since September 23, 1974. I have been a Manager, Distribution Operations (MDO) assigned to work at the South Florida Mail Processing Center (SFMPC) since April 1990. As a MDO, I was a first line supervisor of subordinate supervisors, including any Supervisor, Distribution Operations (SDO) for the USPS, assigned to work at the SFMPC.   During my tenure as a supervisor, I have been trained and have experience in the disciplinary policies, procedures, rules and regulations governing the conduct and responsibilities of USPS employee.

2.      On December 1, 1997, Butler was reassigned to the position of SDO for Tour 3 (one of three work shifts) at the SFMPC where he came under my supervision.[1]

3.      On July 18, 1998, I initiated a Request for Disciplinary action against Butler based upon the circumstances surrounding Butler's performance as SDO in Postal Operation #208[2] on July 15,

_____

[1]See attached PS Form 50 dated December 3, 1997, as maintained in Plaintiff's OPF.

[2]Postal Operation 208 was an automated mail processing area which employed a Scan Where You Band (SWYB) machine which, according to USPS policy and procedure, required no more than eight mail handlers to operate efficiently and effectively. Unnecessary staffing result in unnecessary costs and is detrimental to the agency's commitment to improved performance and customer satisfaction. Butler was aware of this policy and procedure.

1998.[3] Indeed, on August 21, 1998, I issued a LOW charging Butler with failure to perform supervisory duties in a satisfactory manner and failure to follow instructions concerning proper staffing of operations (specifically, on July 15, 1998, Butler had eleven mail handlers (three more than necessary) on Operation 208).[4]

4.      On October 8, 1998, I issued a Step A Decision regarding the August 21, 1998 LOW in which I "found no reason to remove this discipline."[5]  Thereafter, Butler appealed the issuance of the LOW to the Acting Plant Manager, Robert Dillon.

5.      On November 10, 1998, Dillon found that the August 21, 1998 LOW had been issued for "just cause."[6]  Thereafter, Butler appealed the issuance of the LOW to the Manager of Human Resources, Southeast Area Office.

6.      On April 12, 1999, Karen A. Borowski, Manager of Human Resources, Southeast Area Office, denied Butler's appeal finding that there was "sufficient evidence to warrant the action taken."[7]

7.      On November 18, 1999, I initiated another Request for Disciplinary action against Butler based upon the circumstances surrounding Butler's performance as SDO of the small parcel bundle sorter (SPBS)[8] on Tour 3 on November 3, 1999, when Butler was sent home for non-responsiveness and

---

[3]See attached Request for Disciplinary Action, dated July 18, 1998, as maintained in Plaintiff's LRF and EEOC file.

[4]See attached August 21, 1998 LOW, as maintained in Plaintiff's LRF and EEOC file.

[5]See attached October 8, 1998 Step A Decision, as maintained in Plaintiff's LRF and EEOC file.

[6]See attached November 10, 1998 Step B Decision, as maintained in Plaintiff's LRF and EEOC file.

[7]See Karen A. Borowski's Review and Decision, dated April 12, 1999 as maintained in Plaintiff's LRF and EEOC file.

[8]The SPBS is a mechanized mail processor that sorts small parcels and bundles of mail on one of four conveyer belts taking it to a clerk. The clerk examines each individual parcel, keys in the marked zip code and places the parcel on the appropriate outgoing conveyer belt which transports the parcel to a bin corresponding to the appropriate zip code. It automatically tracks the number of parcels properly processed, as well as those not properly processed (improperly keyed mail is transported to a reject bin where it is retrieved and either reprocessed or hand sorted). Supervisors are able to obtain a hard copy of this data by pressing the appropriate button on the SPBS ending mail processing and printing a report indicating the total number of mail pieces processed, the number rejected, and other pertinent operation data (commonly known as "running a report").

insubordination.[9]

8.    On November 29, 1999, based upon the events of November 3, 1999, I issued a proposed LOW in Lieu Off Time Off Suspension to Butler charging him with "Unacceptable conduct due to your failure to respond and comply with directives given you."[10]

9.    Thereafter, Butler appealed the issuance of the proposed November 29, 1999 LOW to the Plant Manager, Saundra D. Richardson.[11]

10.    On January 18, 2000, Richardson issued a Letter of Decision finding that "the charge as outlined in the proposed letter is fully supported by the evidence of record, and warrant(s) the action."[12]

11.    I understand that according to Section 704(a) of Title VII, 42 U.S.C. Section 2000e-3(a), Section 4(d) of the ADEA, 29 U.S.C. Section 623(d) protected activity consists of either of the following:

    1.    opposing a practice made unlawful by of the employment discrimination statutes (the "opposition clause") or
    2.    filing a charge, testifying, assisting, or participation in any manner in an investigation, proceeding or hearing under the applicable statute (the "participation clause").

12.    I became aware that Butler had participated in protected activity on or about January 2003 when I was approached about preparing this Declaration.

Rosie Carlies

I declare under penalty of perjury that the foregoing is true and correct. Executed on __14__ day of __MARCH__ 2003.

---

[9] See my attached Request for Disciplinary, dated November 18, 1999, as maintained in Plaintiff's LRF and EEOC file.

[10] See attached proposed LOW in Lieu of Time Off Suspension, dated November 29, 1999, as maintained in Plaintiff's LRF and EEOC file.

[11] See Declaration of Saundra D. Richardson.

[12] See attached Letter of Decision date January 18, 2000, as maintained in Plaintiff's LRF and EEOC file.

**NOTIFICATION of PERSONNEL ACTION**
**U. S. Postal Service**

| 01 Effective Date | 02 Social Security Number |
|---|---|
| 11-22-1997 | 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 |

## EMPLOYEE INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| 03 | Employee Name-Last | BUTLER | 39 | FLSA Status | S - EXEMPT |
| 04 | Employee Name-First | THOMAS | 40 | Pay Location | 301 |
| 05 | Employee Name-Middle | P | 41 | Rural Carrier-Route | |
| 06 | Mailing Address Street/Box/Apts | 7840 CAMINO REAL # 105P | 42 | Rural Carr-L-Rte ID | |
| | | | 43 | Rural Carr-Pay Type | |
| 07 | Mailing Address-City | MIAMI | 44 | Rural Carr-Tri-Weekly | |
| 08 | Mailing Address-State | FL | 45 | Rural Carr-FLSA | |
| 09 | Mailing Address-Zip+4 | 33143-6871 | 46 | Rural Carr-Commit | |
| 10 | Date of Birth | 01-24-1954 | 47 | Rural Carr-EMA | |
| 11 | Veterans Preference | 1 - NO PREFERENCE | 48 | Rural Carr-Hours | 00 |
| 12 | Sex | | 49 | Rural Carr-Miles | 000 |
| 13 | Minority | | 50 | Job Sequence | 1 |
| 14 | Disability | | 51 | Occupation Code | 2315-6076 |
| 15 | Leave Comp Date | 08-03-1987 | 52 | Position Title | SUPV DIST OPERTNS |
| 16 | Enter on Duty Date | 08-03-1987 | 53 | Functional Oper Nbr | 1000 |
| 17 | Retirement- Comp Date | 08-03-1987 | 54 | Designation/Activity | 09/0 |
| 18 | Serv Anniversary PPYR | | 55 | Position Type | 1 - FULL TIME |
| 19 | TSP Eligibility | Y - ELIGIBLE WITH DEDUCT | 56 | Limit Hours | 00 |
| 20 | TSP Service Comp Date | 08-03-1987 | 57 | Allowance Code | |
| 21 | Prior CSRS Service | N | 58 | Employment Type | |
| 22 | Frozen Csrs Time | | | SALARY INFORMATION | |
| 23 | Leave Data-Category | 6 - HOURS/PP | 59 | Pay Rate Code | A - ANNUAL RATE |
| 24 | Leave Data-Chg PPYR | 18-2002 | 60 | Rate Schedule Code | E - EAS |
| 25 | Leave Data-Type | 1 - ADVANCED AT BEGINNING | 61 | Grade/Step | 16/ |
| 26 | Credit Military Serv | | 62 | Base Salary | 43,293 |
| 27 | Retired Military | | 63 | Cola | |
| 28 | Retirement Plan | 8 - FERS | 64 | Cola Roll-In Ind | |
| 29 | Employee Status | | 65 | Next Step PPYR | |
| 30 | Life Insurance | C - BASIC COVERAGE ONLY | 66 | Merit Anniv Date | 02-1998 |
| 31 | Special Benefits | | 67 | Merit Lump Sum | |
| | POSITION INFORMATION | | 68 | Special Salary Code | |
| 32 | Employ Office-Fin No | 11-8675 | 69 | Protected RSC | |
| 33 | Employ Office-Name | SO FLORIDA PROC/DIST CTR | 70 | Protected Grade/Step | |
| | | | 71 | Expiration PP/YR | |
| 34 | Employ Office-Address | PEMBROKE PINES FL 33082-9998 | 72 | Protected RC Hours | |
| | | | 73 | Protected RC Miles | |
| 35 | Duty Station-Fin No | 11-8675 | 74 | RC Guaranteed Salary | |
| 36 | Duty-Station-Name | SO FLORIDA PROC/DIST CTR | 75 | Annuity Amount | |
| 37 | Appt Expiration Date | | 76 | Red Circle Code | 0 |
| 38 | Probation Expir Date | | | | |

## NATURE OF PERSONNEL ACTION

| | | | | | |
|---|---|---|---|---|---|
| 77 | Nature of Action Code | 002 | 78 | Authority | 39-USC SECT. 1001 |
| 79 | Description | CORRECTION | 80 Code | 81 Code | 82 Code | 83 Code |
| 84 | Remarks | | | | |

THIS ACTION SERVES TO CORRECT PAY LOC AND SCH IAW MSPB SETTLEMENT
AGREEMENT DATED 10/7/97.
BGM 12/01/97

| 85 Authorization | 86 Processed Date | 12-03-1997 |
|---|---|---|
| DAVID C. BAKKE, VICE PRESIDENT AREA OPERATIONS-SOUTHEAST AREA | 87 Personnel Office ID | TA11 |
| | 88 OPF Location | MIAMI POST OFFICE |

PS Form 50, March 1990 (Exception to Standard Form 50)    2 - OPF COPY

SPV-98-31
DS

JUN 24 1998

**UNITED STATES POST OFFICE**
**SOUTH FLORIDA PROCESSING & DISTRIBUTION CENTER**
**PEMBROKE PINES, FL 33082-9997**

**REQUEST FOR DISCIPLINARY ACTION**

EMPLOYEE'S NAME: _Thomas Butler_

SOCIAL SEC. #: _314-62-07?1_

JOB TITLE: _Supervisor Processing & Distribution_

EMPLOYEE'S REPORTING TIME AND DAYS OFF: _Varies_

UNIT OR BRANCH: _SOUTH FLORIDA PROCESSING & DISTRIBUTION CENTER_

PAY LOCATION: _301_    TOUR: _3_


WHAT TYPE AND DEGREE OF DISCIPLINARY ACTION ARE YOU RECOMMENDING?

LETTER OF WARNING: _✓_

SUSPENSION: _____    INDEFINITE: _____
(NUMBER OF DAYS)

EMERGENCY: _____    REMOVAL: _____

ACKNOWLEDGED: _____    FDGM/PM OTHER: _____

REQUESTING SUPERVISOR'S NAME: _Rosie B Carlies_

SSN#: _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_    SIGNATURE: _Rosie B Carler_

DATE SIGNED: _7/18/98_

CONCURRENCE BY: _Robert ____    TITLE: _Sr MDO?_

REVIEWED BY: _____    TITLE: _____
(FUNCTIONAL AREA MGR)

REVIEWED BY: _____    TITLE: _____
MGR H/R

ATTACH TO THE BACK OF THIS REQUEST APPROPRIATE DOCUMENTATION LISTED IN
ITEM #:



PAGE 2

1. WHAT IS YOUR REASON FOR REQUESTING DISCIPLINARY ACTION? FULLY DOCUMENT WHAT INFRACTIONS THE EMPLOYEE COMMITTED AND INCLUDE DATES, TIME AND PLACES. LIST ALL DOCUMENTATION PROVIDED WITH THIS FILE.

Around 0155 AM, I received a call from the Miami AMC informing me that the AMC would not be able to reboot their SWYB system to bring our Scan Where You Band system back up.

I asked you how much mail you still had to process in your operation. You informed me you had a large volume of mail awaiting processing. When I asked you why you had this volume of mail in the operation at this time, your response to me was complete silence. I asked if you heard me, and you said "yes, I should. You are yelling". I again asked you why you had this volume of mail in your operation and you had no response.

I asked you to come to the office. When we got there, I asked you how many mailhandlers you have in your operation. You could not tell me. You started writing the names of employees down. I asked you again how many mailhandlers you have in your operation. Your response was ten (10). I asked you why? Again, you had no response.

I then instructed you to go back to your operation and get all of the remaining mail sleeved and strapped and send it to the AMC with a placard on the next truck. I told you I would talk to you later.

At approximately 0215, I came out to your operation. I observed mailhandlers doing nothing. You had mail that needed to be sleeved and strapped, you were using one sleever, you had mail that needed to be placed in BMC just sitting, no sense of urgency was demonstrated from you or your employees.

I then counted the mailhandlers in the operation. There were eleven. I asked you why you had eleven mailhandlers in the 208 operation. Your response was, "they all came in at 6:00PM". This response is unacceptable.

These employees had a regular end tour is 0230. There was no sense of urgency on your part to get this operation closed down by this time, even with eleven mailhandlers. I had to instruct you to use another belt to sleeve and strap this mail to get it done by 0230.

You have previously been instructed that only 8 mailhandlers will be used in this operation and you were aware of this. Since the installation of the robot, there was no need for more than 8 mailhandlers in this operation.

If I had not come out and given you instructions, you would have incurred overtime to get this mail sleeved and strapped for the AMC.

Your response and your actions are not acceptable. You were not in control of your operation nor your employees. As a matter of fact, your employees were controlling you. You did not take charge or responsibility of your operation, you did not know how many employees you had in your operation even though you were well into 71/2 hours of your tour.

You are charged with Failure to meet the requirements of your position, by failing to perform your duties in a satisfactory manner.

PAGE 3

2. WHO COMPLETED THE INVESTIGATION IN REFERENCE TO THE ABOVE INFRACTION?
(ALL INVESTIGATION MUST BE COMPLETED PRIOR TO REQUESTING DISCIPLINE.)

Rosie B Carlies
Manager Distribution Queens T-3

3. GIVE THE DATES, TIME AND WHO WAS PRESENT DURING THE PRE-DISCIPLINARY
INTERVIEW WITH THE EMPLOYEE ABOUT THIS INFRACTION. (THIS PRE-DISCIPLINARY
INTERVIEW MUST BE COMPLETED PRIOR TO REQUESTING DISCIPLINE.)

Rosie B. Carlies MDO T-3
Henry Dominguez
Thomas Butler -
7/18/98
22:40pm.

**PAGE 4**

4.  WHAT DID THE EMPLOYEE SAY DURING THE PRE-DISCIPLINARY INTERVIEW WHEN QUESTIONED IN REFERENCE TO THIS INFRACTION?

*This is unwarranted, that you had proof that it was unwarranted and you will share your proof with Union Rep Henry Domingues.*

5.  LIST DATES OF DISCUSSIONS, IF ANY, GIVEN TO THE EMPLOYEE IN REFERENCE TO INFRACTIONS OF THIS NATURE.

DISCUSSION:   *N/A*

6.  WHAT DISCIPLINARY ACTION HAS BEEN TAKEN AGAINST THIS EMPLOYEE IN THE PAST:  LIST ALL ACTIONS IN SEQUENCE AND INCLUDE DATES.

7.  YOU MUST CONSULT WITH EAP STAFF FOR THEM TO DETERMINE WHETHER AN EAP REFERRAL IS NECESSARY.  THIS IS TO BE ACCOMPLISHED PRIOR TO DISCIPLINARY  BEING INITIATED.  WHO CONSULTED WITH THE EAP STAFF AND DATE:

CONTACTED EAP:   at *Miami, Left Msg on Recording 7/16/98 @ 2300*

8.  ADDITIONAL INFORMATION RELEVANT TO THIS DISCIPLINARY REQUEST.

# UNITED STATES POSTAL SERVICE
## SOUTH FLORIDA DISTRICT

DATE:  August 21, 1998

REF:  SE09:RCarlies:DS:srl/Supv/LOW/Butler

SUBJ:  Letter of Warning

TO:  Thomas Butler
Supervisor, Distribution Operations
7840 Camino Real, #105P
Miami, FL 33143-6871

CERTIFIED NO:  Z 020 271 622
RETURNED RECEIPT REQUESTED

This official Letter of Warning is being issued to you for the following reason:

You are charged with Unsatisfactory Performance due to failure to perform supervisory duties in a satisfactory manner, and failure to follow instructions concerning properly staffing of operations.

On July 15, 1998, at approximately 1:55 a.m., I received a call from the Miami AMC informing me that they would not be able to reboot their Scan Where You Band System to bring our SWYB system back up. I came out to your operation and asked you how much mail you still had to process. You informed me that you had a large volume of mail awaiting processing. When I asked you why you had this volume of mail in the operation at this time, you failed to respond. I asked if you heard me and you said, "Yes, I should. You are yelling." I again asked you why you had this volume of mail in your operation, and again you failed to respond. I asked you to come to the MDO's office. When we got there, I asked you how many mailhandlers you have in your operation. You could not tell me. You started writing the names of employees down. I asked you again how many mailhandlers you have in your operation. Your response was ten (10). I asked you why? Again, you had no response. I then instructed you to go back to your operation and get all of the remaining mail sleeved and strapped, and send it to the AMC with a placard on the next dispatch. I informed you that I would talk to you later. At approximately 2:15 a.m., I came to your operation. I observed mailhandlers doing nothing. You had mail that needed to be sleeved and strapped, you were using one sleever, you had mail that needed to be placed in BMC's just sitting, and no sense of urgency was demonstrated from you or your employees. I counted the mailhandlers in your operation. There were eleven (11). I asked you why you had eleven (11) mailhandlers in Operation 208. Your response was, "They all came in at 6:00 p.m." This response is unacceptable. A review of schedules reveal that these employees had a regular end tour of 2:30 a.m. You demonstrated no sense of urgency on your part to get this operation closed down by this time, even with eleven mailhandlers. I had to instruct you to use another belt to sleeve and strap this mail in order to get it done by 2:30 a.m. If I had not come out to your operation and given you instructions, you would have incurred overtime to get this mail sleeved and strapped for the AMC.

When questioned on this matter during the pre-disciplinary interview, you stated that this is unwarranted and that you had proof that it was unwarranted, and that you will share your proof with union representative, Henry Dominquez. This response is unacceptable. You were not in control of your operation nor your employees. As a matter of fact, your employees were controlling you. You did not take charge or responsibility or your operation, and you did not know how many employees you had in your operation even though you were well into approximately 7 ½ hours of your tour. In addition, you have

EXHIBIT
23

Thomas Butler
August 21, 1998
Page Two

previously been instructed that only eight (8) mailhandlers will be used in Operation 208. Since the installation of the robot, there was no need for more than 8 mailhandlers in this operation. You, a Supervisor, Distribution Operations, are responsible for all activities of mail service in your operation, and is expected to maintain an efficient and effective operation. Your blatant disregard for operational procedures prevent your operation from complying with our commitment to improve performance and customer satisfaction. The success of the Postal Service depends on our performance and you have seriously neglected your responsibility as a supervisor. You, as a supervisor, must understand the importance of providing reliable and efficient service to our customers if the Postal Service is to achieve its goals and remain competitive.

It is hoped that this official Letter of Warning will serve to impress upon you the seriousness of your actions and that future discipline will not be necessary. If you are having difficulties which I may not be aware of, or if you need additional assistance or instructions for improving your performance, please call on me or you may consult with other supervisors and we will assist you where possible. However, I must warn you that
future deficiencies will result in more severe disciplinary action being taken against you. Such action may include letters of warning in lieu of suspensions, reduction in grade and/or pay, or removal from the Postal Service.

You may appeal this Letter of Warning in accordance with Section 652.3 of the Employee and Labor Relations Manual within ten (10) calendar days from the day you receive this letter.

Rosie Carlies     8/30/98
Rosie Carlies
Manager, Distribution Operations

**EMPLOYEE REGULAR MAIL**

Emp.  SS# 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

cc:     Labor Relations
        A/Plant Mgr So FL
        Sr. MDO So FL
        MDO T-3
        OPF

SOUTH FLORIDA PROCESSING & DISTRIBUTION CENTER

 **UNITED STATES POSTAL SERVICE**

9 1998

**Date:**   October 8, 1998

**To:**     Thomas Butler                          Certified #:  Z726477512
           Supervisor, Distribution Operations     Return Receipt Requested
           7840 Camino Real #105P
           Miami, FL   33143-6871

**Subject:**  Letter of Warning
             Step A Decision

I received your response to the Letter of Warning dated August 21, 1998, which was issued to you on August 30, 1998.  You stated you knew trouble was brewing when you saw Sergio and me walking around.  Our job as Managers, Distribution Operations, is to review operations for Tour turnover.  You also stated you were still fighting retaliatory attempts from management stemming from and prior to a medical situation on March 5, 1997.

You are mentioning incidents that have no bearing on your unacceptable performance on July 15, 1998.  You also mentioned a situation that occurred with myself and another supervisor in one of my staff meetings.  Again,  you are mentioning situations that have nothing to do with your unacceptable performance on July 15, 1998.

I am aware that you made attempts to call the AMC, talked to Supervisor Amestica and that you had mentioned to MDO Robert Brace that the system was down.  At no time did you attempt to reach me.  I was the one who contacted you regarding this incident.

You mentioned you had 35-45 people in operation 120.  The operation will not accommodate that many people.

18000 PINES BLVD.
PEMBROKE PINES, FL 33082-9997
954-436-1137
FAX: 954-436-4366

- 2 -

I completely reviewed your response to the Letter of Warning that was issued to you and have found no reason to remove this discipline. Your performance has not improved.

You may appeal this Step A decision to the Installation Head in writing within seven (7) calendar days after receipt of this letter.

Rosie B. Carlies
Manager, Distribution Operations
Tour II      SFP&DC


cc:    Robert J. Dillon, A/Plant Manager, SFP&DC
       Jay Mercier, Manager, Human Resources
       Steve Murray, Sr. Labor Relations Specialist
       Henry Dominguez, NAPS Vice President

PLANT MANAGER
SOUTH FLORIDA PROCESSING & DISTRIBUTION CENTER

 UNITED STATES
POSTAL SERVICE

Date:        November 10, 1998

Ref:         RJDILLON:pjb:9701                                    ¡ 2

Subject:     Step B Decision

To:          Tom Butler                          Certified #Z726477531
             Supervisor, Distribution Operations  Return Receipt Requested
             7840 Camino Real  #105P
             Miami, FL  33143-6871

I have received and reviewed your appeal of the Step A decision received in this
office on October 16, 1998.

Your contentions in defense of your position is that your Manager, Distribution
Operations, Ms. Carlies, has misconstrued the facts and her decision is prejudiced
and biased.  Your appeal however, fails to support your contentions.  You state that
you made attempts to contact Ms. Carlise but could not.  The issue here is not only
the notification of the tour MDO, but the proper allocation of resources and the
managing of these resources.  As was described in the Step A answer, and the
letter itself, a maximum number of employees for that operation had been
determined.  This was done based on the work to be performed and the area
available.  You were aware of this requirement, yet you chose to staff beyond these
limits.  When questioned on the number of employees you had, their names and
their whereabouts, you did not have this information.  You had to review your notes.

A supervisor is expected, in fact, required to know how many employees are in their
charge and who and where those employees are.  At the time of the incident, you
did not.

You further referenced that his action is retaliatory.  In retaliation for what?  This
action appears to be related to events which occurred on the date in question, and
were in contradiction of instructions you have been given numerous times.

16000 PINES BLVD.
PEMBROKE PINES, FL  33082-9997
954-438-1137
FAX:  954-438-4385

- 2 -

I do realize that the scan where you band operation was experiencing mechanical problems on July 15 of this year. Managers and supervisors are expected to handle situations that arise. It is not a reason, in and of itself, to abandon instructions previously given.

I find that this letter was for just cause. You provided no evidence which would cause me to mitigate this action. The offenses committed by you justify the action taken.

You have the right to appeal this decision in accordance with section 652.22 of the Employee and Labor Relations Manual in writing to Larry Stebbins, Manager, Human Resources, Southeast Area Office, 225 N. Humphrey Blvd., Memphis, TN 38166-0840, within 15 calendar days from the date of your receipt of this letter. You should furnish me a copy of your appeal and state you do or do not wish a hearing.

You are entitled to a representative of your own choosing throughout your appeal. If you appeal this action through the appeals set forth at Section 652.22 of the Employee and Labor Relations Manual (ELM), you and your representative, if he or she is a U.S. Postal Service employee, shall be afforded reasonable amount of official time for preparation of your case if you and/or your representative are otherwise in a duty status.


Robert J. Dillon
A/Plant Manager, South Florida
Processing & Distribution Center


cc:    JoAnn Feindt, Sr. Plant Manager
       Labor Relations, GMF
       OPF
       Don Shandor, MDO, Tour 3, SFP&DC
       Rosie Carlies, MDO, Tour 2, SFP&DC
       File

*[handwritten notes at top]*                                                    8/21/98 cw

HUMAN RESOURCES

**UNITED STATES POSTAL SERVICE**

APR 12 1999

Mr. Thomas P. Butler
7840 Camino Real Apt. 105P
Miami, FL 33143-6871

                    CERTIFIED MAIL NO. Z 031 061 762
                    RETURN RECEIPT REQUESTED

Dear Mr. Butler:

In accordance with Part 652.34 of the Employee and Labor
Relations Manual, this will constitute my review and decision of
the November 10, 1998, Step B Decision issued by Robert J.
Dillon, Acting Plant Manager, South Florida District.  The
decision denied the appeal of a Letter of Warning dated
August 21, 1998, for unsatisfactory performance due to failure
to perform supervisory duties in a satisfactory manner and
failure to follow instructions concerning proper staffing of
operations.

After careful review of the file, I find there was sufficient
evidence to warrant the action taken.  The record reflects that
you were charged with unsatisfactory performance and failure to
follow instructions on July 15, 1998.  The core issues of the
charges reflect that you failed to follow instructions in that
your manager observed eleven employees assigned to
Operation 208, while the Standard Operating Procedure (SOP)
provided that the operation be staffed with eight employees
only, and that you failed to control the activities of the unit.

You proffer that your assigned operation experienced serious
mechanical problems on the night of July 15, 1998, and that you
made many attempts to contact your manager and apprise her of

Mr. Thomas P. Butler                                           2

such; however, you were unable to contact her.  At some point,
you left a message with another manager about the mechanical
problems on the Scan Where You Band (SWYB) system and advised
him of the mail volume and the methods being used to process the
mail.  You indicated that you were aware that the Standard
Operating Procedure (SOP) for the SWYB operation required only
eight employees; however, three employees had "filtered" into
the SWYB operation without forewarning from their supervisor.
You contend that all of the SWYB mail was dispatched at the
usual time and you had ultimately saved workhours in the
120 Operation.  Furthermore, you construe that the issuance of
the discipline was an act of retaliation and point out that you
have been given four SOPs while another supervisor has none.

The record is inconclusive as to how or at what point the SWYB
operation became overstaffed on July 15, 1999, and as to whether
or not you attempted to contact your manager.  However, it is
not refuted that the SWYB Operation was overstaffed by three
employees when your manager observed the unit.  You were
ultimately responsible for the staffing of that unit throughout
that particular tour as you were the supervisor of record.  In
addition, at approximately 2:15 a.m. your manager observed
employees standing idle even though there was mail that had not
been processed.  She concluded that had she not come to the SWYB
Operation and given you instructions, overtime hours would have
been necessary.  Your contention that you ultimately saved
workhours in the 120 Operation is of little significance as the
specifications of the charge concern the staffing and the
activities in the SWYB Operation which also fell under your area
of responsibility.  It is also of little significance that you
were given four SOP's while another supervisor had none because
you are not similarly situated to that supervisor.  The
comparison is assigned to the 030 Operation.  Finally, the
record does not support your contention that the issuance of the
discipline was an act of retaliation.  The discipline was issued
based on your performance or lack thereof on July 15, 1998.

Your conduct as outlined in the notice of August 21, 1998, is
serious and can not be tolerated.  The Letter of Warning for
failure to perform supervisor duties in a satisfactory manner

Mr. Thomas P. Butler                                                3

and failure to follow instruction concerning proper staffing of
operations is sustained.  This decision will be final and there
will be no further right to administrative appeal.

Sincerely,

Karen A. Borowski
Manager, Human Resources
Southeast Area Office

cc:  Manager, Human Resources, South Florida District



**UNITED STATES POST OFFICE**
**SOUTH FLORIDA PROCESSING & DISTRIBUTION CENTER**
**PEMBROKE PINES, FL 33082-9997**

## REQUEST FOR DISCIPLINARY ACTION

EMPLOYEE'S NAME: _Thomas Butler_

SOCIAL SEC. #: _31 462 - 0751_

JOB TITLE: _Supervisor Processing & Distribution_

EMPLOYEE'S REPORTING TIME AND DAYS OFF: _1600_

UNIT OR BRANCH: _SOUTH FLORIDA PROCESSING & DISTRIBUTION CENTER_

PAY LOCATION: _301_      TOUR: _3_

WHAT TYPE AND DEGREE OF DISCIPLINARY ACTION ARE YOU RECOMMENDING?

LETTER OF WARNING: _____

SUSPENSION: _Low in Lieu of 7_          INDEFINITE: _____
            (NUMBER OF DAYS)

EMERGENCY: _____          REMOVAL: _____

ACKNOWLEDGED: _____          FDGM/PM  OTHER: _____

REQUESTING SUPERVISOR'S NAME: _Rosie B Carlies_

SSN#: ▓▓▓▓▓▓▓          SIGNATURE: _Rosie B Carlies_

DATE SIGNED: _11/18/99_

CONCURRENCE BY: _____ TITLE: _Plant Manager_

REVIEWED BY: _____ TITLE: _Plant Manager_
            (FUNCTIONAL AREA MGR)

REVIEWED BY: _____      TITLE: _____
            MGR H/R

ATTACH TO THE BACK OF THIS REQUEST APPROPRIATE DOCUMENTATION LISTED IN
ITEM #:

EXHIBIT NO. _____

PAGE _____ OF _____

PAGE 2

1. WHAT IS YOUR REASON FOR REQUESTING DISCIPLINARY ACTION? FULLY DOCUMENT WHAT INFRACTIONS THE EMPLOYEE COMMITTED AND INCLUDE DATES, TIME AND PLACES. LIST ALL DOCUMENTATION PROVIDED WITH THIS FILE.

*See attached*

EXHIBIT NO._____

PAGE____5____OF__14__

**PAGE 3**

2.  WHO COMPLETED THE INVESTIGATION IN REFERENCE TO THE ABOVE INFRACTION?
(ALL INVESTIGATION MUST BE COMPLETED PRIOR TO REQUESTING DISCIPLINE.)

Rosie B Carles
Manager, Distribution Operations
Tour 2

3.  GIVE THE DATES, TIME AND WHO WAS PRESENT DURING THE PRE-DISCIPLINARY
INTERVIEW WITH THE EMPLOYEE ABOUT THIS INFRACTION.  (THIS PRE-DISCIPLINARY
INTERVIEW MUST BE COMPLETED PRIOR TO REQUESTING DISCIPLINE.)

Rosie B Carles, Manager Distribution
Operations Tour 2
Barbara Crews NAPS
Tom Butler, Supervisor Processing
and Distribution

11/5/99 @ 1958

EXHIBIT NO._____

PAGE____11____OF___11___

PAGE 4

4.  WHAT DID THE EMPLOYEE SAY DURING THE PRE-DISCIPLINARY INTERVIEW WHEN
QUESTIONED IN REFERENCE TO THIS INFRACTION? *He wants to choose his own representative. He did not want Bobbie Crews, he wants Robert Quinlan*)

5.  LIST DATES OF DISCUSSIONS, IF ANY, GIVEN TO THE EMPLOYEE IN REFERENCE TO
INFRACTIONS OF THIS NATURE.

DISCUSSION: _____ *N/A* _____

6.  WHAT DISCIPLINARY ACTION HAS BEEN TAKEN AGAINST THIS EMPLOYEE IN THE
PAST: LIST ALL ACTIONS IN SEQUENCE AND INCLUDE DATES.
*Low dated 8/21/98 (see attached)*

7.  YOU MUST CONSULT WITH EAP STAFF FOR THEM TO DETERMINE WHETHER AN EAP
REFERRAL IS NECESSARY. THIS IS TO BE ACCOMPLISHED PRIOR TO DISCIPLINARY BEING
INITIATED. WHO CONSULTED WITH THE EAP STAFF AND DATE:

CONTACTED EAP: ▓▓▓▓▓▓▓▓▓▓▓▓▓ *@ 7:45 pm*
*left a msg on the recorder*

8   ADDITIONAL INFORMATION RELEVANT TO THIS DISCIPLINARY REQUEST.
*No additional information at this time*

EXHIBIT NO._____

PAGE_____OF_____

On November 3 1999 at approximately 4:10 pm, I asked Supervisor Tom to give you the telephone.

I said "Tom we will not pull the report we have 4 more pallets of Miami Mail to run."

You said " why I " and I cut you off and said Tom, this is what I want, Son I will finish running the Miami Mail. Your clerks will throw off the 5-Digit 330 until they are finished. Then the Miami Mail will be pulled down and it will be Set-up to run 330. I then asked do you understand what I'm saying there was complete silence I said again Do you understand there was still complete silence

I then handed the telephone to Wanda Harris Chief Shop Steward and told her to let me know if anyone says anything.

EXHIBIT NO.

PAGE



I then got up from my desk and walked to the SPBS where you were suppose to be. When I got there you were not there and the telephone was off the hook, laying beside the phone.

I then paged you to come to the SPBS Supervisors desk. You did not come.

I called the General Clerks office and Carla Amdur, the General Clerk on Tour 3 said you had just left out of her office.

I paged you again to come to the SPBS Desk and you did not come.

I called the Data Site and asked for you and Alex Digiacomo said you had just walked out of.

When you finally came back from operations I asked you

to come to the Managers office

③

When you got to the office I asked
asked you if you had a problem
and you just starred at me. I
said I am talking to you and
trying to find out if you understand
the instructions I am giving you
And you just put the phone down
while I am talking to you and
walk away. You Still ~~saying~~ don't
saying things.

Well I said Tom, I am your
Supervisor/Manager and I will
not tolerate this type of behavior.

EXHIBIT NO._____

PAGE ___ OF ___ of any Supervisor.

You just turned around and
walked out the Door. I walked
out behind you. You were talking
to A/mas Christopher Powell. I
instructed you to End your
and Leave the Building. Then
all of a sudden you want to
say something. You say why. I
asked Christopher Powell to make
Sure you leave the building. Chris
Powell instructed you
to return to work Rose B Cashin

u temorrow as

MDT-2

EXHIBIT NO.

PAGE ____ OF ____

 **UNITED STATES**
**POSTAL SERVICE**

November 4, 1999

Rosie Carlies
MDO - Tour 2
SFPDC

On Wednesday, November 3, 1999, at approximately 16:08, MDO Rosie Carlies requested that I report to the SPBS Supervisors' desk. The telephone receiver on the desk was off the hook.

At approximately 16:20, Ms. Carlies paged Thomas Butler to the SPBS. At approximately 16:25 Ms. Carlies paged Thomas Butler a second time. Thomas Butler reported to the SPBS area at approximately 16:35. At that time Ms. Carlies requested Thomas Butler go with her to the MDO Office.

Robert L. Glover
Networks Specialist
SFPDC

EXHIBIT NO._____

PAGE_____ OF_____

16000 PINES BLVD.
PEMBROKE PINES FL 33082-9997
954-436-4399
FAX: 954-436-4316

*UNITED STATES*
*POSTAL SERVICE*

DATE: November 29, 1999

REF: SE09:RCarlies:RA:srl/Supv/Low/Butler

SUBJ: Proposed Letter of Warning In Lieu of Time Off Suspension

TO:    Thomas Butler                              **CERTIFIED NO: Z 419 512 741**
       Supervisor, Distribution Operations        **RETURNED RECEIPT REQUESTED**

This Proposed Letter of Warning in Lieu of a (7) Day Time Off Suspension is being issued to you for the following reason(s):

You are charged with Unacceptable Conduct due to your failure to respond and comply with directives given to you.

On November 3, 1999, you were assigned to supervise the small parcel bundle sorter (SPBS) on tour three. On that day at approximately 4:10 p.m., I called Simon from the supervisor's desk at the SPBS, and I asked him to give you the telephone. At that time, I advised you not to end the report, that there were four more pallets of mail to run on the machine. You began to question me, and I cut you off stating, "Tom, this is what I want. Tour 2 will finish running the Miami mail. Your clerks will throw off the 5-digit 330 mail until they are finished. Then the Miami mail will be pulled down and it will be set up for you to run 330." I then asked, "Do you understand what I am saying?" You failed to acknowledge or respond to my directive, and said absolutely nothing. I then handed the telephone to Chief Steward Wanda Harris, and asked her to let me know if you said anything. I left the Manager's office and walked to the SPBS. When I arrived at the machine you were not in the area and the telephone was off the hook laying on the desk. I then paged you to report to the supervisor's desk at the SPBS. You failed to respond to the page or report to the SPBS. I then called the general's clerk's office and was informed by general clerk Carla Amour that you had just walked out of that office. I again paged you to report to the SPBS supervisor's desk. You failed to respond to the page, and failed to report to the SPBS. I then called data site, and was informed by clerk Alex Degiacomo that you had just walked out of that office. You finally reported to the SPBS area at 4:35 p.m. At that time, I instructed you to report to the Manager's office. When we arrived at the Manager's office, I asked you if you had a problem. You stared at me and did not respond. I advised you that I was talking to you and asked if you understood my instructions. I also asked why you had put the telephone receiver down on the supervisor's desk at the SPBS and walked away in the middle of our conversation. You again stared at me and said nothing. I then stated to you that I am your Manager, and I will not tolerate this kind of behavior. You stared at me, said nothing, and walked out of the office. I followed you out of the office as you began talking to Acting Manager Christopher Powell. I approached you and instructed you to end your tour of duty and leave the building. You responded "Why?" I did not respond to you, and asked Manager Powell to make sure you left the building. Manager Powell then instructed you to leave the building and to return to work the following day as scheduled.

EXHIBIT NO.____5____

PAGE_____OF_____

When questioned about this matter in an investigative interview, you responded that you wanted Robert Quinlan to represent you, not Bobbi Crews. Your response does nothing to

Thomas Butler
November 29, 1999
Page Two

explain or justify your actions on November 3, 1999, of failing to respond to me while I was giving you instructions on the telephone, and placing the telephone receiver on the desk and walking away; failing to respond to my pages; and your failure to respond to me in the Manager's office.

You must understand that as a Postal employee, you have a responsibility to perform the duties of your position conscientiously and effectively, giving to the performance of those duties earnest effort and best thought. You are expected to comply with all Postal Service rules and regulations, and to obey the instructions of your Manager. Clearly, by your actions cited above you have failed in those responsibilities.

As a Supervisor of Distribution, you have an even greater responsibility. You set the example for other employees. Your actions cited above on November 3, 1999, demonstrate that you are either unwilling or unable to be responsible to the position you now hold. The instructions that I gave you over the telephone were clear and reasonable. There is no reason why you should not have responded to me, and complied with my instructions. The fact that you refused to acknowledge my instructions, placed the telephone receiver down on the desk, and walked away from your operation; and then failed to respond to my pages, indicates that you fail to understand your responsibility to comply with instructions given to you. Moreover, your actions of simply staring at me, and refusing to respond when I addressed you in the Manager's office, and then leaving the office while I was still trying to talk to you, demonstrates a deliberate disrespect for authority that will not be condoned. Further, your actions raise serious question as to your of dedication, loyalty, and job commitment. If you believe that in your position you are not required to acknowledge, respond, and comply to directives given to you by a Manager, than you seriously misunderstand your role as a supervisor.

Clearly, as a Supervisor of Distribution you expect your employees to respond to your directives, and to comply with your instructions. As a Manager, I expect no less from you. Your actions on November 3, 1999, of failing to acknowledge my directives to you, putting the telephone down and walking away while I was still engaged in conversation with you, failing to respond to pages, and failure to respond to me in the Manager's office, and again walking out of the office in the middle of my conversation, cannot be condoned and are a legitimate reason for this action.

The following element of your past record has been considered in taking this action:

| DATE | TYPE | CHARGE |
|---|---|---|
| August 21, 1998 | Letter of Warning | Unsatisfactory Performance due to failure to perform supervisory duties in a satisfactory manner, and failure to follow instructions concerning proper staffing of operations |

This Proposed Letter of Warning is being issued to you in Lieu of a 7-Day Time-Off Suspension based on the above-cited deficiency. This letter is also to inform you that you must correct your work deficiencies. Further, you must demonstrate adherence to Postal

Thomas Butler
November 29. 1999
Page Three

Service regulations.  Failure to correct your work deficiencies may result in further disciplinary action, including your removal from the Postal Service.

You and/or your representative may review the material (if any) relied upon to support the reasons for this Proposed Letter of Warning in Lieu of a 7-Day Time-Off Suspension at the Labor Relations Office, Miami Processing & Distribution Center, 2200 N.W. 72nd Avenue. Miami, FL, between the hours of 8:30 a.m. and 4:30 p.m.  If you do not understand the reasons for this Proposed Letter of Warning in Lieu of a 7-Day Time-Off Suspension, contact the undersigned for a further explanation.

You and/or your representative may appeal this Proposed Letter of Warning in Lieu of a 7 Day Time-Off Suspension by filing an answer within ten (10) calendar days from your receipt of this letter, either in person or in writing, or both, before Saundra Richardson, Plant Manager, South Florida Processing and Distribution Center, 16000 Pines Boulevard, Pembroke Pines. FL 33082-9997.  You also may furnish affidavits or other written material to Saundra Richardson within ten (10) calendar days from your receipt of this letter.  You will be afforded a reasonable amount of official time for the above purpose if you are otherwise in a duty status.  You will receive a written decision after the expiration of the 10 calendar day period for reply.  All of the facts in your case, including any reply you submit, will be given full consideration before a decision is rendered.


Rosie Carlies
Manager, Distribution Operations
South Florida P&DC

**Employee Regular Mail**



cc:    Labor Relations - Miami
       Plant Manager **(Letter of Decision Required)**
       MDO T-3 South FL P&DC
       OPF

EXHIBIT NO._____

PAGE____3____OF__14___



**UNITED STATES**
**POSTAL SERVICE**

JAN 2 7 2000

LABOR RELATIONS
SOUTH FLORIDA DISTRICT

DATE:  **January 18, 2000**

REF:  SE09:SRichardson:Rxxas:LOD:propsusp:butlert

SUBJ:  Letter of Decision

TO:  **Thomas P. Butler**
Supervisor, Distribution Operation
7840 Camino Real  Apt 105P
Miami FL  33143-6871

CERTIFIED NO. Z 419 545 422
RETURN RECEIPT REQUESTED

You received a Proposed Letter of Warning in Lieu of a (7) Day Time-Off Suspension based upon the charge Unsatisfactory Conduct due to your failure to respond and comply with directives given to you. In the letter you were apprized of your appeal rights and afforded an opportunity to respond to the charges. I am in receipt of your written response dated December 8, 1999. I note that you did not respond to me personally. I have given careful consideration to all evidence of record, and the contentions you raise in your response. I find however, that the charge as outlined in the proposed letter is fully supported by the evidence of record, and warrant the action. The reason for my decision is as follows:

On November 3, 1999, you were assigned to supervise the small parcel bundle sorter (SPBS) on tour three. On that day, at approximately 4:10 p.m., Manager Rosie Carlies called the supervisor's desk at the SPBS, and asked Supervisor Simon Ham to give you the telephone. At that time she advised you not to run the report, that there were four more pallets of mail to run on the machine. You began to question her, and she interrupted you stating "Tom, this is what I want. Tour 2 will finish running the Miami mail. Your clerks will throw off the 5-digit 330 mail until they are finished. Then the Miami mail will be pulled down and it will be set up to for you to run 330." She then asked "Do you understand what I am saying?". You failed to acknowledge or respond to her directive, and said absolutely nothing. She then handed the telephone to Chief Steward Wanda Harris, and asked her to let Carlies know if you said anything. Manager Carlies left the Manager's office and walked to the SPBS. When she arrived at the machine you were not in the area and the telephone was off the hook laying on the supervisor's stand up desk. Carlies then paged you to report to the supervisor's desk at the SPBS. You failed to respond to the page or report to the SPBS. She then called the general's clerk's office and was informed by general clerk Karla Andur that you had just walked out of that office. Carlies again paged you to report to the SPBS supervisor's desk. You failed to respond to the page, and failed to report to the SPBS. Carlies then called data site, and was informed by clerk Alex Degiacomo that you had just walked out of that office. You finally reported to the SPBS supervisor's desk at 4:35 p.m. At that time Manager Carlies instructed you to report to the Manager's office.

EXHIBIT NO.

PAGE  /  OF  5

Thomas P. Bulter
Letter of Decision
January 18, 2000
Page Two


When you arrived at the Manager's office, she asked you if you had a problem. You starred at her and did not respond. She advised you that she was talking to you and asked if you understood her instructions. She also asked why you had put the telephone receiver down on the supervisor's desk at the SPBS and walked away in the middle of a conversation. You again starred at Carlies and said nothing. She then stated to you that she was your Manager, and that she would not tolerate this kind of behavior. You starred at her, said nothing, and walked out of the office. Carlies followed you out of the office as you began talking to Acting Manager Christopher Powell. Carlies then approached you and instructed you to end your tour of duty and leave the building. You responded "Why?". Carlies did not respond to you, and asked Manager Powell to make sure you left the building. Manager Powell then instructed you to leave the building and to return to work the following day as instructed.

In your response dated December 8, 1999, you contend that you attempted to respond to Carlies' directives to you, but that you were cut off. You also stated that you did not respond to the pages because you did not hear them. You further state that you walked out of the Manager's office because Carlies stated that you looked "stupid". Having carefully examined all evidence of record, I find your contentions without merit. Having found that you are guilty of the charge as outlined in the Proposed Letter of Warning in Lieu of a (7) Day Time-Off Suspension, I must now examine the nexus to your employment.

The nexus is obvious. As a Postal employee you have a responsibility to perform the duties of your position conscientiously and effectively, giving to the performance of those duties earnest effort and best thought. You are expected to comply with all Postal Service rules and regulations, and to obey the instructions of your Manager. Clearly by your actions cited above you have failed in those responsibilities.

As a Supervisor of Distribution, you have an even greater responsibility. You set the example for other employees. Your actions cited above on November 3, 1999, demonstrate that you are either unwilling or unable to be responsible to the position you now hold. The instructions that Manager Carlies gave you over the telephone were clear and reasonable. There is no reason why you should not have responded to her, and complied with the instructions. The fact that you refused to acknowledge her instructions, placed the telephone receiver down on the desk, and walked away from your operation; and then failed to respond to her pages; indicates that you fail to understand your responsibility to comply with instructions given to you. Moreover, your actions of simply starring at Carlies, and refusing to respond when she addressed you in the Manager's office, and then leaving the office while she was still trying to talk to you, demonstrate a deliberate disrespect for authority that will not be condoned.

Thomas P. Bulter
Letter of Decision
January 18, 2000
Page Three

Further, your actions raise serious question as to your of dedication, loyalty, and job commitment. If you believe that in your position you are not required to acknowledge, respond and comply directives given to you by a Manager, than you seriously misunderstand your role as a supervisor.

Having found nexus, I must now examine if the penalty imposed is proper. In doing so, I will consider your tenure of service, the seriousness of the charge against you, the past element of record cited in the letter, the contentions you raise in your response, any mitigating factors, and all other evidence of record. In consideration of these factors, I find that the penalty imposed is proper. It is my decision, therefore, that the Proposed Letter of Warning in Lieu of a (7) Day Time-Off Suspension is sustained.

You have the right to request a review of this decision in writing within fifteen (15) calendar days from the date of your receipt of this letter. Direct your request to:

<div align="center">
Karen A. Borowski<br>
Manager, Human Resources<br>
Southeast Area Office<br>
220 N Humphreys Blvd<br>
Memphis TN  38166-0840
</div>

You should furnish me with a copy of your appeal. You are entitled to a representative of your own choosing throughout your appeal. You will be afforded a reasonable amount of official time for preparation of your case if you are otherwise in a duty status.

Saundra D. Richardson
Plant Manager
South Florida Mail Processing Center

**EMPLOYEE REGULAR MAIL**

Emp. SS #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

cc:    Labor Relations Office, Miami          Personnel Services/L. Raphael
       Plant Manager, SFMPC                   Personnel Services/T. Hernandez
       Sr MDO, T3, SFMPC                      Personnel Service/E. Alam
       MDO, T3, SFMPC
       Official Personnel Folder

EXHIBIT NO. _____

PAGE_____3___OF__5___

...dditional services.
...the reverse of this form so that we can return this
...of the mailpiece, or on the back if space does not
...Requested" on the mailpiece below the article number
...will show to whom the article was delivered and the date

I also wish to receive the following services (for an extra fee):

1. ☒ Addressee's Address
2. ☐ Restricted Delivery

...ssed to:
...nas P. Buttler
...pv., Distribution Svcs.
1840 Camino Real Apt. 155P
Miami, FL 33143-6871

4a. Article Number
Z419 541 422

4b. Service Type
☐ Registered
☐ Express Mail
☐ Return Receipt for Merchandise
☒ Certified
☐ Insured
☐ COD

7. Date of Delivery
1-25-00

5. Received By: (Print Name)
X Tom Butler

6. Signature: (Addressee or Agent)
X [signature]

8. Addressee's Address (Only if requested and fee is paid)

Is your RETURN...

Thank you for using Return Receipt Service.

PS Form 3811, December 1994 102595-99-B-0223 Domestic Return Receipt

EXHIBIT NO. U

PAGE 4 OF 5