NIGHT BOX
FILED

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

~~APR 1 6~~ 2003

**Case No.: 00-6193-CIV-LENARD/SIMONTON**

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

THOMAS BUTLER,

        Plaintiff,

v.                              **THIS IS A CONSENT CASE**

WILLIAM HENDERSON,
POST MASTER GENERAL, of the
UNITED STATES POSTAL SERVICE
AGENCY,

        Defendant.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, THOMAS BUTLER, through undersigned counsel, hereby submits the following

Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.

1.    **Introduction**

Plaintiff herein submits this memorandum in opposition to Defendant's motion for summary

judgment.

2.    **Factual Statement**

a.    **The Complaint**

The complaint alleges that plaintiff was initially employed as a Mail Handler in 1987 and was

promoted to Supervisor, Distribution of Operations in 1994. Plaintiff is an American Caucasian and

had previously filed EEO complaints internally which is protected activity under the Act in 1997.

1



Plaintiff was subjected to a continuous pattern of conduct of retaliation which substantially altered the terms, conditions and privileges of his employment including adverse employment actions and a hostile work environment by reason of race, national origin and retaliation. The pertinent portion of the second amended complaint states:

> " 7.    Plaintiff was subjected to a continuous pattern of conduct of retaliation from
> February, 1997 to June, 1997, which substantially altered the terms, conditions and privileges including adverse employment actions and a hostile work environment by reason of race, national origin and retaliation to wit:
>
> a.    Defendant failed to allow plaintiff to return to work for several months after taking medical leave, despite the fact that he had been cleared by his doctors and the medical unit of the defendant to return to work. (1-H-333-0018-97)
>
> b.    Defendant placed plaintiff on enforced leave despite the fact that he had been cleared to return to work.
>
> c.    closely scrutinizing plaintiff work performance and conduct; (1-H-333-0018-97)
>
> d.    harassment;(1-H-333-0018-97)
>
> e.    humiliated and berated in front of coworkers;(1-H-333-0018-97)
>
> f.    numerous inflammatory comments were made by management to plaintiff such as but not limited to find a new job, I'm tired of your nonchalant attitude, and even an insensitive remark was made concerning the death of plaintiff's brother; (1-H-333-0018-97)
>
> g.    deliberately scheduling meeting during plaintiff's lunch hour; (1-H-333-0018-97)
>
> h.    plaintiff's schedule was changed; (1-H-333-0018-97)
>
> 8.    Subsequently, on July 25, 1997, the retaliatory conduct continued such as plaintiff never receiving a biased and unfounded warning which was placed in his personnel file. As a result of the retaliatory act, plaintiff duly filed a formal complaint of discrimination. (1-H-333-

0036-97).

9.      In addition, as a direct consequence of defendant not allowing plaintiff
        to return to work, on November 4, 1997, plaintiff was not eligible for
        the Economic Value Added Credit.  Plaintif had to take out loan to
        pay his bills.  As a result of the retaliatory act, plaintiff duly filed a
        formal complaint of discrimination with the EEOC.(1-H-333-0011-
        98).

10.     Subsequently, on April 18, 1999, plaintiff was issued another
        unfounded warning regarding staffing.  Plaintiff was also subjected to
        disparate treatment since another employee who had not participated
        in protected activity was not disciplined at all for the same alleged
        infraction.  As a result, plaintiff filed an informal complaint of
        discrimination and believes heI filed a formal charge of discrimination
        with the EEOC which has been pending for over six months(1-H-333-
        0047-99).

11.     Subsequently, on November 3, 1999, plaintiff was forced to leave the
        building and was subjected to verbal abuse, such as being called stupid
        by MDO Carlies.  Plaintiff was ordered home that day despite the fact
        that there was no basis to do so.  This was direct retaliation for filing
        a complaint of discrimination in April, 1999.(1-H-333-0012-00).

12.     Plaintiff has been subjected to an ongoing and continuous pattern of
        discrimination and a hostile work environment due to race, national
        origin and retaliation which resulted in a hostile work environment.

13.     The aforementioned hostile work environment has caused plaintiff to
        suffer from an adverse employment actions.

14.     The foregoing conduct were so pervasive and severe that the hostile
        work environment altered the terms, conditions and privileges of
        plaintiff's employment to the point that  he was taken to the
        emergency room with heart palpitations and was for the first time in
        his life diagnosed with depression and anxiety. "

Defendant has attempted to argue that each act is separate and distinct.  However, that

position misconstrues plaintiff position that each act cannot be isolated but forms a continuous on

going pattern of retaliatory conduct against plaintiff.

3

### b.    Plaintiff's Affidavit

Mr. Fernandez who was plaintiff's supervisor continuously harassed him which

eventually led for plaintiff to file EEOC charges against him on or about March 20, 1997. He was

verbally abusive and shouted at plaintiff. Plaintiff noticed that he did not treat other Hispanic

supervisors that way. In fact, he threatened plaintiff, stated to plaintiff "this is your training week,

wait to next week" and he constantly threatened plaintiff of reassigning him and demoting him (" I

will see that you will never work as a supervisor again"). EEOC Charge No. 1H 333 0018-97

(Defendant' Laury Exhibit "8 and 14 ")   Also, plaintiff's work performance was criticized by Mr.

Fernandez in the presence of his subordinate employees in an effort to embarrass and humiliate him.

This happened on several occasions and plaintiff never saw Mr. Fernandez behave in such a manor

with other supervisors that he managed. EEOC Charge No. 1H 333 0018-97 (Defendant' Laury

Exhibit "8 and 14 ") Another example of harassment followed by Mr. Fernandez was that he

deliberately scheduled meetings during plaintiff's lunch hour. To plaintiff's knowledge, he had not

seen any other supervisors forced to eat their lunch during a meeting. EEOC Charge No. 1H 333

0018-97. Plaintiff's schedule was constantly changed (five times or more) to make it impossible for

plaintiff to learn the operation and workers which impeded his performance as a supervisor. EEOC

Charge No. 1H 333 0018-97  (Defendant' Laury Exhibit "8 and 14 ") The abuse got so bad that

plaintiff began to suffer from depression and work related stress anxiety. Plaintiff had to go to the

emergency room of a hospital and was subsequently placed on medication due to the harassment and

constant threats by Mr. Fernandez who was forced to resign due to sexually harassing women and

helping an employee falsify documents. (See Exhibit "A"-medical documentation) Since an initial

EEO complaint was filed by plaintiff in March, 1997, EEOC Charge No. 1H 333 0018-97, the Postal

4

Service has waged a retaliatory campaign against plaintiff which has caused a hostile work environment and led to his termination. (Plaintiff has been subsequently reinstated) It should be noted that Robert Brace, MDO, knew about plaintiff filing an EEO complaint in March or April, 1997 because plaintiff himself told him. He worked closely with Mr. Fernandez and plaintiff believes that he told Mr. Fernandez about the EEO filing.

Thereafter, on or about April 14, 1997, plaintiff submitted medical documentation that he was able to return to work part-time. (Dillon Exhibit "2") Although postal employees are allowed to return to work when injured on the job on a part-time basis for medical reasons, Mr. Fernandez the alleged discriminating official advised plaintiff in writing on May 2, 1997, that because plaintiff could only work part-time and not under his supervision, that the request to return to work was denied. (Laury Defendant Exhibit " 11 ") This is against Postal Policy. Thereafter, on May 8, 1997, plaintiff submitted an additional letter which cleared him to work full-time with the only restriction being that plaintiff could not be supervised by the alleged discriminating official, Mr. Fernandez, at least for the time being. (Dillon Defendant Exhibit "4" ) Thereafter, plaintiff spoke to Mr. Dillon on or about May 15, 1997. Plaintiff believes that he told him that he thought that the enforced leave was wrong, and that the action violates FMLA and postal policy and also mentioned his prior EEO activity against Mr. Fernandez. Despite the clearance to work, Robert Dillon advised hom on May 27, 1997 that plaintiff enforced leave would continue. (Dillon Exhibit "5"  ) Plaintiff was denied work on Tour II (away from Mr. Fernandez) that was available in May, 1997 but  was filled by a temporary supervisor, Ray Otero (Hispanic) in retaliation for plaintiff's prior EEO activity in March, 1997.

Thereafter, on June 6, 1997, plaintiff filed his formal charge of discrimination alleging a hostile work environment and retaliation for being placed on enforced leave. Plaintiff also filed a Merit

System Protection Board hearing on June 6, 1997 regarding my enforced leave. (Defendant' Laury Exhibit 14 " and Dillon Exhibit "7")

In October, 1997, plaintiff's mental state plummeted dramatically from March, 1997. Plaintiff's life was in a downward spiral and had uncontrollable feeling of hopelessness and despair which totally consumed him. Plaintiff found it difficult to get out of bed. plaintiff did not even take care of his personal hygiene. Plaintiff's wife had taken over the financial matters and wrote the checks and paid the bills because he did not have the awareness to do so. Plaintiff was diagnosed as suicidal and was under significant doses of medication such as Prozac and Klonopin. The drugs impacted his inability to think clearly and he was unable to focus. (See Exhibit "A")

Although plaintiff signed the settlement agreement, he do not believe it was knowing and voluntary since his mental state did not allow him to understand and comprehend the agreement and the consequences of signing it since he was in a major depression and unable to focus. Plaintiff never met his attorney in person. He was a union attorney who was based in Dunedin, Florida who forwarded the agreement by mail. The attorney told plaintiff on the telephone to sign the agreement and plaintiff would return to work. When plaintiff signed the agreement, he did not comprehend what he was signing and the consequences of signing the agreement would result in waiving his EEOC rights.

Plaintiff had filed his first EEO in March, 1997 regarding harassment. The Defendant failed to allow plaintiff to return to work for several months after taking medical leave, despite the fact that plaintiff had been cleared by his doctor and the medical unit of the defendant to return to work. In addition, the defendant was obligated to reinstate plaintiff under the FMLA and limited duty procedures. (Exhibit "E") As a direct consequence of defendant not allowing plaintiff to return to work, plaintiff was not eligible for the Economic Value Added Credit EEOC Charge No. 1H 333 0036-97 (Laury

6

Exhibit "22")

The harassment continued, numerous inflammatory comments were made by management to plaintiff such as but not limited to being called stupid, look for a new job, I'm tired of your nonchalant attitude, and even an insensitive remark was made concerning the death of my brother . These comments were made by Rosie Carlies, Manager of Distribution and Operations  EEOC Charge No. 1H 333 0011-98,  EEOC Charge No. 1H 333 0047-99,  EEOC Charge No. 1H 333 0012-00. (Laury Exhibits 25, 33, and 39; also see Exhibit "B")

Plaintiff was thrown out of a staff meeting without cause by Rosie Carlies. EEOC  Charge No. 1H 333 0047-99 and EEOC Charge No. 1H 333 0012-00.  In fact, plaintiff was forced to work OCR, DBCS, BCS, SWYB, platform, manual flats, manual letters, and FSM.  Plaintiff is unaware of any other supervisor who had to work in so many different operations during a short period of time as another form of harassment. (Laury Exhibits 25, and 39, also see Exhibit "B")  Plaintiff received a biased and unfounded letter of warning having to many workers in the operation when a short time later Ms. Ettienne  had almost twice the allotted number (plaintiff had only three more than the allotment) but she was not given a letter of warning to plaintiff's knowledge.  EEOC Charge No. 1H 333 0047-99 and EEOC.  It should be noted that plaintiff believes he did file a formal complaint of discrimination on EEOC Charge No. 1H 333 0047-99. (Laury Exhibit 25 and Exhibit B)  Ms. Carlies ordered plaintiff to leave the building without just cause in front of co-workers and subordinate employees which was extraordinarily embarrassing. EEOC Charge No. 1H 333 0012-00.  She clearly knew about plaintiff's EEOC charge since she was aware of the settlement and plaintiff's reinstatement.   (See e-mail dated 10/15/97 as Exhibit "C ")  Moreover, her reaction and the comments were made to plaintiff due to being labeled as a troublemaker which was common

7

knowledge among management at plaintiff's facility for his EEO activity. (Exhibit "D")

It is clear to plaintiff that the Postal Service targeted him due to retaliation

which resulted in a hostile work environment and which caused plaintiff's discharge from his lifetime

civil service career at the Postal Service, although he had been subsequently reinstated.

## ARGUMENT

## POINT I

### DEFENDANT HAS THE BURDEN OF SHOWING THAT
### THERE ARE NO GENUINE MATERIAL ISSUES OF FACT

In connection with a motion for summary judgment, the Court's function is to determine

whether a material factual issue exists, not to resolve any existing factual issues. United States v.

Diebold Inc., 369 U.S. 654 (1962). A court may grant summary judgment under Fed.R.Civ.P. 56(c)

only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to

a judgment as a matter of law." Fed.R.Civ.P. 56(c). Where, as here, the non-movant bears the

ultimate burden to prove at trial that the defendant discriminated against plaintiff, he may defeat the

summary judgment motion by procuring sufficient specific facts to establish that there is a genuine

issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553,

91 L.Ed.2d 265 (1986). Also, the party moving for summary judgment has the burden of showing

the absence of genuine issue of material fact. Weinberger v. Hynson, 412 U.S. 609 (1973). In

addition, in ruling on a motion for summary judgment, a court must resolve all ambiguities and draw

all reasonable inferences in favor of the party defending against the motion. Welch v. Celotex Corp,

951 F2d 1235, 1237 (11 Cir. 1992) Hoffman v. Allied Corp, 912 F2d 1379 (11th Cir. 1990), Eastway

Construction Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985), cert. denied.

8

The Court have recognized that in discrimination cases, an employer's true motivations are particularly difficult to ascertain, see United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (acknowledging that discrimination cases present difficult issues for the trier of fact, as "there will seldom be `eye witness' testimony as to the employer's mental processes"), thereby making such factual determinations generally unsuitable for disposition at the summary judgment stage. Lowe v. City of Monrovia 775 F.2d 998, 1009 (9th Cir. 1985). As the Supreme Court recently stated that one only must show the legitimate reasons are not the true reasons for the action taken.. Put simply that in this case that the actions taken against plaintiff are in dispute. Reeves v. Sanderson Plumbing. 2000 WL 743663 (U.S. S. Ct. June 12, 2000).

## POINT II

**STANDARD OF REVIEW AND ANALYSIS OF THE SUBSTANTIVE CLAIMS McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 37 L.Ed.2D 668 (1973) Is Controlling Herein and Reeves v. Sanderson Plumbing, 530 U.S. 133 (2000).**

1.    **Plaintiff's Burden**

In McDonnell Douglas Corp. v. Green, supra, at 411 U.S. 792, the Supreme Court enunciated a three-prong allocation of proof requirement in the context of a private, non-class action challenging employment discrimination. It held:

> The complaint in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (v) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

One can show a prima facie case of discrimination in a variety of ways. The differences are in the fourth element. Plaintiff must show that (1) that he was a member of a protected class. 2) that the was qualified for the job; 3) that he was terminated despite his qualifications 4) he was treated less favorably than other similarly situated employees or that the reasons proffered by the employer or false <u>Reeves v. Sanderson Plumbing</u>. 2000 WL 743663 (U.S. S. Ct. June 12, 2000).      T h e burden then must shift to the employer to articulate some legitimate, non-discriminatory reason for the employer's rejection but the inquiry must not end there. See <u>McDonnell Douglas Corp. v. Green, supra,</u> at 411 U.S. 903, 804-805. This three prong test has been applied or acknowledged in many cases since its initial pronouncement. See, among others: <u>Furnco Construction Corp. v. Waters</u>, 438 U.S. 567, 577, S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); <u>Teamsters v. United States</u>, 431 U.S. 324, 358, 97 S.Ct. 1843, 1886, 52 L.Ed.2d 396 (1977); <u>Franks v. Bowman Transportation Co.</u>, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248,, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); <u>Dister v. Continental Group Inc.</u>, 859 F.2d 1108 (2d Cir. 1988); <u>Meiri v. Dacon,</u> 759 F.2d 959 (2d Cir. 1983).

## 2.    <u>Standards Regarding Retaliation</u>

The opposition clause prohibits adverse action against an individual who has opposed employment practices made unlawful by Title VII or the Florida Civil Rights Act. The test is whether the employee had complained about conduct that if true would constitute a violation of Title VII. <u>Harington v. Gainsville Son Publishing</u>, 9 F3d 913 (11th Cir. 1993), <u>Gordon v. City of Atmore</u>, 996 F2d 1155 (11th Cir. 1993); <u>Parker v. Baltimore & B.R.R. Co.</u>, 652 F.2d 1012 (D.C. Cir. 1981); <u>Nonteiro v. Poole Silver Co.</u>, 615 F.2d (1st Cir. 1980). See also, <u>Payne v. McLemore's Wholesale and Retail Stores</u>, 654 F.2d 1130 (5th Cir. 1981). Clearly, complaining  about discriminatory

10

treatment regarding salary falls squarely within the opposition clause.

To establish a case concerning discharge based upon retaliation, the plaintiff must by a preponderance of the evidence show each of the following four elements:

    1.      That plaintiff complained about protected activity under Title VII;

    2.      That the employer took adverse action;

    3.      A causal link exists between the plaintiff's protected activity and the

adverse action taken by the employer;

Harington v. Gainsville Son Publishing, 9 F3d 913 (11th Cir. 1993), Gordon v. City of Atmore, 996 F2d 1155 (11th Cir. 1993); Cosgrove v. Sear Roebuck & CO., 9 F.3d 1033, 1039 (2nd Cir. 1993); Parker v. Baltimore & B.R.R. Co., 652 F.2d 1012 (D.C. Cir. 1981); Nonteiro v. Poole Silver Co., 615 F.2d (1st Cir. 1980). See also, Payne v. McLemore's Wholesale and Retail Stores, 654 F.2d 1130 (5th Cir. 1981). The burden then shifts to the employer to articulate a legitimate, specific, nondiscriminatory reason for the adverse action taken.

**3.**     **Defendant's Burden - Degree of Proof**

While the plaintiff has the ultimate burden of persuasion to prove the alleged discrimination, see Texas Dept. of Cons. Affairs v. Burdine, 450 U.S. 2489, 253, 101 S.Ct. 1089, 1981), nevertheless the defendant party is required to satisfy an intermediate burden of rebutting a prima facie case of discrimination as established by the plaintiff pursuant to and under the guidelines mandated, described and otherwise set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, S.Ct. 1817, 63 L.Ed.2d 668 (1973). Furthermore, while at first blush it would appear that Burdine, supra, requires only that appellee articulate a legitimate reason to rebut a non-discriminatory justification in response to the prima facie case, such is not precisely the obligation of the rebutting

party. In that regard, the <u>Burdine</u> Court requires something other than mere articulation of a non-race based justification. It requires that the "defendant's explanation (articulation) of its legitimate reasons must be clear and reasonably specific." <u>Burdine</u>, <u>supra</u>, at 450 U.S. 258, 67 L. Ed. at 2d 218 (emphasis added). Explaining the reason for requiring something more than a bland articulation of legitimate, non-discriminatory justification and requiring, instead, clear and specific justification.

This obligation arises both from the necessity of rebutting the inference of discrimination arising from the prima facie case and from the requirement that the plaintiff be afforded "a full and fair opportunity" to demonstrate pretext. Plaintiff's position that something more than a bland articulation of justification/non-discriminatory reasons is necessary is supported by an analysis of pre-<u>Burdine</u> precedent and reflects the Supreme Court's inclusion of the language set forth in <u>Burdine</u> (that is, the use of the terms "clear" and "specific"). <u>Meiri v. Dacon</u>, 759 F.2d 959 (2d Cir. 1983).

## 4.    **Plaintiff's Burden or Proving Pretext**

Once the defendant has articulated a legitimate criterion in a clear and specific manner then the burden shifts to the plaintiff to prove pretext. <u>Burdine</u> clearly stated that in addition to directly proving a discriminatory motive, a plaintiff may prevail upon showing that the employer's given legitimate reason is unworthy of credence, that is, that the reason supplied was not the true reason for the unfavorable employment decision. <u>Burdine</u>, <u>supra</u>, 450 U.S. 972; <u>Dister v. Continental Group Inc.</u>, 859 F.2d 1108, 1113 (2d Cir. 1988). The reason is that employers generally act for a reason and thus those who can demonstrate no legitimate reason for acting more likely than not acted for a discriminatory reason. Therefore, when the employer's non-discriminatory reason is shown to be unworthy of belief, and thus was not the real cause for the termination, the employer has in substance failed to articulate a valid explanation for discharging an employee and has placed its credibility into

question. <u>Dister v. Continental Group</u>, <u>supra</u>.

In <u>Harington v. Gainesville Sun Publishing Co.</u>, 9 F3d 913 (11th Cir. 1993) this Court reversed the District Court and held that a plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts which taken in the light most favorable to the non-moving party could allow a jury to find that the plaintiff has established pretext. In other words, the employer's proffered explanations is not credible or is unworthy of credence. The plaintiff can also show that a discriminatory reason likely motivated the employer in its employment decision. See also <u>Batey v. Stone</u>, 24 F3d 1330 (11th Cir. 1994) indicating that if a genuine factual dispute exists as to the preferred reason, summary judgement is inappropriate. In <u>Howard v. BP Oil Co.</u>, 32 F3d 520 (11th Cir. 1994) held that plaintiff's burden on summary judgement is merely creating a factual issue as to the truthfulness of the defendant's proffered explanation. See also <u>Cooper-Houston v. Southern Railway Co.</u>, 37 F3d 603 (11th Cir. 1994). The Supreme Court recently spoke on the shifting burdens. For summary judgment purposes one must show that the reasons articulated to terminate plaintiff are in dispute. Accordingly, plaintiff may do this by showing that the legitimate reasons are not the true reasons for her termination or there is a factual dispute as to disparate treatment in connection with the termination. <u>Reeves v. Sanderson Plumbing</u>. 530 U.S. 133 (2000).

5.    **<u>Standards Regarding a Hostile Work Environment</u>**

It should be noted that the courts which have examined the theory of hostile work environment in the context of Title VII have not proceeded using the analysis outline in <u>Mcdonald Douglas</u>, <u>supra</u>, but has found that an employer violates Title VII by creating or condoning an environment at the work place which is considered an abusive work environment. In <u>Harris v.</u>

13

Forklift Systems Inc., 114 S. Ct. 367 (1993), the court pronounced that a discriminatory abusive work environment, even one that does not seriously affect an employee's psychological well being, can and often will detract from one's job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, the fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of race or other protected classification offends Tittle VII's broad rule of work place equality. The Court concluded after examining all of the circumstances (such as the frequency of the conduct, its severity, whether its humiliating, whether it interferes with the employees performance) that so long as the environment would reasonably be perceived and is perceived as hostile or abusive, then there is no need for it also to be psychologically injurious. Also see Locastro v. East Syracuse-Minoa Cent. School District, 830 F. Supp. 133 (N.D.N.Y. 1993). Cf. West v. Philadelphia Elec. Co., 45 F.3d Cir. 744,755-56 (3rd Cir. 1995) (holding that allegations concerning nooses, Ku Klux Klan "Christmas card", voodoo doll, and harassing conversations established racially hostile work environment); Butler v. Coral Volkswagen, Inc., 629 F. Supp. 1034 (S.D. Fla. 1986) (holding that racially hostile work environment existed where black employee faced constant racial epithets; discriminatory work assignments; managers participated in or tolerated harassment, and failed to remedy serious adverse conditions).

In Meritor Savings Bank v. Vinson, 106 S.Ct. 2399 (1986), the Supreme Court interpreted that phrase to include hostile or abusive working environment. In a hostile work environment, Title VII is violated when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. "Harris v. Forklift Systems, Inc., 114 S.Ct. 367, 370 (1993)

14

(quoting <u>Meritor Sav. Bank v. Vinson</u>, 106 S.Ct. At 2404-05). The current state of the law governing harassment in the workplace has been reaffirmed in a pair of opinions issued by the Supreme Court recently in <u>Faragher v. City of Boca Raton</u> and <u>Burlington Industries v. Ellerth</u>. 118 S. Ct. 2275 (1998)

## POINT III

## PLAINTIFF DID NOT KNOWINGLY AND VOLUNTARILY WAIVE HIS RIGHTS UNDER THE DISCRIMINATION STATUTE BECAUSE HE WAS MENTALLY IMPAIRED AT THE TIME

Employees may release, waive or discharge their rights under an employment discrimination statute, provided they do so knowingly and voluntarily. <u>Alexander v. Gardner-Denver Co.</u>, 415 U.S. 36, 52 (1974). The Criteria to determine whether a release is knowing and voluntary are (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had access to the agreement prior to signing it, (3) plaintiff's role in negotiating the terms of the release, (4) the ambiguity of the release, (5) whether plaintiff was counseled by an attorney prior to signing the release, and (6) whether the consideration offered in exchange for the release is greater that the amount of the benefits the plaintiff was already entitled to. <u>Puentes v. United Parcel Service Inc</u>. 86 F.3d. 196 (11th Cir. 1998) <u>Vaughn v. Mobil Oil Corp.</u>, 708 F. Supp. 595 (S.D.N.Y. 1989);

In the case at bar, the plaintiff was suffering from severe depression and was suicidal. He was not able to focus and was under a significant amount of medication. See plaintiff's affidavit. At a

15

minimum, there are issues of fact in dispute, given plaintiff's condition as to whether he *knowingly* entered into the settlement agreement with an appreciation of the consequences of what he was signing. Even though he signed the agreement, and had a union attorney, the plaintiff never met the union attorney and thus the attorney was not in a position to judge at the time his mental state.

There was no consideration. In other words, the only consideration in the settlement was that plaintiff would return to work under a different tour, something that the defendant was already obligated to do. If plaintiff went forward with the MSBP hearing and lost, he still would have been able (assuming he was able medically) to return to work without having to sign a release. In short, the agreement actually put in a worse position than he would have been in if he had gone forward with the hearing and lost. Further, the agreement merely provides that the defendant comply with its own policy and nothing more. Thus, upon close examination, there was no real benefit to plaintiff.

Further, the release is ambiguous. It contains no specific language concerning what statutes plaintiff is releasing defendant from which is standard in a release. Unlike the MSPB proceeding which is mentioned specifically with a docket number, no specific mention is made of any other proceeding. In the case at bar, this release is so unclear that one cannot gleam from the face of the release what the release actually applies to.

In sum, the release is invalid because it was not knowingly and voluntarily entered into. The release was given without any consideration and the release is ambiguous.

## POINT IV

**EVEN IF THE AGREEMENT WAS KNOWINGLY AND VOLUNTARILY
ENTERED INTO, THE MERIT SYSTEM PROTECTION BOARD SETTLED
ONLY THE ISSUE OF ENFORCED LEAVE AND COULD NOT
HAVE SETTLED EEOC CHARGE NO. 1-H-333-0018-97 OR ANY OTHER CHARGE**

16

The issue before the Merit System Protection Board dealt with the issue pertaining to the enforced leave. Plaintiff had alleged that due to his prior EEO activity in March, 1997, the defendant refused to reinstate plaintiff despite being cleared by both his own doctor and defendant's own doctor to return to work. As a result, plaintiff in May, 1997, two months after his EEO filing filed an appeal to the Merit System Protection Board in connection with the refusal to reinstate plaintiff. However, the EEO complaint filed in March, 1997(EEOC Charge No. 1-H-333-0018-97), was prior to the defendant refusing to reinstate plaintiff and the harassment set forth in that charge and was not the subject of the Merit System Protection Board hearing. Thus, the matter could was not settled before the Merit System Protection Board. Put simply, the Merit System Protection Board Hearing dealt only with the issue of the enforced leave. EEOC charge No. 18-97 also dealt with the hostile work environment which caused plaintiff's leave initially prior to the enforced leave on May 27, 1997.

In addition, the Court is respectfully referred to Point III of the memorandum of law.

### POINT V

**CHARGE NOS.1-H-333-0012-00 AND 1-H-333-0047-99 ARE CLOSELY RELATED AND GROW OUT OF THE ALLEGATIONS CONTAINED IN THE OTHER CHARGES OF DISCRIMINATION**

The Courts have held that when related conduct has occurred, the Courts have jurisdiction to hear subsequent related conduct.

In Ermel I. Coon v. Georgia Pacific Corporation, et al.829 F.2d 1563, 1570 (11th Cir. 1997), the Eleventh Circuit cited Theodore Kirkland v. Buffalo Board of Education, which held:

> "...the jurisdictional requirements of Title VII were not intended to be construed so narrowly... The issuance of a right to sue letter...does permit a court to consider claims of discrimination reasonably related

17

to the allegations in the complaint filed with the EEOC, including new acts occurring during the pendency of the charge before the EEOC." 622 F.2d 1066, 1068 (2nd Cir. 1980).

The events which occurred subsequent to the charges filed are closely related and as such the Eleventh Circuit has held that the allegations in Plaintiff's Amended Complaint:

"may encompass any discrimination like or related to the allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission." Ermel I. Coon v. Georgia Pacific Corporation, et al.829 F.2d 1563, 1569 (11th Cir. 1997).

The EEOC charge filed in February, 1998 is closely related. For example, the harassment that plaintiff was subjected too was continuing in nature. The complaint alleges that plaintiff was subjected to different terms, conditions and privileges of employment including harassment and abusive conduct toward him. The complaint reflects the exact same basis retaliation claiming the exact same disparate treatment to wit the harassment which has been outlined with specificity above. Because all of the allegations contained in Plaintiff's Complaint are reasonably related to the formal complaints which were filed by plaintiff, the summary judgment should be denied as to the two charges above. To hold otherwise would require plaintiff to file a separate EEOC charge for each and every time a comment is made, a detrimental schedule change is made and meeting appears to be scheduled to conflict with his lunch hour.

In addition, plaintiff believes that he did file a formal charge of discrimination as it pertains to Charge No.:1-H-333-0047-99 (See plaintiff's affidavit) Even if he did not file a charge of discrimination, this charge grows directly out of the EEOC charges that were still pending. (EEOC Charge Nos. 18-97, 36-97 and 11-98))

## POINT IV

18

## ISSUES OF FACT REMAIN CONCERNING
## CHARGE NOS. 18-97, 36-97, 11-98, 47-99, 12-00

Charge No. 18-97 outlines harassment which directly caused plaintiff to have a substantial mental impairment to wit: severe depression. These issues of fact simply go unrebutted.

Regarding Charge No. 11-98, as a direct consequence of defendant not allowing plaintiff to return to work, he was subsequently not eligible for the Economic Value Added Credit because his contributions fell short. In other words, plaintiff does not contest the fact that he was ineligible for the Economic Value Added Credit but the reason why plaintiff was ineligible was due to a lack of contributions which was caused by defendant failing to return plaintiff to work for several months despite the fact that he had been cleared by his doctors and the defendant's own medical unit. Put simply, there is an issue of fact as to whether plaintiff's EEO complaint which was pending at this time was a but for factor in defendant refusing to return plaintiff to work which in turn caused him to lose a significant bonus.

Regarding Charge No. 36-97, despite repeated attempts by plaintiff to review his personnel file for five months and then when the personnel file was finally produced and unwarranted and untimely letter of warning was placed in plaintiff's personnel file. Although plaintiff concedes that this is not an adverse job action; however, this n follows the pattern of harassment (which now has resulted in plaintiff's termination and reinstatement) which was on going and continuing since it would have been a permanent part of his record and reflects the retaliatory intent of the Postal Service against plaintiff. Even though the LOW was prior to any EEO activity, the record is unclear as to when it was placed in his labor file without him being provided a copy of it. The failure to timely serve the LOW on plaintiff and placing it in his file without notice, left the defendant with no choice

but to remove the LOW.

In addition, the following conduct has occurred in 1999 to date and clearly is related to the continuos pattern of retaliation such as humiliated and berated in front of coworkers; numerous inflammatory comments were made by management to plaintiff such as but not limited to being called stupid, look for a new job, I'm tired of your nonchalant attitude, and even an insensitive remark was made concerning the death of plaintiff's brother; plaintiff's schedule was changed; plaintiff received biased and unfounded warning and plaintiff was even asked to leave the building;     Plaintiff received a biased and unfounded letter of warning having to many workers in the operation when a short time later Ms. Ettienne had almost twice the allotted number but she was not given a warning letter.   EEOC Charge No. 1H 333 0047-99 and EEOC Charge No. 1H 333 0012-00.

## CONCLUSION

Plaintiff respectfully submits that the summary judgment be denied in its entirety.

Dated:  Fort Lauderdale, Florida
         April 16, 2003

Respectfully submitted,

STEWART LEE KARLIN, ESQ.
Attorney for Plaintiff
315 Southeast Seventh Street, 2nd Floor
Fort Lauderdale, Florida 33301
(954) 462-1201
Fla. Bar No.: 961159

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing by hand to: CHARLES S.

WHITE, Assistant U.S. Attorney , 99 N.E. 4th Street, Miami, FL 33131 on this 16th day of April,

2003.

STEWART LEE KARLIN, ESQ.
Florida Bar No. 0961159
315 Southeast 7th Street
Fort Lauderdale, Florida 33301
(954) 462-1201