IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6193-CIV LENARD/Simonton

THOMAS BUTLER,

            Plaintiff,

v.                                 CONSENT CASE

JOHN POTTER, Postmaster,
United States Postal Service,

            Defendant.
_____/

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW the Defendant, by and through the undersigned Assistant United States Attorney, and pursuant to Rule Local Rule 7.1(C), and the Court's order dated April 21, 2003, to file this Reply to Plaintiff's Response In Opposition to Defendant's Motion For Summary Judgment (hereinafter, Response):

**THERE IS NO DIRECT EVIDENCE OF DISCRIMINATION**

In his Motion, the Defendant submitted substantial evidence demonstrating that Plaintiff cannot establish a prima facie case of a hostile work environment based upon his race and/or national origin or that any such harassment affected his work performance, or a prima facie case of any other form of wrongful discrimination and/or retaliation. In his Response, Butler appears to concede that there is no direct evidence of a hostile work environment, wrongful discrimination and/or retaliation. Indeed, because there is no "direct evidence"[1] that race and/or national origin discrimination, and/or retaliation was a motivating factor in the challenged employment decisions, the Court must proceed with the *McDonnell Douglass* analysis as set forth in Defendant's Motion.

<u>Settlement Agreement</u>

In his Response, Butler claims that, at the time he entered into the Settlement Agreement (October 15, 1997), he was suffering from major depression for which he was taking medication which rendered him mentally incompetent to knowingly enter into the Settlement Agreement. Accordingly, Butler argues that any release contained in the Settlement Agreement is "invalid."

---

[1]Direct evidence, by definition, is evidence that does not require such an inferential leap between fact and conclusion. *See Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1081-82 (11th Cir. 1990)(evidence merely suggesting discrimination is not enough). *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642(11th Cir. 1998).

However, under Florida law, the contract of one who is not mentally competent to contract is not void, but is voidable. *Palmer v. Palmer*, 479 So.2d 221 (5th DCA 1985).[2] In addition, Butler's recent submissions regarding his mental incapacity in October 1997 fly in the face of his own contemporaneously handwritten accounts of his tribulations.[3] Indeed, his narratives reveal that despite any mental infirmity, Butler (who was represented by counsel before the MSPB) was capable of understanding the nature and consequences of his acts in general and the character of the settlement transaction in particular.[4]

Moreover, Florida law recognizes that after restoration of competency, a person may ratify a contract he made while incompetent. The ratification may be manifested by express declaration or may be evidenced by any intelligent act which is made with a full knowledge of the facts and clearly shows an intention to be bound by the contract. Acceptance of the benefits of the contract by the contractor constitutes a sufficient act of ratification under this rule. *Perper v. Edell*, 35 So.2d 387 (Fla. 1948).

Even assuming Butler was incompetent to enter into the Settlement Agreement in October 1997, his subsequent acceptance of the benefits of that agreement (coupled with his evident ability to understand the nature and consequences of his acts as seen in his numerous subsequent filings, including but not limited to his initial *pro se* Complaint in these proceedings) demonstrates his ratification of the Settlement Agreement.

### Hostile Work Environment and Retaliation
(EEOC Case, #1-H-333-0018-97)

Assuming for the sake of argument that the Settlement Agreement does not bar Plaintiff from now litigating the matters raised in administrative EEOC Case, #1-H-333-0018-97, which are re-asserted in paragraph 7 of Butler's Second Amended Complaint, the Defendant now addresses the merits of the claims. The thrust of Butler's allegations as contained in Paragraph 7 of his Second Amended Complaint is that the USPS created and/or permitted a hostile work environment which interfered with his work performance.

---

[2] Not every substandard mentality or even every mental infirmity has the effect of rendering the afflicted person disabled for the purpose of entering into contracts and making conveyances. *Donnelly v. Mann*, 68 So.2d 584 (Fla. 1953). A reasonable test for the purpose of determining whether an infirmity operates to render a person incapable of binding himself absolutely by contract is whether his mind has been so affected as to render him incapable of understanding the nature and consequences of his acts (see *Donnelly*) or, more specifically, whether his mental powers have become so affected as to make him unable to understand the character of the transaction in question. *Lucom v. Atlantic Nat. Bank of West Palm Beach*, 97 So.2d 478 (Fla. 1957).

[3] Many of these submissions are attachments to Taylor-Laurie's Declaration. For example, consider Butler's Administrative Complaint, #1-H-333-0036-97, signed and filed October 27, 1997, which provides as follows:

> On 7/25/97 I received a package from Labor Relations (Tobe Lowe). In the package was a LOW from Jack Watson dated Feb of 1997. I had never seen this LOW. I was unaware that I was ever going to get the letter let alone discover it by accident in the package from Tobe Lowe on 7-25-97 (nearly 5 months after the alleged letter was dated. I believe it to be an unethical and discriminatory procedure. Furthermore, I contend it was designed to be retaliatory and discriminatory to prior EEO of 3-7-97. Only white SDO on Tour 1 that was retaliated against with an unethical LOW.

[4] To the extent that Butler suggests that inadequate representation by his own lawyer rendered his consent involuntary, such an allegation cannot be used to attack "the integrity of the settlement" and is a dispute . . . purely between the party and his attorney." *Petty v. Timken Corporation*, 849 F.2d 130, 133 (4th Cir. 1988).

> Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). A plaintiff may establish his employer's violation of Title VII by showing that the discriminatory actions have created a "hostile or abusive work environment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *see also Burlington Industries, Inc., v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2265, 141 L.Ed.2d 633 (1998)(contrasting hostile work environment claims from quid pro quo claims in Title VII context). The prima facie requirements necessary to establish a hostile work environment claim require that (1) Plaintiff belongs to a protected group, (2) Plaintiff was subjected to unwelcome [protected class] harassment, (3) the harassment was based upon Plaintiff's [protected class], and (4) the harassment affected the conditions of Plaintiff's employment. *See Fleming v. Boeing Co.*, 120 F.3d 242 (11th Cir. 1997).
>
> The critical issue in the instant case is the fourth element of the prima facie test--whether Defendants' harassment of Plaintiff affected the conditions of Plaintiff's employment. Plaintiff can satisfy this element by showing "that the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Watkins v. Bowden*, 105 F.3d 1344, 1355 (11th Cir. 1997)(citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 20-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

*Caro v. Miami-Dade County*, 105 F.Supp.2d 1326 (S.D. Florida 2000).

The uncontroverted material facts reveal that Plaintiff cannot show *any* harassment based upon any protected class (i.e., race, color, religion, sex, age, or national origin) or that any such harassment affected his work performance (see Defendant's CSMF).[5]

> Harassment is severe or pervasive for Title VII purposes only if it is both subjectively and objectively severe and pervasive. *Mendoza*, 195 F.3d at 1246. Harassment is subjectively severe and pervasive if the complaining employee perceives the harassment as severe and pervasive, and harassment is objectively severe and pervasive if a reasonable person in the plaintiff's position would adjudge the harassment severe and pervasive. *See id.* When determining whether harassment is objectively severe and pervasive, courts consider "the frequency of the conduct," "the severity of the conduct." "Whether the conduct is physically threatening or humiliating, or a mere offensive utterance," and "whether the conduct unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246.

*Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 509 (11th Cir. 2000). Because there is no evidence that Butler was harassed based upon his race, national origin, or that any such harassment affected his work performance, the Defendant is entitled to summary judgment on these claims.

As noted in footnote 17 of the Defendant's Motion, to establish a prima facie case of retaliation, a Plaintiff must show 1) that he engaged in statutorily protected activity; 2) that he suffered an adverse employment action; and 3) a casual link between the protected activity and the adverse action. *Standard v. A.B.E.L. Services. Inc.*, 161 F.3d 1318,1328 (11th Cir. 1998). A plaintiff may establish the first prong of the *Standard* test by opposing wrongful discriminatory practices.

---

[5]In deposition, Butler could not identify a single act or fact to support his assertion that he was subjected to actionable protected class discrimination. See Plaintiff's Deposition, Pages 29-41.

3

Regarding the allegations contained in paragraph 7 of his Second Amended Complaint, the uncontroverted facts reveal that first, Plaintiff cannot demonstrate that he publicly engaged in statutorily protected activity prior to June 6, 1997 when Butler filed his Administrative Complaint of Discrimination with the EEOC, Case, #1-H-333-0018-97.

Second, regarding the allegations contained in paragraph 7 of his Second Amended Complaint, the Defendant concedes that, if true, Defendant's failure to allow plaintiff to return to work for several months after taking medical leave, as well as Plaintiff's placement on enforced leave arguably had a material impact on Plaintiff's compensation. Accordingly, the Defendant would concede that such action would amount to a *serious and material* change in the terms, conditions, or privileges of his employment, and therefore constitute an adverse employment action. However, because the remaining allegations contained in paragraph 7 of his Second Amended Complaint, even if true, do not amount to *serious and material* changes in the terms, conditions, or privileges of employment, they do not constitute an adverse employment action. Those latter employment actions had no material impact on Plaintiff's rank, compensation, terms, conditions, benefits or privileges of employment, or deprived him of employment opportunities, or adversely affected his status as an employee.

Third, regarding the allegations contained in paragraph 7 of his Second Amended Complaint, the uncontroverted facts reveal that Plaintiff cannot establish a casual link between the protected activity and any adverse action suffered. As noted above, the uncontroverted evidence shows that prior to June 6, 1997, Butler had not publically participated in any protected activity.[6] Consequently, Butler can only establish that his employer knew he had participated in protected activity *after June 6, 1997*, after the allegedly adverse actions were taken against him.

> In order to establish the requisite "casual link" required as part of a prima facie case, a plaintiff need only establish that "the protected activity and the adverse action were not wholly unrelated." See *EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993); *Bigge v. Albertsons, Inc.*, 894 F.2d F.2d 1497, 1501 (11th Cir. 1990); *Simmons v. Camden County Br. of Edu.*, 757 F.2d 1187, 1189 (11th Cir.), *cert. denied*, 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985). At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action. *See, e.g., Weaver*, 922 F.2d at 1525; *Simmons*, 757 F.2d at 1189.

*Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

In his Response, Butler asserts only that "Robert Brace, MDO, knew about my filing an EEO

---

[6]On March 20, 1997, Butler initiated informal proceedings with the Equal Employment Opportunity Commission (EEOC) when he reported the forgoing incidents in Precomplaint Counseling asserting that he had been subjected to wrongful discrimination based upon color ("White"), religion ("Quaker"), age ("over 40"), race ("Caucasian (non Hispanic)"), national origin ("USA), and sex ("Male").

However, Butler requested anonymity during the informal counseling stage of the EEO complaint processing and therefore, management was not advised about it. Accordingly, prior to June 6, when he filed his formal Administrative Complaint, Butler had not publicly participated in protected activity.

complaint in March or April, 1997 because I told him. He worked closely with Mr. Fernandez *and I believe that he told Mr. Fernandez about the EEO filing.*" (Emphasis added) Butler offers no evidence establishing that Fernandez or any other of his (Butler's) own supervisors were actually aware of the protected expression at the time any pertinent adverse employment action was taken.

> Summary judgment cannot be avoided . . . based on hunches unsupported with significant probative evidence.

*Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1198 (11th Cir. 1997). *See also Godby v. Montgomery County Bd. Of Educ.*, 996 F.Supp. 1390, 1412 (M.D. Ala. 1998).[7]

Consequently, as noted above and in the Defendant's Motion, Butler can only establish the necessary casual link between his public participation in protected activity and the actions which took place after June 6, 1997. Because Butler cannot establish that he publically participated in protected activity after the allegedly adverse actions (as alleged in paragraph 7 of his Second Amended Complaint) were taken against him, and because his supervisors were unaware of his alleged participation in protected activity prior to June 6, 1997, he has failed to establish a prima facie case of wrongful retaliation. Accordingly, the Defendant is entitled to summary judgment on Plaintiff's retaliation claims as alleged in paragraph 7 of his Second Amended Complaint.

### Defendant Had Legitimate Non-Discriminatory and Non-Retaliatory Reasons For The Challenged Employment Decision (EEOC Case, #1-H-333-0018-97)

Assuming for the sake of argument that Butler can establish a prima facie case of retaliation regarding his pre-June 6, 1997 allegations, the Defendant has presented substantial evidence that the USPS had legitimate non-discriminatory and non-retaliatory reasons for refusing to allow plaintiff to return to work for several months after his taking medical leave. By letter dated May 2, 1997, Sergio Fernandez, MDO, advised Butler of his intention to place Butler on enforced leave based upon the diagnosis of Dr. Lopez-Brignoni. In pertinent part, Fernandez wrote as follows:

> Your documentation indicates that you are not able to return to work and perform the full duties of your position. Specifically, your doctor advises that you can only work on a part-time basis and has limited you to no more than 20 hours. Additionally, your documentation indicates that if you do return to duty, you could not work under my supervision.
>
> You will remain on enforced leave until you are able to furnish medical documentation

---

[7]Since corporate defendants act only through authorized agents, in a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression and acted within the scope of his or her agency when taking the action. *See Goldsmith*, 996 F.2d at 1162 (general agency principles govern the circumstances in which a principal will be held liable for the acts of its agents under Title VII). *Raney*, 120 F.3d at 1197.

5

demonstrating to the satisfaction of management that you are able to perform the duties of your position.

Thereafter, despite giving Butler an apparent clean bill of health, Dr. Lopez-Brignoni made Butler's return to work conditional: "As stated before, he (Butler) should not work under the supervision of Sergio Fernandez, at least for the time being." This restriction was unsatisfactory to the Defendant. Indeed, by letter dated May 27, 1997, Robert Dillon, Senior Manager, Distribution Operations, USPS, advised Butler that, after full consideration of his responses, his "placement on enforced leave is for such cause as to promote the efficiency of the service." To do otherwise would amount to allowing an individual employee to dictate the terms of his own employment.

### Pretext (Discrimination and Retaliation)
(EEOC Case, #1-H-333-0018-97)

In his Motion, the Defendant submitted substantial evidence demonstrating legitimate non-discriminatory reasons for the employment actions taken. As noted above, the Defendant developed legitimate concern regarding Butler's ability to perform the duties of his position and would not tolerate an individual employee's dictation to management of the terms of that individual employee's employment.

> "If the defendant articulates one or more such reasons, the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision'." (Quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). If the plaintiff fails to proffer sufficient evidence to create a genuine issue of material fact as to whether each of the defendant's proffered reasons is pretextual, the defendant is entitled to summary judgment.

*Wascura v. City of South Miami*, 257 F.3d 1238, 1243 (11th Cir. 2001). *Reeves v. Saunderson Plumbing*, 530 U.S. 133, 142 S.Ct. 2097 (2000), clearly mandates a case-by-case approach, with a district court examining the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. *Williams v. NYC Department of Sanitation*, 2001 WL 1154627, 19 (S.D.N.Y.) citing *Reeves*, 530 U.S. at 146-48, 142 S.Ct. at 2108-09.

### No Probative Evidence Of Pretext

Butler has submitted no probative evidence of pretext to rebut Defendant's legitimate non-discriminatory and non-retaliatory reasons for the employment actions taken.

> [B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present "significant probative" evidence on the issue to avoid summary judgment. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (citations omitted).
>> Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions. *Isenbergh v.*

6

>  *Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 443-44 (11th Cir. 1996)(quoting *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988))(quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir. 1987)).

*Wavde v. Digital Equipment Corporation*, 994 F.Supp. 1433, 1438 (S.D. Florida 1997).[8]

> Therefore, in determining whether summary judgment is appropriate, the court should consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Hinson* [v. *Clinch County Bd. of Educ.*], 231 F.3d [821,] at 831 [(11th Cir. 2000)].

*Boyce v. Belden*, 2002 WL 171697, 7 (M.D.Ga.).

Because Plaintiff has failed to rebut the Defendant's uncontroverted evidence showing that Plaintiff cannot establish a prima facie case of hostile work environment (based on race, national origin or anything else), and because he has failed to rebut the Defendant's uncontroverted evidence showing legitimate non-discriminatory and non-retaliatory reasons for the employment actions taken (or to prove that wrongful discrimination and/or retaliation were the real reason), summary judgment should be granted.

### Retaliation
(EEOC Case, #1-H-333-0036-97)

Regarding Watson's LOW, Butler cannot establish a prima facie case of retaliation. Indeed, in his Response, Butler concedes that the presence of the abandoned LOW in Butler's OPF had no material impact on Plaintiff's rank, compensation, terms, conditions, benefits or privileges of employment, and did not deprive him of any employment opportunities, or adversely affect his status as an employee.

Moreover, and as detailed above, since Butler cannot establish that he publically participated in protected activity until after the allegedly adverse action was taken against him, and because his supervisors were unaware of his alleged opposition to discriminatory practices prior to June 6, 1997, he cannot establish a prima facie case of wrongful retaliation. Accordingly, the Defendant is entitled to summary judgment on Plaintiff's retaliation claim contained in paragraph 8 of his Second Amended Complaint.

---

[8] "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993). "[A] plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [protected status] was a determinative factor in the adverse employment decision. *Rothmeier v. Investment Advisors, Inc.*, 85 F.3d 1328, 1336-37 (8th Cir. 1996). "Unsubstantiated and conclusory allegations are insufficient to support an inference of pretext," and "conclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment." *Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998). *Katheriner v. Nordyne, Inc.*, 2001 WL 1555883 (E.D.Mo. 2001).

7

### Retaliation
(EEOC Case, #1-H-333-0011-98)

In his Response, Butler concedes that "he was ineligible for the Economic Value Added Credit" but argues that such ineligibility was "caused by defendant failing to return plaintiff to work for several months despite the fact that he had been cleared by his doctors and the defendant's own medical unit."[9] Still, Butler ignores the fact that there is no evidence showing that any of his supervisors were actually aware of any protected expression at the time the pertinent adverse employment action was taken. Accordingly, he has failed to establish a prima facie case of wrongful retaliation.

### No Probative Evidence Of Pretext

Butler has submitted no probative evidence of pretext to rebut Defendant's legitimate non-discriminatory reasons for the employment actions taken. Because Butler has failed to proffer sufficient evidence to create a genuine issue of material fact as to whether the Defendant's proffered reasons are pretextual, the Defendant is entitled to summary judgment.

### Protected Class Discrimination (Disparate Treatment) and Retaliation
(EEOC Case, #1-H-333-0047-99)

As detailed in Defendant's Motion, because Butler did not raise the allegations of discrimination and retaliation in a formal Administrative Complaint filed with the EEOC, he failed to exhaust his administrative remedies regarding these claims. In his Response, Butler simply asserts that he "believes that he did file a formal charge of discrimination as it pertains to Charge No.: 1-H-333-0047-99 (See plaintiff's affidavit)." Response, Page 18. As an attachment to his Affidavit, Butler includes what appears to be an undated draft EEO Complaint of Discrimination in the Postal Service under Case #1-H-333-0047-99. However, as detailed in the Defendant's Motion, there is no evidence that any such draft was ever filed with EEOC. Accordingly, the District Court lacks subject matter jurisdiction regarding Butler's claims of discrimination and retaliation stemming from EEOC Case #1-H-333-0047-99.

> The starting point for determining the permissible scope of a judicial complaint is the administrative charge and investigation. The judicial complaint is limited to the scope of the administrative investigation which could reasonable be expected to grow out of the charge of discrimination. *Evans*

---

[9]Ironically, Butler claims to have been cleared to return to work at the same time he suggests that his health actually deteriorated:

> In October, 1997, plaintiff's mental state plummeted dramatically from March, 1997. Plaintiff's life was in a downward spiral and had uncontrollable feeling of hopelessness and despair which totally consumed him. Plaintiff found it difficult to get out of bed. plaintiff did not even take care of his personal hygiene. Plaintiff's wife had taken over the financial matters and wrote the checks and paid the bills because he did not have the awareness to do so. Plaintiff was diagnosed as suicidal and was under significant doses of medication such as Prozac and Klonopin. The drugs impacted his ability to think clearly and he was unable to focus. (See Exhibit "A") (Butler's Response, Page 6)

> *v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983); *Eastland v. Tennessee Valley Authority*, 717 F.2d 1066, 1067 (11th Cir. 1983), *cert. denied sub nom. James v. Tennessee Valley Authority*, 465 U.S. 1066, 104 S.Ct. 1415, 79 L.Ed.2d 741 (1984). *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985) This "grows out of" test is sometimes referred to as the "like and related" rule:
>> In *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970), this court set forth what has been termed the "like or related" rule or "reasonable expectation" test which defines the scope or degree to which the discrimination alleged in a Title VII plaintiff's complaint can vary from that charged in the EEOC complaint and that investigated by the [Equal Employment Opportunity] Commission. In *Sanchez*, we held "that the allegations in a judicial complaint filed pursuant to Title VII 'may encompass any kind of discrimination like or related to the allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission.'" *Id. at 466, quoting King v. Georgia Power Co.*, 295 F.Supp. 943, 947 (N.D.Ga. 1968). The court further stated that "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonable be expected to grow out of the charge of discrimination." *Id.*
> *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)

*Williamson v. International Paper company*, 85 F.Supp.2d 1184, 1195-96 (S.D. Ala. 1999).

In his Response, Butler suggests that the "EEOC charge filed in February, 1998" (on February 4, 1998, Butler filed EEOC, Case, #1-H-333-0011-98, alleging that the USPS had wrongfully discriminated and retaliated against him based upon his being deemed ineligible to receive the EVA credit for USPS fiscal year 1997) was "closely related" to the allegations contained in EEOC Case, #1-H-333-0047-99 (which was based upon Butler's failure to perform supervisory duties in a satisfactory manner and failure to follow instructions concerning proper staffing of operations under the direct supervision of Rosie Carlies). Butler infers that EEOC Case, #1-H-333-0047-99 "reflects that exact same basis (of) retaliation claiming the exact disparate treatment to wit harassment which has been outlined with specificity above."

However, the only real similarities between the two complaints are that, as noted above, Plaintiff cannot show *any* harassment based upon any protected class (i.e., race, color, religion, sex, age, or national origin) or that any such harassment affected his work performance and that there is no evidence showing that any of Butler's supervisors were actually aware of any protected expression at the time the pertinent adverse employment action was taken.

No Probative Evidence Of Pretext

Assuming for the sake of argument that the failure to exhaust argument does not bar Plaintiff from now litigating the matters raised in administrative EEOC Case, #1-H-333-0047-99, Butler has submitted no probative evidence of pretext to rebut Defendant's legitimate non-discriminatory and non-retaliatory reasons for the employment actions taken.

As detailed in the Defendant's Motion, on July 18, 1998, Rosie Carlies, MDO, initiated a Request for Disciplinary action against Butler based upon the circumstances surrounding Butler's performance as SDO in Postal Operation 208 on July 15, 1998. Indeed, on August 21, 1998, Carlies issued a LOW charging Butler with failure to perform supervisory duties in a satisfactory manner and failure to follow instructions

concerning proper staffing of operations (specifically, on July 15, 1998, Butler had eleven mail handlers (three more than necessary) on Operation 208). On November 10, 1998, Robert Dillon, Acting Plant Manager, found that the August 21, 1998 LOW had been issued for "just cause." Thereafter, Butler appealed the issuance of the LOW to the Manager of Human Resources, Southeast Area Office. On April 12, 1999, Karen A. Borowski, Manager of Human Resources, Southeast Area Office, denied Butler's appeal finding that there was "sufficient evidence to warrant the action taken." Because Butler has failed to rebut the Defendant's uncontroverted evidence showing legitimate non-discriminatory and non-retaliatory reasons for the employment actions taken (or to prove that wrongful discrimination and/or retaliation were the real reason), summary judgment should be granted to the Defendant.

**Retaliation**
(EEOC Case, #1-H-333-0012-00)
No Probative Evidence Of Pretext

Again, Butler has submitted no probative evidence of pretext to rebut Defendant's legitimate non-discriminatory and non-retaliatory reasons for the employment actions taken. As detailed in the Defendant's Motion, on November 18, 1999, MDO Carlies initiated a Request for Disciplinary action against Butler based upon the circumstances surrounding Butler's performance as SDO of the small parcel bundle sorter (SPBS) on Tour Three on November 3, 1999, when Butler was sent home for being non-responsive and insubordinate. On November 29, 1999, based upon the events of November 3, 1999, Carlies issued a proposed LOW in Lieu of Time Off Suspension to Butler charging him with "Unacceptable conduct due to your failure to respond and comply with directives given you." Thereafter, Butler appealed the issuance of the proposed November 29, 1999 LOW to the Plant Manager, Saundra D. Richardson. On January 18, 2000, Richardson issued a Letter of Decision finding that "the charge as outlined in the proposed letter is fully supported by the evidence of record, and warrant(s) the action." Again, because Butler has failed to rebut the Defendant's uncontroverted evidence showing legitimate non-discriminatory and non-retaliatory reasons for the employment actions taken (or to prove that wrongful discrimination and/or retaliation were the real reason), summary judgment should be granted.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By _____
CHARLES S. WHITE
Assistant- United States Attorney
Fla. Bar No. 394981
99 N.E. 4th Street, Suite 322
Miami, Florida 33131
Tel. (305) 961-9286
Fax. (305) 530-7139

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was furnished by U.S. Mail on April 23, 2003 to Stewart Lee Karlin, Esq., Attorney for Plaintiff, 315 S.E. 7th Street, Suite 200, Ft. Lauderdale, Florida 33301.

By _____
CHARLES S. WHITE
Assistant United States Attorney