UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6193-CIV-LENARD/SIMONTON

THOMAS BUTLER,

     Plaintiff,

v.                                                                                              CONSENT CASE

JOHN POTTER,
POSTMASTER GENERAL,

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Presently pending before the Court is Defendant's Motion for Summary Judgment (DE # 74). Pursuant to the consent of the parties, this case is referred to the undersigned Magistrate Judge for final disposition (DE # 61). The motion is fully briefed (DE ## 96, 102), and the undersigned has heard argument on the motion.[1] For the reasons stated below, Defendant's Motion for Summary Judgment is granted.

### I. Introduction

Plaintiff Thomas Butler (hereafter "Butler"), is proceeding under his Second Amended Complaint against John Potter in his capacity as the Postmaster General of the United States Postal Service (hereafter referred to as "Defendant"). In his Second Amended Complaint, Butler alleges three causes of action. In Count I, Butler alleges that he has been deprived of equal employment opportunities by reason of retaliation in violation of the Civil Rights Act of 1964 (hereafter Title VII) (DE # 67 at ¶15). In Count III, Butler alleges that he has been deprived of equal employment opportunities due to race and retaliation, in violation of

---

[1] At the hearing, the undersigned granted Defendant's oral motion to file a supplemental memorandum (DE # 106). Defendant never filed a supplemental memorandum.



Title VII (DE # 67 at ¶17). In Count II, Butler alleges that he has been deprived of equal employment opportunities by reason of retaliation pursuant to the Age Discrimination and Employment Act of 1967 (ADEA) (DE # 67 at ¶16).[2]

Butler alleges that he has commenced this action under Agency Complaints 1-H-3330036-98 (hereafter 36-98) (EEOC No. 99-9488X) and 1-H-3330011-98 (hereafter 11-98) (EEOC No. 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X), upon which notice of right to sue letters were issued, and on Complaints 1-H-333-0018-97 (hereafter 18-97), 1-H-333-0047-99 (hereafter 47-99) and 1-H-333-0012-00 (hereafter 12-00), which have been pending for over six months without a final agency determination (DE # 67 at ¶2).

Butler alleges that he is an American Caucasian male who is employed by the United States Postal Service (DE # 67 at ¶¶3, 6). Butler states that he was initially employed as a mail handler in 1987 and, in 1994, he was promoted to Supervisor, Distribution of Operations (DE # 67 at ¶6). In 1997, he filed complaints with the United States Postal Service EEO office. Butler alleges that from February 1997 through June 1997, he was subjected to a "continuous pattern of conduct of retaliation," which has substantially altered the terms, conditions and privileges of his employment and which has resulted in adverse employment actions and the creation of a hostile work environment. The retaliatory actions which Butler alleges occurred during this period include: 1) not allowing him to return to work for several months after he took a leave of absence for medical reasons, despite the fact that he had been cleared by his doctors and by the medical unit of Defendant to return to work (18-97);

---

[2] Butler does not mention any ADEA claims in his response to the instant motion and appears to have abandoned them. In any event, Butler has not provided any competent evidence of age discrimination, merely his own belief that it was occurring, which is insufficient to create an inference of discrimination. *Coutu v. Martin County Bd. Of County Comm'rs*, 47 F.3d 1068, 1073-74 (11th Cir. 1995).

2) placing him on enforced leave despite the fact that he had been cleared to return to work; 3) closely scrutinizing his work performance and conduct (18-97); 4) harassing him (18-97); 5) humiliating and berating him in front of his coworkers (18-97); 6) making inflammatory and insensitive comments and calling him names (18-97); 7) deliberately scheduling a meeting during his lunch hour (18-97); and 8) changing his work schedule (18-97) (DE # 67 at ¶7).

Butler further alleges that on July 25, 1997, he did not receive a biased and unfounded warning which was placed in his personnel file, and as a result of this, he filed a formal complaint of discrimination (36-97) (DE # 67 at ¶8).

Butler also alleges that as a direct consequence of Defendant not allowing him to return to work, on November 4, 1997, Butler was not eligible for the Economic Value Added Credit, and Butler had to take out a loan to pay his bills. As a result of this, Butler filed another formal complaint of discrimination (11-98) (DE # 67 at ¶9).

Butler further alleges that on April 18, 1999, he was issued another unfounded warning regarding staffing, and that he was subjected to disparate treatment since another employee who had not participated in protected activity was not disciplined at all for the same alleged infraction. Butler alleges that he filed an informal complaint of discrimination and states that he believes he filed a formal charge of discrimination with the EEOC which has been pending for over six months (47-99).

Finally, Butler alleges that on November 3, 1999, he was forced to leave the building, despite the fact that there was no basis for the action and that he was also subjected to verbal abuse by MDO Carlies. Butler states that this was direct retaliation for filing a complaint of discrimination in April 1999 (12-00).

3

Butler asserts that he has been subjected to an ongoing and continuous pattern of discrimination and a hostile work environment due to race, national origin and retaliation (DE # 67 at ¶12). Butler further asserts that as a result of Defendant's actions and the hostile work environment, he was taken to the emergency room for heart palpitations and was diagnosed with depression and anxiety for the first time in his life (DE # 67 at ¶¶13, 14).

Butler seeks: 1) a declaration that Defendant's actions were in violation of Title VII and the ADEA; 2) an injunction requiring Defendant to reassign him to the position he would have been in but for the discrimination; 3) back pay and lost benefits; 4) compensation for pain and suffering; 5) attorney's fees, costs and disbursements; and 6) any other relief that is just and equitable (DE # 67).

Defendant has filed an Answer to the Second Amended Complaint (DE # 68). This motion followed.

II. **The Instant Motion**

A. **Defendant's Position**

In the instant motion, Defendant contends that it is entitled to summary judgment against Butler. Defendant contends that the settlement agreement between Butler and Defendant bars Butler from litigating the matters contained in Complaint Number 18-97 (DE # 74 at 7-10). Defendant also notes that Butler's contemporaneous actions shows that Butler, who was represented by counsel before the MSPB, was capable of understanding the nature and consequences of his acts in general and the character of the settlement agreement in particular. Defendant further argues that under Florida law, a contract made by one who is not mentally competent to contract is not void, but is voidable, and that, under Florida law, Butler's subsequent acceptance of the benefits of the agreement, demonstrates

4

his ratification of the settlement agreement (DE # 102 at 2). Defendant also states that on the merits, Butler cannot show any harassment based upon any protected class (DE # 102 at 2-3). Defendant also contends that Butler cannot make out a prima facie case of retaliation because he cannot show that he publically engaged in statutorily protected activity before June 6, 1997, when he filed Complaint 18-97 with the EEOC, and also stated that he no longer requested anonymity (DE # 102 at 3-4). Defendant asserts that Butler's contention in his response, that Fernandez was aware of the EEOC complaint when he recommended placing Butler on enforced leave, should not be considered because Butler has not provided any competent evidence that Fernandez was aware of the EEOC Complaint before June 6, 1997 (DE # 102 at 4-5). Finally, Defendant contends that it had legitimate non-discriminatory and non-retaliatory reasons for placing Butler on enforced leave (DE # 102 at 5-6), and that Butler has submitted no probative evidence of pretext to rebut Defendant's legitimate reason for placing Butler on enforced leave (DE # 102 at 6-7).

Defendant also contends that Butler has failed to make out a prima facie case of retaliation regarding Complaint Number 36-97 because 1) the letter of warning at issue was dated February 27, 1997, more than three months before Butler publically engaged in statutorily protected activity on June 6, 1997; and 2) Defendant abandoned the letter of warning; and 3) the letter of warning did not constitute an adverse employment action (DE # 74 at 10-12; DE # 102 at 7).

Defendant then asserts that Butler has failed to make out a prima facie case of retaliation regarding Complaint Number 11-98 because 1) the record contains no evidence that the plant manager who allegedly retaliated against Butler on November 4, 1997 was aware that Butler had previously engaged in statutorily protected activity and 2) Defendant

5

had a legitimate and non-discriminatory reason for the challenged employment decision (DE # 74 at 12-13; DE # 102 at 8).

Defendant further contends that 1) this Court has no subject matter jurisdiction over Complaint Number 47-99 because Butler failed to exhaust his administrative remedies by filing a formal Complaint and 2) in any event, Defendant had legitimate, non-discriminatory and non-retaliatory reasons for the challenged employment decision (DE # 74 at 13-16; DE # 102 at 8-10). Defendant also contends that there are insufficient similarities between Complaints 11-98 and 47-99 to allow the Court to consider the factual allegations made in Complaint 47-99 despite the failure to exhaust administrative remedies (DE # 102 at 9).

Finally, Defendant contends that as to Complaint 12-00, Defendant had a legitimate, non-discriminatory and non-retaliatory reason for the challenged employment decision (DE # 74 at 16-17; DE # 102 at 10).

B. Butler's Position

Butler responds that, contrary to Defendant's position, the acts complained of cannot be isolated, and that taken together, the acts form a continuous, ongoing pattern of retaliatory conduct against him (DE # 97 at 1-3).

Butler further contends that he did not knowingly waive his rights by signing the settlement agreement under Complaint Number 18-97 because he was suffering from severe depression, was unable to focus, was suicidal and was taking a significant amount of medication when he signed the agreement. Moreover, Butler contends that while he was represented by counsel when he signed the agreement, Butler never met his attorney. Butler also contends there was no consideration, and, thus, the settlement agreement was invalid. Butler further contends that the settlement agreement was ambiguous as to what

proceedings it applied to (DE # 96 at 15-16). Butler then alleges that the settlement agreement settled only the issue of enforced leave raised in his proceeding before the Merit Systems Protection Board, and did not resolve Complaint Number 18-97 (DE # 96 at 16-17).

Butler then argues that this Court has jurisdiction to consider the allegations in Complaint Number 47-99, even if he never filed a formal complaint, because the conduct alleged in that Complaint is closely related to the conduct alleged in Complaint 12-00 (DE # 96 at 17-18). Butler finally contends that disputed issues of fact remain concerning Complaints 18-97, 36-97, 11-98, 47-99, and 12-00 (DE # 96 at 18-20).

IV. <u>The Relevant Legal Standards</u>

A. <u>The Standard for Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Summary judgment is an integral part of the federal rules as a whole, which are designed to secure a just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). In assessing whether the movant has met its burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion and all

reasonable doubts about the facts should be resolved in favor of the non-movant. *See Denney v. City of Albany*, 247 F.3d at 1181.

The moving party has the burden to establish the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d at 646. Once the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, the burden shifts to the non-movant to come forward with a response setting forth "specific facts" showing that there is a genuine issue for trial. Thus, the party opposing summary judgment may not rest upon the mere allegations or denials of the pleadings, but must present sufficient evidence favoring the non-moving party for a jury to return a verdict in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249.

Conclusory allegations will not suffice to create a genuine issue of material facts. *See Leigh v. Warner Bros Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). There must be more than a scintilla of evidence; there must be "substantial conflict in evidence to support a jury question." *Tidewell v. Carter Prods.*, 135 F.3d 1422, 1425 (11th Cir. 1998), *quoting Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods*, 121 F.3d at 646; *accord Denney v. City of Albany*, 247 F.3d at 1181. "At the summary judgment stage, [the plaintiff] bears the burden of coming forward with sufficient evidence to create genuine issues of material fact regarding each of th[e] elements [of the prima facie case]." *Harris v. H&W Contracting Co.*, 102 F.3d 516, 523 (11th Cir. 1996). A plaintiff's mere belief, speculation, or conclusion that he was subject to discrimination does not create an inference of discrimination or satisfy

his burden. *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995).

The determination of whether there is a genuine issue of material fact is more complicated where a plaintiff seeks to demonstrate such an issue by providing sworn testimony which contradicts previously given testimony. Although, in general, testimony or an affidavit may not be disregarded merely because it conflicts to some degree with an earlier deposition, *Rollins v. TechSouth, Inc.*, 833 F.2d 1525 (11th Cir. 1987); *Kennet-Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir. 1980); "a party cannot give 'clear answers to unambiguous questions' in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction. *Van T. Junkins and Assoc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)." *Rollins*, 833 F.2d at 1530. This rule is widely recognized and its rationale was succinctly explained by the Court of Appeals for the District of Columbia Circuit in *Pyramid Securities Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir.), *cert. denied*, 502 U.S. 822 (1991):

> Courts have long held that a party may not create a material issue of fact simply by contradicting its prior sworn testimony. *See, e.g., Rohrbough v. Wyeth Lab., Inc.*, 916 F.2d 970, 975-76 (4th Cir. 1990); *Farrell v. Automobile Club of Michigan*, 870 F.2d 1129, 131-32 (6th Cir. 1989); *Adelman-Tremblay v. Jewel Cos., Inc.*, 859 F.2d 517, 520-21 (7th Cir. 1988); *Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703, 706 (3rd Cir. 1988) (citing cases); *Van T. Junkins and Assoc. v. United States Industries*, 736 F.2d 656, 657 (11th Cir. 1984); *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975); *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2nd Cir. 1969); *Kizas v. Webster*, 492 F. Supp. 1135, 1147 n. 42 (D.D.C.), *rev'd on other grounds*, 707 F.2d 524 (D.C. Cir. 1983). "[T]he objectives of summary judgment would be seriously impaired if the district court were not free to disregard [the later testimony." *Martin*, 851 F.2d at 706. ... The upshot is that the prior sworn statement will receive controlling weight unless the

shifting party can offer persuasive reasons for believing the supposed correction. *E.g., Farrell*, 870 F.2d at 1131-32.

*Accord McCormick v. City of Ft. Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003).

Likewise, the United States Supreme Court has recognized that the lower courts "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement." *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806 (1999). In *Cleveland,* the Supreme Court addressed a situation where the plaintiff's position involved of a conflict concerning a legal conclusion, i.e., whether a person who claimed total disability for purposes of receiving Social Security benefits, which required a determination that she could not perform any substantial gainful work, could also maintain an action against her employer for violation of the Americans with Disabilities Act which required a determination that she could perform the essential functions of her job. The Supreme Court analogized the circumstances present in *Cleveland* with the circumstances presented in cases involving factual contradictions, although the Court included the caveat that it did "not necessarily endorse these cases, but [left] the law as we found it." 526 U.S. at 807. The Supreme Court held that, to defeat summary judgment, "the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim ... sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless" establish the elements of her claim. *Cleveland*, 526 U.S. at 807.

B. <u>Standard of Proof in a Title VII Case</u>

Title VII prohibits discrimination in hiring, discharge, and promotion in employment on the basis of race, sex, or national origin. The Supreme Court has held that Title VII is

10

intended to eradicate not only economic and tangible discrimination, but the entire spectrum of disparate treatment, which included requiring people to work in a racially hostile or abusive environment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 64 (1986). However, not all employment practices are actionable under Title VII. *See Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985) ("the employment discrimination laws...cannot be transformed into a palliative for every workplace grievance, real or imagined..."), *cert. denied*, 475 U.S. 1082 (1986). Thus, Title VII is not a shield against harsh treatment in the workplace, and does not require the employer to have good cause for its decisions. *Nix v. WLCY Radio*, 738 F.2d 1181, 1187 (11th Cir. 1984).

In an employment discrimination case, the plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against the plaintiff. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Because direct evidence of discrimination can be difficult to produce, the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), created a framework on the burden of production and order of presentation of proof to analyze circumstantial evidence of discrimination. Where, as here, there is no direct evidence of racial discrimination, "the plaintiff must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion." *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1441 (11th Cir. 1998). Under *McDonnell Douglas*, if the plaintiff creates an inference of discrimination by establishing a prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action, and if it does, the defendant is entitled to summary judgment unless the plaintiff persuades the trier of fact that the defendant intentionally discriminated against the employee despite the

defendant's proffered lawful reason for its employment decision. *Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998), *cert. denied*, 528 U.S. 809 (1999). To satisfy this burden, the defendant need only produce evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. at 257.

To prevail on a hostile environment claim, a plaintiff must show that the conduct he complains of "altered the condition of the workplace, creating an objectively abusive and hostile atmosphere." *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995). Specifically, he must prove that: 1) he belongs to a protected group; 2) he was subject to "unwelcome" harassment; 3) the harassment was based on race; 4) the harassment affected a "term, condition, or privilege" of employment in that it "was sufficiently severe and pervasive to alter the condition of his employment and create an abusive working environment", and 5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Prado v. L. Luria & Son, Inc.*, 975 F.Supp. 1349, 1355 (S.D. Fla. 1997).

Title VII does not address generally offensive or unpleasant conduct. *Thevenin v. Baptist Health Systems of South Florida*, 931 F.Supp. 856, 859 (S.D. Fla. 1996). Title VII does not provide a cause of action for employees who are exposed to harassment that has no reference to race, sex or national origin. *Brown v. Brown and Williamson Tobacco Corp.*, 1996 WL 325890 at *3 (N.D. Fla. Apr. 11, 1996), *aff'd*, 111 F.3d 896 (11th Cir. 1997).

To determine whether a plaintiff's work environment was hostile or abusive, this Court should consider: 1) the frequency of the alleged discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct was physically threatening or humiliating,

12

or a mere offensive utterance; and 4) whether the conduct unreasonably interfered with Plaintiff's work performance. *Prado*, 975 F.Supp. at 1355. Isolated incidents of offensive acts, however, are not sufficient to establish a hostile work environment. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

### C. Standard of Proof in a Retaliation Case

To establish a Title VII claim for retaliation, a plaintiff must show that: 1) he engaged in a statutorily protected activity; 2) an adverse employment action occurred; and 3) the adverse action was causally related to his protected activities. *See Little v. United Technologies*, 103 F.3d 956 (11th Cir. 1997); *Goldsmith v. City of Atmora*, 996 F.2d 1155, 1163 (11th Cir. 1993). To satisfy the causal connection requirement, a plaintiff must establish that his supervisor was actually aware of the protected expression at the time he allegedly took adverse employment action against the plaintiff. *Goldsmith*, 996 F.2d at 1163. Once a plaintiff establishes a prima facie case, a defendant must proffer a legitimate, non-discriminatory reason for the adverse employment action. *EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993). If a defendant offers legitimate reasons for the employment action, a plaintiff must then demonstrate that a defendant's proffered explanation was a pretext for retaliation. *Meeks*, 15 F.3d at 1021; *Goldsmith*, 996 F.2d at 1163.

### V. Analysis

### A. Complaint Number 18-97

Defendant is entitled to summary judgment on Complaint Number 18-97, as Butler entered into a settlement agreement which prohibited him from further litigating this claim.

1. <u>Background</u>

On September 26, 1994, Butler, a Supervisor, Distribution Operations (SDO) with the United States Postal Service, was assigned to work at the South Florida Mail Processing Center (SFMPC), where he was supervised by Manager, Distribution Operations (MDO), Sergio Fernandez (DE # 82, 3/7/03 Declaration of Laura Taylor-Laury at ¶¶12-13, and attachments 5 and 6). Butler was a Level 16 employee and had begun working for the Postal Service on August 3, 1987 (DE # 82, at ¶¶10-12 and attachments 1, 4)

On February 23, 1997, Butler informed his supervisors that he wanted to be considered for a transfer to the position of SDO, Level 16 on Tour 3 (DE # 82, at ¶14, and attachment 7). Butler was then working on Tour 1, from roughly 11:00 p.m. to 7:00 a.m. (DE #83, February 6, 2003 Butler Deposition, at 24-26). Tour 3 ran roughly from 3:00 p.m. to 11:00 p.m. (DE # 83 at 25-26).

On March 5, 1997, an incident occurred between Butler and his supervisor, MDO Fernandez. Butler stated that Fernandez harassed him on that date for no reason and that Fernandez had been harassing him and humiliating him in front of employees and peers and creating a stressed environment for Butler since Butler first came to the SFMPC. Butler specified threats which he claimed Fernandez had made in April 1996, and previously in February 1997. Butler stated that on March 5, 1997, he went home stressed out (DE # 82 at ¶15, and attachment 8).

On March 20, 1997, Butler initiated informal proceedings with the EEOC when he reported the foregoing incidents in Precomplaint Counseling. Butler asserted that he had been subjected to wrongful discrimination based on his color, religion, age, race, national

origin and sex.  Butler requested anonymity regarding the informal counseling of the EEO complaint processing (DE # 82 at ¶¶16-17, and attachments 8-9).

In a letter dated April 14, 1997, Evelyn Lopez-Brignoni, M.D., advised the SFMPC plant manager that she had been treating Butler since March 10, 1997, when he was severely anxious and depressed as a direct result of ongoing problems with his supervisor, Sergio Fernandez.  The doctor opined that Butler was ready to return to work on a part-time basis (20 hrs.), gradually increasing his time over the following two weeks until he can work full time, but also asserted that it was imperative that Butler not be supervised by Fernandez, which would aggravate the recovering problem (DE # 82 at ¶18, and attachment 10).  In response, in a letter dated May 2, 1997, MDO Fernandez advised Dr. Lopez-Brignoni that he intended to place Butler on enforced leave based upon her diagnosis that Butler could only work part-time and that Butler could not work under Fernandez's supervision, and that Butler would remain on enforced leave until he could furnish medical documentation demonstrating to the satisfaction of management that he could perform his duties (DE # 82 at ¶19, and attachment 11).  In a letter dated May 8, 1997, Dr. Lopez-Brignoni advised the SFMPC plant manager that Butler was cleared to return to full time work on May 12, 1997, but he should not be supervised by Fernandez, at least for the time being (DE # 82 at ¶20, and attachment 12).

In a letter dated May 13, 1997 and in a conversation on May 15, 1997, Butler advised Robert Dillon, Senior MDO, that he opposed the proposal to place him on enforced leave (DE # 82 at ¶21, and attachment 17).  Subsequently, in a letter dated May 27, 1997, Senior MDO Dillon advised Butler that after a full consideration of Butler's responses, Butler's placement

on enforced leave was for such cause as to promote the efficiency of the service, and that the action would be effective on June 6, 1997 (DE # 82 at ¶22, and attachment 17).

On June 6, 1997, Butler filed Complaint 18-97 with the Postal Service EEO. (DE # 82 at ¶23, and attachment 14). In Complaint 18-97, Butler alleged that on March 5, 1997, he had been harassed by his supervisor, Sergio Fernandez, and that Butler had subsequently been placed on enforced leave. Butler alleged both Title VII discrimination based on race, color, religion, sex, and national origin and age discrimination (DE # 82 at ¶¶26-27, and attachment 17).

Also on June 6, 1997, Butler filed an appeal with the MSPB, Case No. AT-0752-97-I-1, alleging that Defendant had improperly placed him on enforced leave and refused to accept his medical documentation (DE # 82 at ¶24, and attachments 15-16).

On October 7, 1997, the proceedings before the Merit Systems Protection Board were resolved pursuant to a Settlement Agreement. The settlement agreement was signed on October 7, 1997 by both Butler's counsel and the representative of the Postal Service, and was signed by Butler on October 15, 1997. Pursuant to the settlement, Butler was reassigned to the position of SDO, with variable hours on Tour 3, and days off of Thursday and Friday. Butler was to report to work one week after the signing of the agreement. The Postal Service agreed to purge from Butler's Official Personnel File (OPF), any reference to the Notice of Proposed Placement on Enforced Leave dated May 2, 1997 and the Letter of Decision--Placement on Enforced Leave dated May 27, 1997. There were no provisions for back pay and the parties agreed that no attorney's fees and costs would be paid (DE # 82 at ¶31, and attachment 20). The Settlement Agreement also stated that the agreement was in full and complete settlement of the MSPB action, *administrative EEO complaints or*

16

*appeals relative to the issues referenced in the complaint, in this or any forum, filed by Butler relating to any matters that occurred prior to the execution of the settlement agreement* (emphasis added). Butler agreed to voluntarily withdraw any outstanding administrative complaint or appeal, including the instant MSPB case and EEOC of any issues related to the appeal. Butler also agreed not to litigate or relitigate in any forum, judicial or administrative, any claims arising from the actions involved in this appeal. Finally, the agreement states that:

> [Butler] has read and fully understands the provisions of this settlement and fully agrees to its contents and provisions. [Butler] is signing this agreement of his own free will and has not been coerced or forced into signing this settlement. He has not been promised anything above and beyond what is contained in the above settlement agreement.

(DE # 82 at ¶31, and attachment 20).

The undersigned finds that the Settlement Agreement resolved not only the MSPB action, but also the related EEOC Complaint 18-97. The Settlement Agreement states that it also resolved all administrative EEO complaints or appeals relative to the issues referenced in the complaint, in the MSPB or in any forum. In both the MSPB action and Complaint 18-97, Butler alleged that Defendant had improperly placed him on enforced leave. Therefore, under the Settlement Agreement, Butler is barred from relitigating Complaint 18-97 in this Court. Thus, the undersigned rejects Butler's argument that the settlement agreement settled only the issue of enforced leave raised in his proceeding before the Merit Systems Protection Board, and did not resolve Complaint Number 18-97 because the settlement agreement was ambiguous as to what proceedings it applied to .[3]

---

[3] The undersigned notes, but does not rely on, the fact that the number 1-H-333-0018-97, is handwritten at the top of the Settlement Agreement (Attachment 20 to DE # 82).

The undersigned also rejects Butler's contention that the settlement agreement was invalid because of lack of consideration. Butler received consideration for the settlement in that he received the transfer he had requested in February 1997 (Attachment 7 to DE # 82), he was taken off enforced leave, and the Postal Service agreed to purge any reference to the Notice of Proposed Placement on Enforced Leave dated May 2, 1997 and the Letter of Decision--Placement on Enforced Leave dated May 27, 1997 from Butler's OPF.

Finally, the undersigned also strongly rejects Butler's contention that he did not knowingly waive his rights by signing the settlement agreement under Complaint Number 18-97 because while he was represented by counsel when he signed the agreement, Butler never met his attorney, and when Butler signed the agreement on October 15, 1997, he was suffering from severe depression, was unable to focus, was suicidal and was taking a significant amount of medication when he signed the agreement.

Initially, assuming for the sake of argument that Butler was incompetent to sign validly enter into the Settlement Agreement on October 15, 1997, the undersigned notes that Florida law holds that the Settlement Agreement would not be void, but only voidable. *See Palmer v. Palmer*, 479 So.2d 221 (Fla. 5th Dist. Ct. App. 1985). Florida law also recognizes that after the restoration of competency, Butler could have ratified the Settlement Agreement by accepting the benefits of the Settlement Agreement. Butler returned to work on October 25, 1997 on Tour 3 with variable hours and with Thursday and Friday as his off days. (Ex. C to DE # 94, Butler's April 16, 2003 Affidavit). By returning to work in conformance with the terms of the Settlement Agreement, Butler ratified the Settlement Agreement.

The undersigned also finds, in the alternative, that Butler may not use his April 16, 2003 affidavit and the April 15, 2003 affidavit of Dr. Lopez-Brignoni (Ex. A to DE # 100), to

allege that he was incompetent to knowingly and intelligently sign the Settlement Agreement on October 15, 1997. This position is inconsistent to the position of Butler and Dr. Lopez-Brignoni in the proceedings before the MSPB and Butler's allegations in Complaint 18-97 that Defendant improperly refused to allow Butler to return to work when Dr. Lopez-Brignoni had cleared Butler to return to work full-time as of May 12, 1997. Indeed, Butler returned to work ten days after he was allegedly incompetent to understand the Settlement Agreement. Moreover, on November 14, 1997, Dr. Lopez-Brignoni signed, under oath, and submitted to the Office of Workers' Compensation Programs of the U.S. Department of Labor a form which stated that the date of Butler's injury was March 5, 1997 and that Butler was able to resume regular work on May 8, 1997 (Ex. A to DE # 94, Butler's April 16, 2003 Affidavit). Finally, in his deposition in this case, Butler testified that 1) he signed the Settlement Agreement; 2) he read the settlement agreement before he signed it and talked to his lawyer before he signed it; and 3) the lawyer helped him understand the Settlement Agreement, he was satisfied with his lawyer's representation on the MSPB matter and that he did not believe that he had any questions which his lawyer did not answer (DE # 83 at 92-95). At his February 6, 2003 deposition, Butler did not answer that he was unable to understand the Settlement Agreement when he signed it due to severe depression and the effects of medication, yet in his April 16, 2003 Affidavit, Butler tried to create a material issue of fact as to his competency when he signed the Settlement Agreement. This is not permissible. Butler cannot give clear answers to unambiguous questions in his deposition and then raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction. *Van T. Junkins and Assoc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). Similarly, Dr. Lopez-Brignoni cannot contradict her November 14, 1997 submission under

19

oath that Butler could return to full time work as of May 12, 1997 with her April 15, 2003 affidavit stating that in October 1997, Butler was unable to focus due to overwhelming anxiety, panic attacks and major clinical depression, and that he was unable to appreciate the consequences of his decision to sign the Settlement Agreement due to his mental impairment at the time. Therefore, the undersigned will not consider the evidence provided by Butler that he was incompetent to sign the Settlement Agreement due to severe depression because it contradicts Butler's testimony at his deposition concerning his competency to sign the Settlement Agreement and the sworn statements of Butler and Dr. Lopez-Brignoni that Butler was medically able to return to full time work as of May 8, 1997, relating to the enforced leave issues litigated in the MSPB action and in Complaint 18-97.[4]

For the reasons stated above, Defendant is entitled to summary judgment on 18-97.[5]

B. Complaint Number 36-97

Defendant is entitled to summary judgment on Complaint Number 36-97, as Butler has failed to make out a prima facie case of either Title VII retaliation or Title VII discrimination because he has failed to show an adverse employment action.

On July 25, 1997, during the administrative litigation of Complaint Number 18-97, Butler received in discovery a letter of warning (hereafter LOW), drafted by MDO Jack Watson and dated February 27, 1997, which had never been served on Butler (DE # 82 at

---

[4] Similarly, Butler may also be judicially estopped from taking the inconsistent positions in the administrative actions that he was medically able to return to full time work on May 8, 1997, and in this case contend that he was so severely depressed in October 1997 that he was incompetent to sign the Settlement Agreement, ten days before he returned to work. See Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir. 2002).

[5] Due to the above findings, the undersigned need not reach the merits of Complaint 18-97.

¶28). By letter dated August 1, 1997, Butler advised SMDO Dillon that: 1) he had received a LOW that he had never seen; 2) he wished to appeal the LOW; 3) he believed the procedure to be inappropriate; 4) he believed the LOW to be retaliatory and discriminatory; and 5) he would be pursuing action through the EEO process (DE # 82 at ¶29 and attachment 18). Dillon responded that the LOW was in Butler's personnel file in error, that it had never been issued to Butler, it was untimely, it should not appear in any Postal Service Records and all copies of the LOW would be destroyed (DE # 82 at ¶30 and attachment 19).

On October 27,1997, Butler filed Complaint 36-97, contending that on July 25, 1997, he was given a copy of a LOW which he had never received, and that this was due to race, color, sex and age discrimination, as well as retaliation for prior EEO activity (DE # 82 at ¶¶33-35 and attachments 22-23).

Defendant is granted summary judgment as to Complaint 36-97. Butler has failed to make out a prima facie case of either Title VII retaliation or Title VII discrimination because he has not shown that the LOW was an adverse employment action. When Butler notified the Postal Service of the existence of the LOW, the Postal Service stated that the LOW was in Butler's personnel file in error; that it had never been issued to Butler; that it was untimely; that it should not appear in any Postal Service Records, and that all copies of the LOW would be destroyed.

In *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 760-61 (1998), a Title VII sex discrimination case, the Supreme Court defined an adverse employment action as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits -- an action which in most cases inflicts direct economic harm. In

21

*Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456-57 (11th Cir. 1998), the Eleventh Circuit held that Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions. *Id.* at 1456-57.

Defendant's removal of the LOW upon Butler's request and the destruction of all record of the LOW's existence require the conclusion that the LOW was not a adverse employment action. *See Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1242-43 (11th Cir. 2001) (where memo criticizing the plaintiff's job performance was removed from plaintiff's personnel file and there was no evidence that the memo affected the plaintiff's employment, the memo was not an adverse employment action); *Coney v. Dept. of Human Res.*, 787 F.Supp. 1434, 1442 (M.D. Ga. 1992) (non-threatening written reprimand, later removed from employees personnel file, found not actionable). Butler conceded that he did not suffer any negative employment action due to the LOW (DE # 83, Butler's February 6, 2003 deposition, at 86-87, 90), and concedes that the LOW was not an adverse employment action (DE # 96 at 19). Defendant is therefore entitled to summary judgment on this claim.

C. Complaint Number 11-98

Defendant is entitled to summary judgment on Complaint Number 11-98, as Defendant has shown a legitimate, non-discriminatory reason for the complained-of action, and Butler has failed to establish pretext.

During Defendant's fiscal year 1997, Defendant had an incentive program for employees called Economic Value Added (EVA). To be eligible to participate, an employee had to have absences fewer than 500 hours of combined sick leave and leave without pay or fewer than 600 hours of combined sick leave, annual leave and leave without pay (DE # 82 at ¶36). During Defendant's fiscal year 1997, Butler used 737 hours of sick leave and

eight hours of leave without pay (DE # 82 at ¶37 and attachment 24). Therefore, on November 4, 1997, Acting Plant Manager Keith Maynord advised Butler that he was not eligible for the EVA credit for Defendant's fiscal year 1997 (DE # 82 at ¶38 and attachment 25). On February 4, 1998, Butler filed Complaint 11-98, alleging that on November 4, 1997, Defendant had wrongfully excluded him from the EVA bonus due to lack of contribution, due to race, color religion, national origin, sex, age and retaliation discrimination. Butler stated that he advised Mr. Maynard that his exclusion was due to discriminatory practice of Sergio Fernandez, and Mr. Maynard responded that "he didn't know of my case and would get back to me." Butler further contended that the lack of contribution occurred because of the decision not to allow him to return to work after he took a medical leave, in spite of clearance from his doctor and the medical unit of the Postal Service (DE # 82 at ¶¶39-41 and attachments 25-26).

While Butler has not made out a prima facie case of Title VII discrimination, the undersigned finds that Butler has made out a prima facie case of Title VII retaliation, as Butler has shown that Maynord may have known of Butler's prior EEO Complaints on November 4, 1997. *See* Ex. D to DE # 94.

Therefore, Defendant must show a legitimate, non-discriminatory reason for its action. Defendant has done so, asserting that Butler was absent from work too often to earn the EVA credit.

Now that Defendant has shown a legitimate, non-discriminatory reason for its action, the initial inference of discrimination "drops" from the case. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 510-11. The burden then shifts back to Butler to discredit Defendant's proffered explanation for its decision and to show that Defendant's employment decision was based

on retaliation. *Burdine*, 450 U.S. at 256. Butler may avoid summary judgment and show pretext directly by persuading this Court that a discriminatory reason more likely motivated Defendant, or indirectly by showing that Defendant's proffered explanation is unworthy of credence. *Combs v. Plantation Patterns*, 106 F.3d at 1528. If Defendant's articulated reasons are then found to be a pretext, leaving no valid reason for its actions, it is likely that discrimination was the true reason. *See United States Postal Serv. Bd. v. Aikens*, 460 U.S. 711, 715-16 (1983). Butler, therefore, has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by Defendant were not the real reasons for the failure to give him the EVA credit. *McDonnell Douglas*, 411 U.S. at 804; *Combs*, 106 F.3d at 1528.

Thus, to show pretext, Butler is required to come forward with some evidence to persuade this Court to reject Defendant's proffered nondiscriminatory reason. The record, however, is devoid of evidence of discrimination, and Butler has even conceded that Defendant's proffered reason is not discriminatory (DE # 96 at 19). Butler contends that he was discriminated against because Defendant improperly placed him on enforced leave in 1997, making him ineligible for the EVA (DE # 96 at 19). However, the undersigned has already found that pursuant to the Settlement Agreement relating to Complaint 18-97, Butler agreed not to litigate in any forum the issue as to the propriety of his being placed on enforced leave. Therefore, Butler may not raise that issue in this Complaint, 11-98.

Butler, therefore, has failed to present any evidence that Defendant's legitimate, non-discriminatory reason for finding him ineligible for the EVA for fiscal year 1997 was a pretext. Because Butler has not presented significantly probative evidence to meet his burden to

establish pretext, he cannot avoid summary judgment.  See *Young v. General Foods Corp.,*

840 F.2d 825, 829 (11ᵗʰ Cir. 1988), *cert. denied,* 488 U.S. 1004 (1989).

D. Complaint 47-99

Defendant is entitled to summary judgment on Complaint Number 47-99, as Butler has

not exhausted the claims he raised in his informal complaint in EEOC Case Number 1-H-333-

0047-99, leaving this Court without jurisdiction to consider them.

On April 19, 1999, Butler initiated informal proceedings with the EEOC by filing an

information for precomplaint counseling form, under EEOC Case Number 1-H-333-0047-99,

in which he alleged that he had received a letter of warning for having too many workers in

his operation when a short time later Ms. Ettienne, a black Haitian female, had more workers

in her operation but did not receive a letter of warning.  Butler contended that this

represented race, national origin and sex discrimination, and retaliation for prior EEOC

filings (Ex. 32 to DE # 82; Ex. B to DE # 94).  The record contains a copy of a Final Interview

Notice dated September 30, 1999, stating that Butler's complaint had not been resolved, and

informing Butler of his right to appeal (Ex. 33 to DE # 82).  The record does not contain any

indication that Butler ever formally filed a complaint under EEOC Case Number 1-H-333-

0047-99.

A federal employee must pursue and exhaust administrative remedies prior to filing

a Title VII action.  *See Brown v. General Servs. Admin.,* 425 U.S. 820, 832-33 (1976);

*Crawford v. Babbitt,* 186 F.3d 1322 (11th Cir. 1999).  A plaintiff's claims under Title VII are

limited in scope by his EEOC filing.  *See Mulhall v. Advance Sec., Inc.,* 19 F.3d 586, 589 n.8

(11ᵗʰ Cir.), *cert. denied,* 513 U.S. 919 (1994); *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110

(7ᵗʰ Cir. 1992).

An aggrieved United States Postal Service employee who believes that he has been unlawfully discriminated against must consult an EEO counselor prior to filing a formal complaint. 29 C.F.R. §1614.105. The meeting with the EEO counselor must occur within 45 days of the date of the matter alleged to be discriminatory. *Id.* Thereafter, the employee may file a formal complaint within 15 days of a notice of the right to file a formal complaint. *Id.* An investigation of the complaint must occur within 180 days of the filing of the complaint. 29 C.F.R. § 1614.106-108. After the investigation is completed, a copy of the investigative file is provided to the complainant, who may request a hearing before an EEOC Administrate Judge within 30 days of receipt of the investigative file. *Id.* If dissatisfied with the decision of the Administrative Judge, the complainant may either appeal to the Equal Employment Opportunity Commission or file a civil action in a United States District Court within 90 days of receipt of the EEOC administrative decision. 29 C.F.R. §§ 1614.110 and 1614.407.

Defendant contends that Butler never filed a formal complaint of discrimination with respect to case number 1-H-333-0047-99, and that Butler abandoned the complaint during the informal complaint stage of the administrative EEO process (DE # 82 at ¶¶47-49). There is no record of activity in the administrative appeals process, and it appears that the complaint was, in fact, abandoned during the informal pre-complaint stage. While Butler states that he believes that he filed a formal Complaint in Case Number 1-H-333-0047-99 (Butler Aff., DE # 94 at ¶15), he has provided no competent evidence supporting his belief, and his belief, standing alone, is insufficient to support an inference that he filed a formal Complaint. *See Coutu v. Martin County Bd. Of County Comm'rs*, 47 F.3d at 1073-74. Indeed, at his March 4, 2003 deposition, Butler admitted that he was not sure he had ever formally

26

filed a complaint under 47-99, and that he is not sure whether he ever checked Defendant's computer data base to ascertain whether he had formally filed a complaint under Case Number 47-99 (DE # 84 at 89, 91-93).

In the alternative, Butler argues that this Court has jurisdiction to consider the allegations in Case Number 47-99, even if he never filed a formal complaint, because the conduct alleged in that Complaint is closely related to the conduct alleged in EEOC Complaint 12-00 (DE # 96 at 17-18). However, the undersigned finds that the conduct in this Complaint is not closely related to the conduct alleged in Complaint 00-12, and that this Court is without jurisdiction to consider those claims Butler raised informally under Case Number 47-99.

Therefore, as Butler has not exhausted the claims which he raised in his informal complaint in EEOC Case Number 1-H-333-0047-99, the claims are barred from consideration in this lawsuit, and summary judgment is granted for Defendant as to these claims. *See Williamson v. Int'l Paper Co.*, 85 F.Supp.2d 1184, 1195-97 (S.D. Ala. 1999).[6]

### E. Complaint Number 12-00

Defendant is entitled to summary judgment on Complaint Number 12-00, as Defendant has shown a legitimate, non-discriminatory reason for the complained-of action, and Butler has failed to establish pretext.

On November 18, 1999, MDO Rosie Carlies initiated a Request for Disciplinary Action against Butler based upon Butler's performance on November 3, 1999 as SDO of the small parcel bundle sorter (SPBS) on Tour 3 (DE # 82 at ¶50 and attachment 36). On November

---

[6] Due to the above findings, the undersigned need not reach the merits of Complaint 47-99.

27

29, 1999, Carlies issued a proposed LOW in Lieu of Time Off Suspension to Butler charging him with unacceptable conduct due to his failure to respond and comply with directives given you (DE # 82 at ¶51 and attachment 37). At this time, Carlies was aware that Butler had previously participated in protected activity (DE # 82 at ¶51; Ex. D to DE # 94).

Specifically, Carlies stated that on November 3, 1999, Butler was assigned to supervise the SPBS on tour 3. At approximately 4:10 p.m., Carlies called supervisor Simon Ham from the supervisor's desk at the SPBS and asked him to give Butler the telephone. Carlies told Butler not to end the report and that there were four more pallets of mail to run on the SPBS. Butler began to question Carlies, and she cut Butler off, telling him that she wanted Tour 2 to finish running the Miami mail, and Butler's clerks to run off the 5 digit 330 mail until Tour 2 is finished. Then the Miami mail will be pulled down and the SPBS would be set up for Butler to run 330. When Carlies then asked Butler if he understood what she was saying, he said nothing. Carlies then handed the telephone to another person and told her to let Carlies know if Butler responded, and Carlies left her office and walked to the SPBS. When she got there, Butler was not in the area and the telephone was off the hook and lying on the desk. Carlies then paged Butler to report to the SPBS supervisor's desk, and Butler did not respond. Carlies then called the general clerk's office and was told that Butler had just walked out of that office. Carlies then called the data site office and was told that Butler had just walked out of that office. At 4:35 p.m., Butler reported to the SPBS supervisor's desk. Carlies then told him to report to her office (Attachment 37 to DE # 82).

When Carlies and Butler arrived at Carlies' office, she asked Butler if he had a problem, and Butler just stared at her and did not answer. She told him she was talking to him and asked him if he had understood her instructions, and why he had put down the

telephone receiver when they were in the middle of a conversation and walked away. Butler again just stared at her and did not answer. Carlies then told Butler that she was his manager and would not tolerate that kind of behavior. Butler stared at her, did not answer and walked out of the office. Carlies followed Butler as he began talking to another manager. Carlies approached Butler, and told him to end his tour of duty and leave the building. Butler asked why, but Carlies did not answer and told the other manager to make sure that Butler left the building and returned to work on the following day (Attachment 37 to DE # 82).

Carlies stated that Butler's failure to acknowledge her instructions and failing to respond to her and leaving her office while she was talking to him were legitimate reasons for the action. Carlies further stated that she took into account the August 21, 1998 letter of warning issued to Butler in taking this action (Attachment 37 to DE # 82).

Butler appealed the issuance of the proposed LOW in Lieu of Time Off Suspension to the Plant Manager, Saundra D. Richardson (DE # 82 at ¶52). On January 18, 2000, Richardson issued a letter of decision finding that the charge was fully supported by the record evidence and warranted the action (DE # 82 at ¶53 and attachment 38). At this time, Richardson was aware that Butler had previously participated in protected activity (DE # 82 at ¶54).

On March 8, 2000, Butler filed Complaint 12-00, alleging that MDO Carlies had discriminated against him based on his race, color and sex and had retaliated against him because of his prior EEO complaint against her (DE # 82 at ¶¶55-57 and attachments 39-40).

Specifically, Butler stated that Carlies was retaliating against him for his opposition to the August 21, 1998 letter of warning. He complained that Carlies frequently used harsh

language against him, and that Carlies, a black female, applied harsher standards to him, a white male, than to Liz Ettienne, another black female (Attachment 39 to DE # 82).

As Defendant concedes that Butler has made out a prima facie case of Title VII retaliation (DE # 82 at ¶¶51-54), Defendant must show a legitimate, non-discriminatory reason for its action.[7] Defendant has done so, asserting that on November 3, 1999, Butler was non-responsive and insubordinate to Carlies, his supervisor.

Now that Defendant has shown a legitimate, non-discriminatory reason for its action, the initial inference of discrimination "drops" from the case. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 510-11. The burden then shifts back to Butler to discredit Defendant's proffered explanation for issuing the LOW and to show that Defendant's stated reason for issuing the LOW was a pretext. *Burdine*, 450 U.S. at 256. Butler may avoid summary judgment and show pretext directly by persuading this Court that a discriminatory reason more likely motivated Defendant, or indirectly by showing that Defendant's proffered explanation is unworthy of credence. *Combs v. Plantation Patterns*, 106 F.3d at 1528. If Defendant's articulated reasons are then found to be a pretext, leaving no valid reason for its actions, it is likely that discrimination was the true reason. *See United States Postal Serv. Bd. v. Aikens*, 460 U.S. 711, 715-16 (1983). Butler, therefore, has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by Defendant were not the real reasons for the issuing of the LOW. *McDonnell Douglas*, 411 U.S. at 804; *Combs*, 106 F.3d at 1528.

---

[7] Since Defendant has conceded that Butler has made out a prima facie case of Title VII retaliation, the undersigned need not reach the issue of whether Butler has made out a prima facie case of Title VII discrimination.

Thus, to show pretext, Butler is required to come forward with some evidence to persuade this Court to reject Defendant's proffered nondiscriminatory reason. The record, however, is devoid of evidence of discrimination or retaliation. Butler contends that: 1) Carlies asked him to leave the building; 2) Carlies had given him a biased and unfounded LOW for having too many workers at his operation, when a short time later Ms. Ettienne had almost twice as the allotted number but was not given a warning letter; and 3) Carlies had made numerous inflammatory comments to him such as "you are stupid", "look for a new job" and "I'm tired of your nonchalant attitude" (DE # 96 at 20). However, a review of the record shows that at Butler's March 4, 2003 deposition Butler conceded the truth of Carlies' allegations. Specifically, Butler admitted that 1) supervisor Simon Ham had told him not to pull a report on the SPBS because Ham's tour had more than four pallets of Miami mail to run (DE # 83 at 101); 2) Carlies' description of the telephone conversation was correct, that Butler did not answer her, put the telephone receiver down on the desk, and left the SPBS office while Carlies was talking to him (DE # 83 at 101-03, 105, 107-08); 3) he then left the SPBS office and went to the general clerk's office and to the data site office (DE # 83 at 107); 4) after someone told him that Carlies was paging him, he did not respond to the page (DE # 83 at 108-09, 129) and he did not return to the SPBS office until approximately fifteen minutes after leaving the telephone receiver on the desk (DE # 83 at 109). Butler also admitted that after he went with Carlies to her office, he did not make any response to her question of whether he had a problem with her, but walked out of her office while she was talking to him to get another supervisor (DE # 83 at 110, 112-14).

While Butler stated at his deposition that he believed Carlies was retaliating against him because he had filed Complaint 47-99 (DE # 83 at 121-24), as previously stated, he has

31

provided no evidence that he ever formally filed Complaint 47-99, or that Carlies knew that he had initiated informal proceedings on Complaint 47-99. Similarly, Butler testified at his deposition that race, color and gender played a part in Carlies' issuance of the LOW (DE # 83 at 125-27, 129). However, he also testified that his belief was based solely on the fact that he is a white male and Carlies is a black female (DE # 83 at 127-28). Butler's mere belief, speculation, or conclusion that he was subject to discrimination does not create an inference of discrimination or satisfy his burden. *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d at 1074. While *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000), holds that a plaintiff may establish pretext with the same evidence which he used to establish his prima facie case of retaliation, in this case, the evidence which Butler used to establish his prima facie case does not suffice to establish pretext.

Thus, Butler has failed to adduce evidence that Defendant's legitimate, non-discriminatory reason for issuing him a LOW was a pretext. Because Butler has not presented significantly probative evidence to meet his burden to establish pretext, he cannot avoid summary judgment on Complaint 12-00. *See Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989).

Therefore, for the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (DE # 74) is **GRANTED**.

**DONE AND ORDERED** at Miami, Florida, this _____ day of April, 2005.

ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

32

**Copies furnished to:**
**Stewart Lee Karlin, Esq.**
    **315 S.E. 7th St.**
    **The Advocate Building–Second Floor**
    **Fort Lauderdale, FL 33301**
    **Facsimile # 954-462-3151**
    **(Counsel for Plaintiff)**
**AUSA Charles S. White, Esq.**
    **United States Attorney's Office**
    **99 N.E. 4th St.**
    **Miami, FL 33131**
    **Facsimile # 305-530-7139**
    **(Counsel for Defendant)**